IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

STACY L. RANDALL,                          )
                                           )
                    *Plaintiff*,           )
         v.                                )          Civil Action No. 22-cv-400
                                           )
REED C. WIDEN, MICHAEL                     )
KIESLER, WIDEN ENTERPRISES,                )
LLC, and WINDY WATERS, INC.,               )
                                           )
                    *Defendants*.          )
_____)

**<u>DEFENDANTS' MEMORANDUM IN SUPPORT
OF THEIR MOTION TO DISMISS THE COMPLAINT</u>**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Arber v. Essex Wire Corp.*,
   490 F.2d 414 (6th Cir. 1974) ..............................................................14, 21, 22, 24

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009).........................................................................................9, 10

*ATSI Comm., Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d. Cir. 2007)...............................................................................11, 12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................9, 10, 15

*Bogie v. Rosenberg*,
   705 F.3d 603 (7th Cir. 2013) ............................................................................23, 30

*Borsellino v. Goldman Sachs Grp., Inc.*,
   477 F.3d 502 (7th Cir. 2007) ............................................................................11, 20

*Brame v. Gen. Motors LLC*,
   535 F. Supp. 3d 832 (E.D. Wis. 2021)...................................................................32

*Brobeck v. Telex Corp.*,
   602 F.2d 866 (9th Cir. 1979) ..................................................................................36

*Brown v. First Cap. Sur. & Tr. Corp.*,
   No. 2011AP63 (Wis. Ct. App. 2011).......................................................................29

*Colonial Bank & Tr. Co. v. Bankshares Corp.*,
   478 F.Supp. 1186 (E.D. Wis. 1979).........................................................................29

*Cont'l Cas. Co. v. Wis. Patients Comp. Fund*,
   473 N.W.2d 584 (Wis. Ct. Ap. 1991) ......................................................................31

*Deminsky v. Arlington Plastics Mach.*,
   657 N.W.2d 411 (Wis. 2011)....................................................................................36

*Disc. Fabric House of Racine, Inc. v. Wis. Tel. Co.*,
   345 N.W.2d 417 (Wis. 1984)....................................................................................36

*Eberts v. Torge and Svetlana Goderstad and Nat'l Plastic Trading Co., Inc.*,
   2008 WL 123594 (E.D. Wis. Jan. 10, 2008).............................................................41

*Elbe v. Wausau Hosp. Ctr.*,
   606 F. Supp. 1491 (W.D. Wis. 1985) ......................................................................34

*Fabick v. Evers*,
    956 N.W.2d 856 (Wis. 2011) ..........................................................................9, 10

*Fed. Deposit Ins. Corp. v. Lauterbach*,
    626 F.2d 1327 (7th Cir. 1980) ...........................................................................28

*Flournoy v. Winnebago Cnty. Sheriff's Off.*,
    2015 U.S. Dist. LEXIS 7181 (W.D. Wis. Jan 22, 2015) ..................................24, 30

*Forrest v. Universal Sav. Bank, F.A.*,
    507 F.3d 540 (7th Cir. 2007) .........................................................................23, 30

*Hankee v. Menard, Inc.*,
    2002 WL 23257167 (W.D. Wis. Apr. 15, 2002) ................................................36

*Harris v. Harvey*,
    436 F. Supp. 143 (E.D. Wis. 1997)....................................................................32

*Int'l Fin. Servs. Corp. v. Chromas Tech. Can., Inc.*,
    356 F.3d 731 (7th Cir. 2004) .............................................................................41

*Kaloti Enterprises, Inc. v. Kellogg Sales Co.*,
    699 N.W.2d 205 (Wis. 2005).............................................................................26

*Leasefirst v. Hartford Rexall Drugs, Inc.*,
    483 N.W.2d 585 (Wis. Ct. App. 1992) ..............................................................35

*LHLC Corp. v. Cluett, Peabody & Co.*,
    842 F.2d 928 (7th Cir. 1988) .............................................................................13

*Love v. Med. Coll. Of Wis.*,
    371 F. Supp. 3d 489 (E.D. Wis. 2016)...........................................................40, 41

*Matter of Est. of Katze-Miller*,
    463 N.W.2d 853 (Wis. Ct. App. 1990) ..............................................................36

*Medline Indus., Inc. v. Diversey, Inc.*,
    563 F. Supp. 3d 894 (E.D. Wis. 2021)...............................................................34

*Mendelson v. Blatz Brewing Co.*,
    101 N.W.2d 805 (Wis. 1960).............................................................................39

*Michaels v. Michaels*,
    767 F.2d 1185 (7th Cir. 1987) ...........................................................................23

*N. Crossarm Co. v. Chem Specialties, Inc.*,
    318 F. Supp. 2d 752 (W.D. Wis. 2004) .............................................................31

*N. Grp., Inc. v. Tech 4 Kids Inc.*,
    352 F. Supp. 3d 882 (E.D. Wis. 2018)..................................................................31

*Nichols v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
    509 F. Supp. 2d 752 (W.D. Wis. 2007) ...............................................................36

*Norkol/Fibercore, Inc. v. Gubb*,
    279 F. Supp. 2d 993 (E.D. Wis. 2003)..................................................................34

*Northern Air Servs., Inc. v. Link*,
    804 N.W.2d 458 (Wis. 2011)..................................................................................9

*Ollerman v. O'Rourke Co., Inc.*,
    288 N.W.2d (1980) ..............................................................................................26

*Onderdonk v. Lamb*,
    255 N.W.2d 507 (Wis. 1997).................................................................................32

*Orlando Residence Ltd. V. GP Credit Co.*,
    2007 WL 2903240 (E.D. Wis. Sept. 28, 2007)......................................................41

*Parsons v. Associated Banc-Corp*,
    893 N.W.2d 212 (Wis. 2017).................................................................................41

*Pope v. Ziegler*,
    377 N.W.2d 201 (Wis. Ct. App. 1985) .................................................................38

*Radue v. Dill*,
    246 N.W.2d 507 (Wis. 1976).................................................................................33

*Reget v. Paige*,
    242 Wis. 2d 278 (Wis. App. 2001) .................................................................16, 18

*Roth v. OfficeMax, Inc.*,
    527 F. Supp. 2d 791 (N.D. Ill. 2007) ...................................................................25

*Scarabello v. Reichle*,
    856 F. Supp. 404 (N.D. Ill. 1994) ...........................................................12, 22, 23

*Selmer Co. v. Blakeslee-Midwest Co.*,
    704 F.2d 924 (7th Cir. 1983) ................................................................................39

*Smith v. Eckstein*,
    2018 WL 2976031 (E.D. Wis. June 13, 2018).......................................................34

*Smith v. RecordQuest, LLC*,
    989 F.3d 513 (7th Cir. 2014) ................................................................................31

*Sonday v. Dave Kohel Agency, Inc.*,
   718 N.W.2d 631 (Wis. 2006) ................................................................................41

*State v. Evans*,
   617 N.W.2d 220 (Wis. Ct. App. 2000) ...............................................................29

*Stewart v. Rice*,
   2012 WL 2328227 (W.D. Wis. June 19, 2012) ...................................................33

*Stillwell v. Linda*,
   329 N.W.2d 257 (Wis. Ct. App. 1984) ...............................................................39

*Squires-Cannon v. Forest Preserve Dist. Of Cook Cty.*,
   897 F.3d 797 (7th Cir. 2018) ...............................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ..............................................................................................13

*Thomas v. Mallett*,
   701 N.W.2d 523 (Wis. 2005) ...............................................................................33

*Townsend v. Neenah Joint Sch. Dist.*,
   2016 WL 4097785 (Wis. Ct. App. Aug. 3, 2016) ................................................31

*Trinkle v. Schumacher Co.*,
   301 N.W.2d 255 (Wis. Ct. App. 1980) ...............................................................35

*TSC Indus., Inc. v. Northway Inc.*,
   426 U.S. 438 (1976) ..............................................................................................23

*Vacold LLC v. Cerami*,
   545 F.3d 114 (2d Cir. 2008) .................................................................................30

*Watts v. Watts*,
   405 N.W.2d 303 (Wis. 1987) ...............................................................................29

*Webb v. Frawley*,
   906 F.3d 569 (7th Cir. 2018) ..........................................................................11, 20

*Wigod v. Wells Fargo Bank, N.A.*,
   673 F.3d 547 (7th Cir. 2007) ...............................................................................12

*Williams v. Rank & Son Buick, Inc.*,
   170 N.W.2d 807 (1969) ........................................................................................28

*Wis Auto Title Loans, Inc. v. Jones*,
   714 N.W.2d 155 (Wis. 2006) ...............................................................................36

*Wurtz v. Fleischman,*
  293 N.W.2d 155 (Wis. 1980) .......................................................................................38

**OTHER AUTHORITIES**

15 U.S.C. § 78 ....................................................................................................... 11, 24

85 FAR 15337-338 ..................................................................................................3, 16

Fed. R. Civ. P. 8(a) ............................................................................................... 11, 12

Fed. R. Civ. P. 9(b) ............................................................................................... 11, 12

Fed. R. Civ. P. 12(b)(6) ...............................................................................................10

Restatement (Second) of the Law of Contracts § 1751 ................................................39

SEC Rule 10b-5 ....................................................................... 12, 13, 17, 24, 25, 29

Wis. Stat. § 180.1430 ............................................................................................... 9, 10

Wis. Stat. § 551.501 ............................................................................................... 28, 29

Wis. Stat. § 895.446 ...................................................................................................... 32

Wis. Stat. § 943.20 ....................................................................................................... 32

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................2

ARGUMENT .......................................................................................................8

    I.      PLAINTIFF LACKS STANDING TO ASSERT HER NINTH CLAIM FOR RELIEF. ......................9

    II.     RULE 12(B)(6) DISMISSAL IS PROPER FOR ALL CLAIMS. ...................................9

        A.    Plaintiff's Claims Are Barred Entirely Under the Parties' Release. ...........................10

        B.    Plaintiff Fails to State a Claim for Federal Securities Fraud (Plaintiff's First and Second Claims for Relief). ...............................................................................11

        C.    Plaintiff Fails to State a Claim Against Reed Widen for Controller Liability Under §20(a) of the Exchange Act (Third Claim for Relief)....................................24

        D.    Plaintiff Fails to State a Claim for Common Law Fraud (Fourth Claim for Relief). .............................................................................................25

        E.    Plaintiff Fails to State a Claim for State Law Securities Fraud (Fifth Claim for Relief). .............................................................................................28

        F.    Plaintiff Fails to State a Claim for Breach of Fiduciary Duties Against Reed and Kiesler Related to the May 2020 Redemption Agreement (Sixth Claim for Relief). .............................................................................................30

        G.    Plaintiff Fails to State a Claim for Unjust Enrichment (Seventh Claim for Relief). .............................................................................................30

        H.    Plaintiff Fails to State a Claim for Civil Theft (Eighth Claim for Relief). ...............32

        I.    Plaintiff Fails to State a Claim for Civil Conspiracy to Commit Common Law Fraud (Tenth Claim for Relief). ..............................................................33

        J.    Plaintiff's Declaratory Relief Claims Each Fail to State a Claim (Eleventh-Fourteenth Claims for Relief). .................................................................35

        K.    Plaintiff Fails to State a Claim for Piercing the Corporate Veil (Fifteenth Claim for Relief)...................................................................................41

CONCLUSION....................................................................................................42

Defendants, through undersigned counsel, file this Memorandum in Support of their Motion to Dismiss the Complaint ("Motion") for lack of standing and failure to state a claim upon which relief can be granted.

**INTRODUCTION**

This is a classic case of seller's remorse—not fraud or oppression. In May 2020, a period of great economic uncertainty for the country mere weeks after the President's emergency declaration regarding the COVID-19 pandemic, Plaintiff Stacy Randall sold her remaining shares in Defendant Windy Waters, Inc. ("Windy Waters"). Those shares were sold pursuant to the same valuation formula used in all five of Plaintiff's prior share sales, which took place in 2005, 2007, 2011, 2017, and 2019. That same valuation formula had been used when buying out the Plaintiff's brothers many years earlier. Moreover, the agreement that Plaintiff signed in May 2020 with Windy Waters for this sixth stock redemption was practically identical to all five prior redemption agreements, save for the inclusion of a mutual release provision, which foreclosed, among other claims, the instant lawsuit. Plaintiff had come to Windy Waters yet again for cash, this time to fund her divorce, and thereby voluntarily and knowingly entered into a transaction that she believed would provide the cash relief needed while ending her association with "Windy Water's most valuable asset," as she terms it, Widen Enterprises.

Although Plaintiff admits to voicing concerns at the time over the value of her shares and whether she required financial and legal advice before signing, she negotiated for a period of time and ultimately executed the agreement anyway. She did not demand financial documents and accepted the option of a complete redemption of her stock. In so doing, Plaintiff contracted to receive 83 monthly payments of approximately $16,000 each, totaling $1.3 million, plus interest.

Fifteen months later, in August 2021, Defendants entered into an agreement to sell Widen Enterprises for $162 million. As a result of her sixth and final stock redemption in May 2020, Plaintiff did not share in the sale proceeds. For Plaintiff, that result "shocks the conscience." With no actionable evidence of misconduct, much less fraud, Plaintiff hopes to invalidate her May 2020 redemption agreement and reinstate her roughly 20% stake in Windy Waters. No such relief can be awarded, and dismissal is proper. It is Plaintiff, and Plaintiff alone, who is responsible for the decision to sell off her remaining shares in Windy Waters. That May 2020 agreement remains valid and binding, and Plaintiff has now breached it by filing this lawsuit in violation of her representation and warranty that the agreement "constitutes valid and legal binding obligations of Seller, enforceable against Seller in accordance with its terms."

## BACKGROUND

Stacy Randall ("Plaintiff"), and her brother, Defendant Reed Widen ("Reed"), were the remaining family member shareholders of Windy Waters, a family-owned holding company that owned Widen Enterprises (both companies together, as referred to in the Complaint, "the Companies"). Over time, Reed came to own "nearly 80%" of the Companies, and Plaintiff to own "approximately the remaining 20%." Compl. ¶¶ 20-25. Reed served as President of Widen Enterprises until 2009, and Chairman of the Board until September 2021 (*i.e.,* until its sale). *Id.* ¶ 30. Plaintiff alleges that "Reed did not have a formal title at Windy Waters" but was its "de facto executive officer…unilaterally directing the company's policies and actions and often signing corporate documents as 'Shareholder.'" *Id*. ¶ 31. Plaintiff was a director of Windy Waters until May 2020, and received annual checks for "directors' fees" dating back to "when her father still ran the Companies," even though she admits she "cannot recall receiving notice of or attending any board meetings." *Id.* ¶ 33.

Through periodic sales to obtain cash, Plaintiff reduced her holdings in the Company, selling blocks of her shares in 2005, 2007, 2011, 2017, and 2019, until she eventually sold all of her remaining shares in May 2020. *Id*. ¶¶ 55-58, n.5. She did so despite never having "any information about the Companies' financial, operational, or strategic matters." *Id.* ¶ 35. This lawsuit arises from Plaintiff's sixth sale of stock, in May 2020 (also called the "Redemption" in Plaintiff's Complaint).

In each of her share sales, Windy Waters and Plaintiff signed a "similar redemption agreement." *Id.* ¶ 59, n.5. On each occasion, the value of the shares was calculated using the same methodology—a weighted average of EBITDA over the prior three years. *Id.* at Ex. F. For example, when Plaintiff needed the Companies to buy some of her shares in January 2019, she received $120,000 from Windy Waters for shares representing 2% of the Companies' outstanding shares. *Id.* ¶ 58.

On May 5, 2020, roughly fourteen months after her most recent stock redemption agreement and only a few weeks after the President of the United States issued a national emergency declaration for the novel corona virus outbreak, Plaintiff told Reed that she needed more money. *Id*. ¶¶ 67-68; 85 FAR 15337-338. This need arose from her ongoing divorce proceedings. *Id*. ¶ 68. Specifically, Plaintiff alleges that she had retained divorce counsel by November 2019, and following actions by her then-husband, was left with "only one joint account and one personal account" and "no source of income." *Id*. ¶¶ 52-53, 64. "Financially strained, [Plaintiff] was forced to make desperate financial decisions." *Id*. ¶ 54. On this latest occasion, however, Reed told Plaintiff that her timing was "unfortunate" because the Company had a "Cov[i]d problem," and so they "might have to take care of it in Mil[l]mont," which Plaintiff notes is a "separate family-owned company that holds real estate" and also had been left to Plaintiff,

Reed, and their siblings. *Id.* ¶ 69. By May 2020, Windy Waters had less than $6 million in operating capital. *Id.* ¶ 162. This represented only two months' revenue for Widen Enterprises. *Id.*

Early the next day, May 6, 2020, Defendant Michael Kiesler ("Kiesler"), then Treasurer of Windy Waters and CFO of Widen Enterprises, who also "helped the family administer Millmont," contacted Plaintiff. *Id.* ¶¶ 16, 70. Plaintiff told Kiesler that she "would need approximately $100,000 for her divorce and living expenses." *Id.* ¶ 71. Kiesler said "the Companies did not have $100,000 they could make available to her." *Id.* ¶ 72.[1] Plaintiff asked instead "if she could obtain $50,000," but Kiesler told her that the Companies could not afford that, either." *Id.* ¶ 73. Plaintiff alleges that Kiesler told her that the "***only way*** she could get any cash from the Companies was to sell her ***entire interest*** in the Companies—approximately 20% of the outstanding shares—to the Companies." *Id.* ¶ 74 (emphasis in original). When Plaintiff told Kiesler she "did not want to sell her entire interest," Plaintiff alleges that "Kiesler reiterated that the Companies wanted to purchase her entire interest." *Id.* ¶¶ 76-77. Plaintiff does not allege any discussion of Millmont or other efforts she made to obtain cash. Plaintiff alleges that Kiesler's initial offer to Plaintiff was $1.1 million, without other details as to payment, other than it was a "take it or leave it" offer. *Id.* ¶¶ 77, 82. Plaintiff also alleges that Kiesler told Plaintiff "in sum and substance, that she would be smart to sell her interest in the Companies while she had the chance because Widen Enterprises, the operating company, might not even be around in a few years, and she risked ending up with nothing if she didn't take the offer." *Id.* ¶ 81. At that time, no one knew what impact the COVID pandemic would have on businesses.

After Kiesler gave Plaintiff a three-hour deadline on May 6 for the offered stock purchase, which Plaintiff alleges made her cry and hang up the phone, Plaintiff "decided not to call Kiesler

---

[1] Plaintiff does not allege, nor can she, that the Companies had any legal obligation to provide her with the funds.

back." *Id.* ¶¶ 83-84, 86. Hearing nothing from Plaintiff, Kiesler telephoned her before the three hours had elapsed and extended her period to consider the $1.1 million offer by an additional three days; *i.e.*, through May 9. *Id.* ¶ 87. Plaintiff does not allege any discussions particular to either "deadline." Plaintiff does assert, however, that in their second phone conversation on May 6, she "told Kiesler that she would need to talk with her financial advisor and attorney." *Id.* ¶ 91. Kiesler replied that Plaintiff should do so "right away" and "get back to me." *Id.* ¶ 92.

Given the additional time and opportunity for counsel, Plaintiff decided that she "did not want to accept Kiesler's offer, so despite her financial situation, she allowed the three-day time limit to lapse without responding." *Id.* ¶ 93. Plaintiff does not allege what financial advisor or what legal counsel she referred to in her comment to Kiesler. For the prior January 2019 redemption agreement, Plaintiff "did not have an attorney" involved. *Id.* ¶¶ 55-56. By November 2019, however, Plaintiff had retained at least a "divorce attorney" from an unspecified law firm—dubbed in her Complaint as "Attorney B" and the "Law Firm," respectively—indeed, Plaintiff chose the same law firm that she knew was providing corporate counsel to the Companies. *Id.* ¶¶ 8, 52, 61. In doing so, Plaintiff reviewed and signed a conflict waiver from the Law Firm, expressly waiving any right to claim a conflict for the Law Firm's work adverse to her on redemptions of her Windy Waters shares (handled by a corporate lawyer, dubbed "Attorney A" in her Complaint). *Id.* ¶¶ 62, 100.[2]

The following week, on May 13, eight days after Plaintiff's initial call, Kiesler increased the offer to purchase her shares to approximately $1.3 million. *Id* ¶ 94. Kiesler explained that the additional money was the result of an updated valuation of the Companies. *Id.* Kiesler told Plaintiff that she had to accept or reject the updated offer by the end of the day, May 13. *Id.* ¶ 96. Plaintiff

---

[2] Plaintiff does not name the Law Firm as a defendant, and despite the conflict waiver, expresses "shock" at the involvement of the Law Firm and corporate "Attorney A" in the Redemption. Compl. ¶ 8.

does not disclose the results of her prior search for financial and legal counsel between May 6 and May 13, but alleges that she was suddenly "[f]rantic for advice," and so she immediately "contacted friends in the wealth management industry and her personal accountant." *Id.* ¶ 97. Without providing specifics, Plaintiff alleges that "nobody could provide advice before Kiesler's deadline lapsed." *Id.* For legal counsel, Plaintiff alleges that she called her divorce counsel, Attorney B, who told her that "she could not provide advice on the transaction because Attorney B lacked expertise in the matter." *Id.* ¶ 98. Oddly, Plaintiff admits she then sought "legal advice" by phone from Attorney A, the corporate counsel at Law Firm *adverse* to Plaintiff on Windy Waters share redemption work. *Id.* ¶¶ 100-102. Plaintiff explained to her divorce counsel, Attorney B, that "I feel like I need to have someone look at [the redemption agreement papers] on my behalf. I don't know who to talk to other than [Attorney A]." *Id.* ¶ 105.

Later in the day on May 13, Plaintiff went to the Companies' office. *Id.* ¶ 108. Plaintiff contends that Kiesler was waiting for her and also was speaking on the phone with the Companies' counsel, Attorney A. *Id.* ¶ 109. Plaintiff asked to speak with Attorney A, and Kiesler handed her his phone. *Id.* ¶ 110. Plaintiff alleges she told Attorney A in that phone call that "she did not feel comfortable signing the documents that Kiesler had with him for her to sign but that she felt like she had no choice." *Id.* ¶ 112. "Attorney A said only that nobody could force her to sign the documents." *Id.* ¶ 113.

Plaintiff alleges she then asked Kiesler "whether he and the Companies' executives were preparing to sell Widen Enterprises," and that Kiesler responded, "in sum and substance," with the following denial: "No, there's been no talk of that." *Id.* ¶¶ 117-18. Kiesler then gave Plaintiff the documents to sign, as prepared by Attorney A. *Id.* ¶ 120. Specifically, Plaintiff alleges she was given a Stock Redemption Agreement, dated May 13, 2020 (the "May 2020 Redemption

Agreement") and a Promissory Note, also dated May 13, 2020 (the "Promissory Note"). *Id.* ¶ 125. The May 2020 Redemption Agreement employed the same valuation formula and largely identical content to the prior five redemption agreements, and also provided for mutual releases. *Id.* at Ex. A, Ex. C, ¶ 130. Because this was a complete redemption of Plaintiff's interest in the Companies, the agreement also provided that Plaintiff resign as a director of Windy Waters and any other positions she held with the Companies. *Id.* at Ex. A. Under the terms of the Promissory Note, Plaintiff did not receive the entire purchase price of $1.3 million upon closing on May 13, 2020; rather, Plaintiff was to receive 83 monthly payments of $16,430.09, fully paid by May 13, 2027. *Id*. at Ex B. The Promissory Note also provided for interest under the Applicable Federal Rate. *Id.*

Plaintiff does not allege that she asked for any financial information or details on the calculation of her share value. Plaintiff did not ask for more time to review the documents provided by the Companies' counsel. And Plaintiff did not let the deadline elapse—as she had elected to do twice previously. Instead, Plaintiff signed the May 2020 Redemption Agreement as presented. *Id.* ¶ 122.[3] Windy Waters signed as well. *Id.* at Ex. A.

Over eight months later, on January 27, 2021, Widen Enterprises signed an M&A Advisory Services Agreement with Software Equity Group ("SEG").[4] *Id.* at Ex. E. Under the terms of the agreement, SEG was to market for sale Widen Enterprises, and to coordinate the presentation of

---

[3] Plaintiff seems to allege both that she expected that the Companies' counsel, Attorney A, would serve as *her* counsel and advise her regarding the May 2020 redemption, Compl. ¶¶ 112-16, while also alleging that she was ultimately "[a]lone…, with no one to advise her of her rights." *Id.* ¶ 122. Quite plainly, if that predicament was regrettable for Plaintiff, she chose it with eyes wide open and without undue pressure, much less duress (as argued further, *infra*).

[4] To create confusion and to obfuscate the real facts, Plaintiff, while attaching the January 27, 2021, M & A Advisory Services Agreement between Widen Enterprises and SEG—the broker retained by Widen Enterprises to assist in its sale—includes an allegation in Paragraph 51 that "Gonnering [Widen Enterprise's CEO] had executed a non-disclosure agreement with an international, sell-side investment banker specializing in technology companies, Tequity Advisors, on February 13, 2020." Compl. ¶ 51. As part of a pre-suit discussion between the parties, Defendants provided to Plaintiff on a confidential basis the documents received from Tequity. Plaintiff is aware that the Tequity documents related to a proposal seeking to entice Widen to *buy* an entity, not an agreement under which Widen was to be offered for sale. Plaintiff has conveniently elected to omit this fact, and not attach the Tequity agreement to the Complaint. Plaintiff's allegation is a clear attempt to mislead this Court.

materials to potential buyers among other obligations. *Id.* Several months later, on August 17, 2021, The Companies entered into an Equity Purchase Agreement under which Widen Enterprises was acquired by Acquia Inc. *Id.* at Ex. C. The Companies and Acquia closed the transaction on September 24, 2021. *Id.* The Equity Purchase Agreement called for Acquia to pay $162 million for Widen Enterprises. *Id.*

In early September, 2021, prior to the closing on the sale to Acquia, Reed contacted Plaintiff to tell her that he had sold Widen Enterprises and wished to give her a "gift" of $1 million at the end of September. *Id*. ¶¶ 142-43. Rather than accept the gift, Plaintiff accused Reed of forcing her to sell her shares with the sale in mind. *Id.* ¶ 144. Reed denied Plaintiff's accusation, replying, "Nobody forced you to sell, Stacy." *Id.* ¶ 145. Upon learning that Widen Enterprises had sold for $162 million, Plaintiff calculated that she would have received approximately $32 million had she kept her approximately 20 percent interest in the Company. *Id.* ¶¶ 148-51. Plaintiff accused the Defendants of having secretly contemplated selling Widen Enterprises as she negotiated and signed the May 2020 Redemption Agreement. *Id*. ¶ 156, 164. Defendants have consistently rejected this accusation. Unable to square her decision to contract out of ownership in the Companies to pay for her divorce with the missed payday fifteen months later, Plaintiff filed the instant Complaint. The grounds for complete dismissal are now ripe for consideration, as presented below.

## ARGUMENT

Defendants move to dismiss each and every Claim for Relief asserted under the Complaint. As argued herein, Plaintiff lacks standing to assert her claim for Minority Shareholder Oppression under Wisconsin statutory law. All fifteen claims also are barred by the binding "Release"

provision in the May 2020 Redemption Agreement, and otherwise fail to state a claim upon which relief can be granted. The Complaint should be dismissed in its entirety and with prejudice.

## I.      Plaintiff Lacks Standing to Assert Her Ninth Claim for Relief.

Plaintiff's Ninth Claim for Relief (*id.* ¶¶ 271-85) purports to allege a violation by Reed under Wis. Stat. § 180.1430(2), which concerns minority shareholder oppression. Plaintiff cannot assert that claim, however, as she is no longer a minority shareholder. Thus, dismissal is proper, with prejudice.

The Wisconsin Supreme Court has held that "Wisconsin Stat. § 180.1430(2)(b) requires that a party pursuing a dissolution claim *be a shareholder*." *Northern Air Servs., Inc. v. Link*, 804 N.W.2d 458, 476 (Wis. 2011) (emphasis added). In *Northern Air Servs.*, the Wisconsin high court held that a plaintiff who had sold his stock, and thus was no longer a shareholder at time of suit, lacked standing under section 180.1430(2)(b). *Id.* at 478. That ruling remains the law of Wisconsin. *See, e.g., Fabick v. Evers,* 956 N.W.2d 856, 882 (Wis. 2021) (Walsh Bradley, J., dissenting) ("*Northern Air* . . . makes clear that if you no longer own shares of stock, you no longer have standing to maintain a shareholder action.").

In this case, Plaintiff alleges that she sold her remaining shares in the Companies on May 13, 2020, to fund her divorce and address severe "financial strain." Compl. ¶¶ 7, 54. Consequently, she lacks standing to assert a claim for minority shareholder oppression under Wisc. Stat. § 180.1430(2). The statute provides remedies to shareholders only. Accordingly, Plaintiff's Ninth Claim for Relief must be dismissed with prejudice.

## II.     Rule 12(b)(6) Dismissal Is Proper for All Claims.

To survive a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Unless a

plaintiff's well-pleaded allegations have "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556)). Evaluating the plausibility of a plaintiff's claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S. Ct. at 1950 (internal citation omitted).

### A.    Plaintiff's Claims Are Barred Entirely Under the Parties' Release.

Plaintiff agreed to a broad, general release of all claims, including unknown claims, in connection with the May 2020 Redemption Agreement. Under the terms of the Release, Plaintiff and Companies agreed as follows:

> For and in consideration of the payments and agreements herein, Seller, for herself, her heirs and assigns, hereby releases [Windy Waters] and its subsidiary, Widen Enterprises, Inc., and all their employees and directors, from any and all claims of any kind or nature, known or unknown, she may have against them, including, but not limited to any claim arising from the sale and purchase of the Shares, excluding the obligations in the Company's Promissory Note.

Compl. at Ex. A § 5. This release was and is binding,[5] and the agreement represented the entire agreement between the parties.[6] By the plain language of that Release, each and every Claim for Relief— whether asserted against Reed, Kiesler, Windy Waters, or Widen Enterprises—is barred. Plaintiff's claims are limited to alleged conduct dated as of the May 13 signature date and prior.

---

[5] Plaintiff also represented and warranted that "c) Seller has all necessary power and authority to execute and deliver this Agreement and consummate the transactions contemplated hereby" and that "d) this Agreement constitutes valid and legal binding obligations of Seller, enforceable against Seller in accordance with its terms …" Compl. at Ex. A § 3. Plaintiff also expressly agreed that "Subject to the terms and conditions hereof, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, and assigns." *Id*. ¶ 7(a).

[6] "This instrument contains the entire agreement between the parties hereto with respect to the transaction contemplated hereby and shall not be changed or terminated except by written amendment signed by the parties hereto." Compl. at Ex. A § 7(b).

Given that Plaintiff resigned as a director from Windy Waters as of the execution date, and had redeemed all of her shares in the Companies, there are no other legal duties allegedly breached by the Defendants. For example, Plaintiff has not alleged a breach of the Promissory Note.

Plaintiff does allege that the May 2020 Redemption Agreement was procured through fraud, but that claim is insufficient as a matter of law and, in all events, that claim is insufficient to vitiate an express release. Accordingly, Plaintiff's Complaint should be dismissed in its entirety.

Defendants next turn to Plaintiff's efforts to avoid the Release.

**B.** **Plaintiff Fails to State a Claim for Federal Securities Fraud (Plaintiff's First and Second Claims for Relief).**

To state a claim for securities fraud, Plaintiff must allege that the defendant "(1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which she relied, and (5) that her reliance was the proximate cause of her injury." *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007). Additionally, these allegations must satisfy the heightened pleading standards of Rule 9(b) and the PSLRA, which require a plaintiff to "specify the statements that the plaintiff contends were fraudulent, identify the speaker, state where and when the statements were made, and explain why the statements were fraudulent." 15 U.S.C. § 78u-4(b). While Federal Rule of Civil Procedure 8(a) provides the general pleading standard—"a short and plain statement of the claim"—fraud must be "state[d] with particularity" under Rule 9(b). Fed. R. Civ. P. 8(a), 9(b). To satisfy this heightened pleading standard, a "plaintiff may need to perform pre-complaint investigation to provide 'the who, what, when, where, and how'" underlying the alleged fraud. *Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018) (quoting *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)). Rule 9(b)'s "particularity" requirement applies to claims for fraud as well as claims for fraudulent concealment. *Squires-Cannon v. Forest Preserve Dist. of Cook Cty.*, 897

F.3d 797, 805 (7th Cir. 2018) (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2007)).

In evaluating a motion to dismiss, a court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI*, 493 F.3d at 98 (internal citations omitted).

In Plaintiff's First and Second Claims for Relief (Compl. ¶¶ 198-219), Plaintiff seeks to allege against all Defendants a violation of Section 10(b) of the Exchange Act, SEC Rules 10b-5 (a) & (c), and (b), respectively.  Plaintiff's claims fail and must be dismissed because Plaintiff fails to allege with the required particularity facts constituting the alleged violation and scienter. Even considering the facts that are alleged, Plaintiff has not alleged fraud at all as there are no actionable material affirmative acts or omissions constituting fraudulent misrepresentation or concealment. The law is clear that corporations do not have an affirmative duty to determine and offer fair value when purchasing stock from minority shareholders. *Scarabello v. Reichle*, 856 F. Supp. 404, 408 (N.D. Ill. 1994). Regardless, the Defendants here followed their course of conduct and calculated the redemption value in the May 2020 Redemption Agreement using the previously established process for all prior redemptions, including the five prior stock redemptions of Plaintiff. *See* Compl. ¶¶ 55-58, n.5, Ex. F.

### 1.   Plaintiff's First Claim Fails to State a Claim Under Section 10b-5(a) and (c) and Should Be Dismissed.

Section 10b-5 governs certain conduct "in the purchase or sale of any security." In this matter, Plaintiff has included a list of actions she claims occurred in the past, but these actions, which occurred prior to Plaintiff's sale under the May 2020 Redemption Agreement, are not actionable under Section 10b-5.

To properly state a claim for a violation of Section 10b-5(a) and (c), Plaintiff must allege facts constituting:

- the use of a "device, scheme, or artifice to defraud" and

- an "act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

17 CFR § 240.10b-5(a), (c). In addition, to state a claim under Section 10b-5, Plaintiff must allege facts to support both "transaction causation" and "loss causation." *LHLC Corp. v. Cluett, Peabody & Co.,* 842 F.2d 928, 931 (7th Cir. 1988), *cert. denied,* 488 U.S. 926 (1988). The facts alleged in the Complaint do not meet these standards.

Finally, to state a claim under Section 10b-5, Plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). In evaluating the underlying allegations, this Court "must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.* at 326.

In this case, while Plaintiff alleges a range of conduct and unsupported speculative claims, she admits that when she sold some of her shares in January 2019, she received $120,000 for her shares amounting to 2% of the Companies. Compl. ¶ 58. Plaintiff does not allege any misconduct by the Defendants in connection with that sale (or the previous four sales). Given her sale proceeds in January 2019, as alleged, the suggested value of the Companies at that time was $6 million. When Plaintiff sold her shares in May 2020, she received approximately $1.3 million for her approximately 20% stake—which suggests an increase in the value of the Company to $6.5

13

million. *Id*. ¶ 94. The redemption value in both cases was calculated using the same methodology. *Id*. at Ex. F.

While Plaintiff complains that well prior to the May 2020 Redemption Agreement, Defendants used a "rubber stamp" to "forge her signature" on unspecified "corporate documents," she admits she authorized Defendants to create the stamp and for it to be used in place of her signature. *Id*. ¶¶ 38-39, 202.  Plaintiff has not alleged that she ever instructed anyone to cease using the stamp, or to otherwise place any restrictions on its use, or even requested copies of documents on which it was used. Regardless, Plaintiff's allegations regarding the "rubber stamp" are not causative of her May 2020 stock sale, and are a complete red herring. Indeed, she never alleges that she requested access to any financial information or questioned any payment to compensation or dividends by the Companies. If anything, Plaintiff's allegations establish that she failed to perform any duties of a director, despite receiving "directors' fees" checks throughout the years dating back to when her father ran the Companies, *id*. ¶ 33, and failed to take any action to verify or otherwise confirm the financial condition or health of the company. A plaintiff cannot disregard their own responsibilities to investigate investments and then complain that they have been deceived. *See Arber v. Essex Wire Corp.,* 490 F.2d 414, 420 (6th Cir. 1974) (an outside investor is obligated to make inquiry).

With respect to scienter, Plaintiff's allegations fall well short and present an opposing inference that defeats scienter. While Plaintiff claims the Defendants were "motivated by greed" and sought to pay a price that was "grossly unfair," Compl. ¶ 208, Plaintiff glosses over the fact that this very same valuation formula was used for all prior redemptions—including all five of her own redemptions that predated May 2020—without objection. *Id*. ¶ 59, n.5, Ex. F.

While Plaintiff claims Defendants imposed "artificial deadlines" to pressure her, Plaintiff admits she ignored these deadlines and/or they were not enforced by Defendants. *Id*. ¶¶ 86-87, 93. Plaintiff also admits that she knew she needed to obtain legal and financial advice, but either failed to do so, or required different or additional advice because she actively continued to seek counsel—even from the *Companies' counsel* that drafted for Defendants *with her consent* the May 2020 Redemption Agreement and Promissory Note (collectively, the "Redemption Documents"). *Id*. ¶¶ 62, 91, 97-106, 110-12. Moreover, at no point does Plaintiff allege that she was prevented from obtaining the advice she sought.

And while Plaintiff claims the Defendants included "self-serving 'Release' language in the Redemption Documents," *id.* ¶ 208, Plaintiff fails to note that the release language was *mutual*—Defendants were also releasing all claims against Plaintiff. This release had value as Plaintiff was also resigning as a director of the Company.

Plaintiff also alleges no basis whatsoever for naming Widen Enterprises as a Defendant to its First Claim for Relief. Widen Enterprises was not a seller of the shares and is not a signatory to the May 2020 Redemption Agreement. Therefore, Plaintiff cannot be found to have stated a claim for securities fraud against Widen Enterprises.

Finally, Plaintiff goes to the extreme and claims that Reed's offer to give her what he called a $1 million "gift" from the sale of Widen Enterprises was actually evidence of his "consciousness of guilt." *Id.* ¶¶ 143, 208. The more obvious inference is that despite the sale of Widen Enterprises to Acquia occurring fifteen months following Plaintiff's sixth and final redemption agreement, Reed was showing significant generosity to his sister in allowing her to share in the proceeds of the sale.

15

Additionally, it is important to keep the timing of Plaintiff's requests in mind when evaluating the allegations under the *Twombly* standard. On March 13, 2020, the President issued a national emergency declaration for the novel corona virus outbreak. 85 FAR 15337-338. On March 30, 2020, this Court issued Administrative Order 363, authorizing the use of telephone and video conferencing in criminal matters "during the course of the COVID-19 emergency." Admin_Order_363.pdf (uscourts.gov). When Plaintiff reached out to obtain money from Defendants on May 5, 2020, this was the context in which the Companies were operating. Indeed, Plaintiff recounts that her brother Reed immediately said that her timing was unfortunate because the Companies had a "Cov[i]d problem." Compl. ¶ 69. While Plaintiff alleges that Windy Waters had more than $5 million in cash or "speculatively invested in liquid securities," *id.* ¶ 162, this was equal to only two months of revenue for the Companies, at a time when businesses were shutting down, the government was debating relief bills, and economic uncertainty was rampant. Windy Waters did not simply stroke a $1.3 million check once the ink was signed but instead provided for 83 monthly payments of $16,430.09. *Id.* ¶ 138, Ex. B. This Court cannot second guess the business judgment of management in seeking to preserve its operating capital at that time. *Reget v. Paige,* 242 Wis. 2d 278, 293-94 (Wis. App. 2001).

This is a classic case of seller's remorse. Plaintiff sold her shares at a time when the economy was performing poorly, and did so without reviewing any financial information, and without satisfying her acknowledged need for legal and financial advice. Plaintiff either did not pursue or fruitlessly pursued other options for cash, whether through Millmont or outside the family entirely. While Plaintiff appears to contend that Defendants should have offered other options outside of seeking to purchase all of her remaining shares, the Defendants owed her no

16

such duty. Indeed, Plaintiff's repeated redemptions treated the Companies more as a bank than as a family treasure. Plaintiff alone is responsible for her loss.

### 2. Plaintiff's Second Claim Fails to State a Claim Under Section 10b-5(b) and Should Be Dismissed.

Section 10b-5(b) prohibits the making of "any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 CFR § 240.10b-5. Under her Second Claim, however, Plaintiff has identified no actual misrepresentation of material fact or omission of a material fact to avoid a misleading statement. Instead, Plaintiff points only to changes in future circumstances—most particularly, the sale of Widen Enterprises fifteen months after the May 2020 Redemption Agreement—and seeks to imply that a misrepresentation was made.

Most notably, while Plaintiff generally claims that she was told a series of "misrepresentations," not one of these alleged misrepresentations relate to any requirement or demand that she redeem her shares.[7] Indeed, no Defendant ever required or demanded that Plaintiff sell her shares. Nor could they force her to do so. Certainly Widen Enterprises is not potentially liable for any conduct here. As previously stated, Widen Enterprises was not a seller of the shares and is not a signatory to the May 2020 Redemption Agreement. Therefore, Plaintiff cannot be found to have stated a claim for securities fraud against Widen Enterprises.

As Plaintiff openly admits, she was "financially strained" by her divorce and "was forced to make desperate financial decisions." Compl. ¶ 54. It was Plaintiff who first approached Reed with a request for money. *Id.* ¶¶ 67-68. Kiesler, acting for Windy Waters, offered to purchase from

---

[7] Moreover, this Court may reject any claim of reasonable reliance on these "misrepresentations," regardless of their actual merit, given that the May 2020 Redemption Agreement is a fully integrated agreement. Compl. at Ex. A § 7(b).

Plaintiff all of her shares in the Company under the same valuation method used for all prior stock redemptions, *id.* at Ex. F, including all five prior partial redemptions of Plaintiff's shares (including as recently as January 2019), *id.* ¶ 55-58, n.5, and Plaintiff's brothers' complete redemptions when they were bought out. *Id.* ¶ 80.

Given this context, and under a fair reading of the "plausibility" requirements of *Twombly,* the Court will see that Plaintiff's statements and omissions in her Second Claim are not actionable as fraud but instead are true statements of facts or of opinions.

Turning to the alleged misrepresentations, the Court will find <u>no</u> untrue statements of material fact, despite Plaintiff's assertions to the contrary.

(a)    Plaintiff's first bullet under Paragraph 214 wrongly asserts that she was falsely told the only way to obtain cash was to redeem all of her shares in the Companies. *Id.* ¶ 214. Plaintiff is guilty of recharacterizing her own facts. What Plaintiff actually alleges in the Complaint is that the "only way she could get any cash from the Companies" was to sell her entire interest in the Companies. *Id.* ¶ 74. Kiesler did not raise Millmont as a source of cash and neither did Plaintiff, even though Reed first mentioned the idea initially to Plaintiff. The idea was simply not pursued. Plaintiff says that "Kiesler reiterated that the Companies wanted to purchase her entire interest." *Id.* ¶ 77. That was the offer that was made and accepted. And Plaintiff has no basis to impose an obligation on the Companies to extend to Plaintiff, a shareholder, any loan or to make any special distribution. *Reget*, 242 Wis.2d at 309 (corporation had no duty to make a market in its stock or to repurchase shares at a price acceptable to minority shareholder). Put differently, the Companies had every right not to offer a loan, just as they had the right not to hand Plaintiff the $100,000 cash she first requested that Kiesler said the Companies did not have to spare. Compl. ¶¶ 71-72. Where Plaintiff elects to contract for another redemption of her stock, and at a price comparatively better

18

than offered a week prior and at a company valuation higher than attained in January 2019, that choice should be honored.

(b)     The second bullet under Paragraph 214 again mischaracterizes and is contradicted by the other facts in the Complaint. Nothing allegedly stated or discovered by Plaintiff about the Companies supports the conclusion that the Companies had $100,000 (or even $50,000) in cash sitting around available to give Plaintiff. There is no basis for asserting that the Companies were "flush with cash," as Plaintiff repeatedly and falsely asserts. As stated already, COVID was already impacting the economy, and Windy Waters had less than $6 million in operating capital, which represented only two months' revenue for Widen Enterprises. *Id.* ¶ 162. Nor does a company have a duty to give shareholders money or loans. Thus, the statements complained of were, in fact, true statements.

(c)     The third bullet under Paragraph 214, concerning the value of Plaintiff's shares at the time of the Redemption, overlooks entirely the prior redemption agreements using the same valuation method, *id.* at Ex. F, including five partial redemptions by Plaintiff herself, *id.* ¶¶ 55-58, n.5, and complete redemptions by her brothers. *Id.* ¶ 80. Thus, again, the statement was true.

(d)     As for the fourth bullet under Paragraph 214, Plaintiff's complaints of time pressure ring hollow. As explained previously, she ignored the first two deadlines, letting the time lapse, and/or they were not enforced by Defendants. *Id*. ¶¶ 86-87, 93. Ultimately, Plaintiff had a week to "retain independent counsel and advice," but apparently did not use her time productively or simply failed to obtain the advice she acknowledged that she needed on May 6. *Id.* ¶ 91. At no point was she foreclosed from obtaining financial and legal counsel. Subsequently, Plaintiff admits that she went to the Companies' office, without having obtained any information from an attorney or financial advisor, to sign the sale documents.  *Id.* ¶¶ 108-09. While Plaintiff alleges that Kiesler

did not provide any financial information or disclosure, or show her how the purchase price had been calculated, Plaintiff never alleges that she asked Kiesler or anyone else for that information. *Id.* ¶¶ 118-19. Indeed, Plaintiff admits that "Kiesler simply gave Stacy documents to sign that Attorney A had prepared." *Id.* ¶ 120. Nor is that surprising, as Plaintiff did not have "any information about the Companies' financial, operating, or strategic matters" when she previously sold her stock to the Companies, five separate times, over a 15-year period. *Id.* ¶¶ 35, 59, n.5.

(e)     For the fifth bullet under Paragraph 214, Plaintiff refers to statements Reed made in or around February 2020 to "third parties," as mentioned in Paragraph 50: "Reed made statements to the effect that Widen Enterprises regularly received solicitations and offers from potential acquirers and that he was considering selling Widen Enterprises because he could personally receive $80 million for his ownership interest in Widen Enterprises…." *Id.* ¶ 50. Even if that statement were true, which Defendants vehemently deny, it is both deficient and immaterial. First, the statement fails to meet the pleading standard for Rule 9, as it does not provide when the statement was made, what exactly was said, to whom it was said, or where it was said. Indeed, Plaintiff couches her vague statement with the caveat "to the effect," rather than providing an actual quotation. To satisfy this heightened pleading standard, a "plaintiff may need to perform pre-complaint investigation to provide 'the who, what, when, where, and how'" underlying the alleged fraud. *Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018) (quoting *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)). Second, even if Reed had made a statement to that "effect" (which he denies), such statement is not indicative of actual intent, and if made in February 2020 (as alleged, *see* Compl. ¶¶ 49-50), was made prior to the COVID pandemic rearing its ugly head. Third, even if there were a discussion of the prospect of some future sale, that

20

possibility did not change the valuation formula used without variation over prior redemptions or Plaintiff's urgent need for cash.

(f)     Finally, as to the sixth bullet under Paragraph 214 concerning the risk Plaintiff would take in not selling her shares, there is no question that such a statement was true when said. Plaintiff's allegation is contained in Paragraph 81, wherein she alleges that "Kiesler also told [Plaintiff], in sum and substance, that she would be smart to sell her interest in the Companies while she had the chance because Widen Enterprises, the operating company, might not even be around in a few years, and she risked ending up with nothing if she didn't take the offer." Such a statement could be made about every business. The word "might" recognizes the possibility that there are no guarantees in business; the proverbial bird in hand over two in the bush. Furthermore, Plaintiff's statement is not sufficiently particularized under Rule 9 standards. Again, Plaintiff does not share an actual quote from Kiesler but instead offers what he said "in sum and substance." Plaintiff takes liberties with that summary to conclude that Kiesler was referencing impending insolvency. However, the risk of insolvency or failure is not expressly stated as the reasons why Widen Enterprises might not be around in a few years. Beyond that, Kiesler is not alleged to be Plaintiff's financial consultant, nor was he ever asked to be.

In turn, while Plaintiff creates a list of claimed omissions and misdeeds, each one could have been "discovered" prior to the sale had Plaintiff simply exercised her right to review the financial information of the Companies. Plaintiff did not do so.  The law is clear that a plaintiff seller may not on the one hand abdicate reasonableness to become informed by available data, and on the other hand seek to create a duty to disclose additional information on a corporation or its insiders.  As the court held in *Arber v. Essex Wire Corp.*,

> Appellants also claim that appellees did not disclose book value
> which was substantially greater than the offer price, and other

> financial data such as earnings per share. This information, however, was readily available to appellants who, although aware of its existence and availability, were simply uninterested. We hold that an insider has no affirmative duty to direct a seller's attention to all routine data commonly found in the statements and books of the corporation, at least where that information is readily available; the outsider has knowledge that it is available and makes no inquiry; and the information thus available is not of an unusual or extraordinary nature.

490 F.2d 414, 420 (6th Cir. 1974).

Also directly on point to the case at bar is the district court's holding in *Scarabello,* 856 F. Supp. at 404. In that case, the plaintiff sought to sell his share in AWVC back to the company. The company had a standard plan under which it paid $100 per share in these purchases. *Id.* The book value of AWVC was substantially greater than $100 per share. *Id.* In July 1989, plaintiff tendered his 26 shares in AWVC, and received from the company a check for $2,600. *Id.* One month later, in August 1989, the AWVC board began discussing a plan to liquidate one of AWVC's subsidiaries, and a year later, in August 1990, it paid a special dividend of $225 per share for the sale of the subsidiary. *Id.* Subsequently, plaintiff filed a complaint alleging that the corporate officer of AWVC had failed to disclose to him as a minority shareholder that the fair value of the AWVC stock was well in excess of $100 per share. *Id.* In granting summary judgment for the defendant, the court noted that "corporations do not have an affirmative duty to determine and offer fair value when purchasing stock from minority shareholders." *Id.* at 407. Additionally, the court held as follows:

> [T]he Court notes first, that the Plaintiff never requested any materials regarding the value of the stock.  Second, and more importantly, the fiduciary duty owed to minority stockholders does not include a duty to automatically reveal materials regarding the value of the stock when the minority shareholder expresses a desire to sell. Such materials must be provided to a minority shareholder upon request, and thus such materials do not constitute special facts known only to the controlling shareholder because of his unique position. Consequently, this Court holds that Defendants failure to

22

> provide information regarding the value of AWVC's stock, at the time the Plaintiff expressed his desire to sell, does not constitute a material omission giving rise to fraud in the sale of securities. As Defendants' actions do not constitute fraud in the sale of securities. . . .

*Id.* at 408.

Indeed, the Seventh Circuit holds that when purchasing shares from a minority investor, a company must disclose only "material information." *Michaels v. Michaels*, 767 F.2d 1185, 1194-97 (7th Cir. 1987). The standard for materiality was laid out in *TSC Indus., Inc. v. Northway Inc.* 426 U.S. 438 (1976). There, the Supreme Court held that materiality requires "a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *Id.* at 449. In the present case, Defendants satisfied this standard. As noted above, Plaintiff had the opportunity to review financial records and alleges that she did, in fact, consult with financial and legal advisers (if *ex post facto*, that consultation to Plaintiff now seems insufficient). Any information regarding share value in those records was fully disclosed.

While Plaintiff alleges that Defendants contemplated a sale of the Company prior to her entry into the May 2020 Redemption Agreement, the exhibits to the Complaint make it clear that no sale of the company was imminent at the time Plaintiff sold her shares. The contract for M&A advisory services between SEG and the Company was not signed until January 2021—eight months after the May 2020 Redemption Agreement was signed. *See* Compl. at Ex. E. The contract for the ultimate sale of Widen Enterprises was not signed until August 2021—fifteen months after Plaintiff sold her shares. *See id*. at Ex. C. That elapse of time makes clear that Plaintiff's single allegation in Paragraph 50 of supposed "consideration" of a sale by Reed should be disregarded. "[W]here an exhibit and the complaint conflict, the exhibit typically controls." *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). *See also Bogie v. Rosenberg*, 705 F.3d 603,

609 (7th Cir. 2013); *Flournoy v. Winnebago Cnty. Sheriff's Off.*, No. 14-cv-528-JDP, 2015 U.S. Dist. LEXIS 7181, at *3 (W.D. Wis. Jan. 22, 2015) (quoting *Forrest*).

This Court well knows that this is not the first time a seller of shares has complained when the value of those shares increased after the sale. But Companies are not required to share with sellers their forecast or predictions of the future, even when those contemplate an increase in value. As the court held in *Arber*, the law mandates disclosure only of existing material facts—"It does not require an insider to volunteer any economic forecast." 490 F.2d at 421 (finding that although post sale developments greatly increased the value of Essex stock, "and no doubt the Arbers' sale of their shares proved improvident by hindsight," Section 10(b) does not require the provision of "superior financial or other expert analysis").

With 20/20 hindsight, Plaintiff is understandably disappointed in herself for not exploring other avenues for cash instead of redeeming her shares that sixth and final time in May 2020. But Plaintiff agreed to sell all of her shares, and has been receiving the benefit of that decision—regular monthly cash payments in excess of $16,000, plus interest. While Plaintiff would have made a greater profit had she waited fifteen months and retained her shares, she did not do so. She sold, and now has seller's remorse, but the securities laws are not intended to protect against seller's remorse. *Vacold LLC v. Cerami,* 545 F.3d 114, 131 (2d Cir. 2008).

The federal securities laws require the disclosure of "material non-public information." In this case, all information was disclosed. Plaintiff's claim under Section 10b-5 fails and must be dismissed.

### C.    Plaintiff Fails to State a Claim Against Reed Widen for Controller Liability Under §20(a) of the Exchange Act (Third Claim for Relief).

In Plaintiff's Third Claim for Relief (Compl. ¶¶ 220-26), Plaintiff seeks to allege a claim against Reed under Section 20(a) of the Securities and Exchange Act. 15 U.S.C. § 78(t). This claim

fails and must be dismissed because Plaintiff's Section 20(a) controller liability claim is a derivative claim. As such, it is only actionable if Plaintiff has adequately alleged a primary violation under Section 10b of the Exchange Act. *Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 806 (N.D. Ill. 2007) (granting motion to dismiss under Rule 12(b)(6)). In this case, because Plaintiff fails to state a claim for violation of Section 10b under either Plaintiff's First or Second Claims for Relief, this Court must dismiss Plaintiff's Third Claim for Relief alleging Controller Liability.

### D.   Plaintiff Fails to State a Claim for Common Law Fraud (Fourth Claim for Relief).

Plaintiff's Fourth Claim for Common Law Fraud (Compl. ¶¶ 227-35), as alleged against all Defendants, fares no better than her securities fraud claims. Plaintiff relies on the alleged "affirmative misrepresentations" and omissions of "material information" included in her Second Claim for Relief. *Id.* ¶¶ 229-30, 214-15. The "material information" that Plaintiff alleges "was known to the Defendants but not to [her]" included "the value of the Companies, the prospects for selling them, and the alternative means by which Plaintiff could obtain cash." *Id.* ¶ 231.

Plaintiff's Common Law Fraud claim is built on the faulty assumption that any Defendant had any duty to disclose "facts" to Plaintiff, but failed to do so. Plaintiff alleges that she "was induced to sign a Redemption Agreement through intentional misrepresentations made to her prior to, and in conjunction with, her signing the Redemption Agreement and by material omissions of fact that were intentionally withheld from her." *Id.* ¶ 228. Plaintiff also once more wrongly includes Widen Enterprises as a Defendant on this claim, when Widen Enterprises was not a seller of the shares and is not a signatory to the May 2020 Redemption Agreement. Therefore, Plaintiff cannot be found to have stated a claim for fraud against Widen Enterprises.

To state a claim for common law fraud, the following allegations must be pled:

> (1) the defendant made a factual representation; (2) which was untrue; (3) the defendant either made the representation knowing it was untrue or made it recklessly without caring whether it was true or false; (4) the defendant made the representation with intent to defraud and to induce another to act upon it; and (5) the plaintiff believed the statement to be true and relied on it to his/her detriment.

*Kaloti Enterprises, Inc. v. Kellogg Sales Co*., 699 N.W.2d 205, 212 (Wis. 2005).

"An intentional misrepresentation claim may arise either from a 'failure to disclose a material fact' or from a 'statement of a material fact which is untrue.'" *Id.* at 211. *See also Ollerman v. O'Rourke Co., Inc*.,  288 N.W.2d 95, 101 (1980) (holding that it is well-established that a nondisclosure is not actionable as a misrepresentation tort unless there is a duty to disclose). "[A] person in a business deal must be under a duty to disclose a material fact before he can be charged with a failure to disclose. When there is a duty to disclose a fact, the law has treated the failure to disclose that fact 'as equivalent to a representation of the nonexistence of the fact.'" *Kaloti*, 699 N.W.2d at 212 (internal citations omitted). In *Kaloti*, the Wisconsin Supreme Court held that a party to a business transaction has a duty to disclose a fact where:

> (1) the fact is material to the transaction; (2) the party with knowledge of that fact knows that the other party is about to enter into the transaction under a mistake as to the fact; (3) the fact is peculiarly and exclusively within the knowledge of one party, and the mistaken party could not reasonably be expected to discover it; and (4) on account of the objective circumstances, the mistaken party would reasonably expect disclosure of the fact.

*Id.* at 213. Wisconsin law further provides that common law fraud claims are not meant to allow parties to a business transaction to blame others for bad deals they enter into:

> [P]arties to a business transaction must use their faculties and exercise ordinary business sense, and not call on the law to stand *in loco parentis* to protect them in their ordinary dealings with other business people. Further, in a free market the diligent should not be deprived of the fruits of superior skill and knowledge lawfully acquired.

*Id.* at 213 (internal citations omitted).

To start, and as argued above with respect to Plaintiff's bulleted list of representations and omissions (Paragraphs 214-15) advanced as part of Plaintiff's Second Claim for Relief (*see supra,* Sec. II.B.2), Plaintiff does not satisfy the basic requirements to plead fraud with particularity. Nor does she actually rely on untrue statements (or omissions) of material fact.

Notwithstanding that failure of pleading, the basic facts alleged cannot support a finding of fraud as to her final stock sale and signing of the May 2020 Redemption Agreement. First, Plaintiff's cause of action for common law fraud against Reed fails as a matter of law because there are no allegations in the Complaint that he had any dealings with Plaintiff prior to her sale of her stock. There are no allegations that Reed spoke to or communicated with Plaintiff about the sale of her stock, made representations to her (whether true or false) in connection with the sale of her stock, or negotiated the price for her stock. So as to Reed, at a minimum, the Complaint fails to state a claim for common law fraud.

Second, as to Defendants generally, the Complaint does not allege that Plaintiff ever asked Reed or Kiesler the value of the Companies or the prospects of selling them. Instead, she alleges that Reed and Kiesler had a duty to disclose those facts to her without being asked. But Reed's and Kiesler's opinions as to the value of the Companies would merely be that, their opinions, and, if they were wrong, Plaintiff would then claim that they made an intentional misrepresentation to her on that subject. So they were put in a lose-lose situation. It was not the job of either Reed or Kiesler to serve as Plaintiff's financial advisor. She did not ask them to do so, and they did not offer or agree to do so. If Plaintiff wanted to have someone value the Companies before she sold her stock, she could have and should have requested financial statements and other business records. Indeed, Plaintiff acknowledged repeatedly in advance of executing the May 2020 Redemption Agreement that she needed to obtain advice from an attorney or financial adviser. *See, e.g.,* Comp. ¶¶ 91, 97.

27

Plaintiff apparently failed to do so to her satisfaction, and seems to have spent her time seeking the counsel of the Law Firm's Attorney A, who she had consented to representing the Companies' interest, not hers, on such redemptions. *Id.* ¶¶ 62, 100-02, 110-16. That failure by Plaintiff is fatal to any claim of fraud. *Fed. Deposit Ins. Corp. v. Lauterbach,* 626 F.2d 1327, 1334 (7th Cir. 1980) ("[a] party presented with an opportunity to learn the truth may not ignore that opportunity and blindly rely upon another's representations where ordinary care would have revealed the truth") (citing *Williams v. Rank & Son Buick, Inc.,* 44 Wis.2d 239, 170 N.W.2d 807, 810-11 (1969)).

No less important is Plaintiff's failure to satisfy the fourth element of a common law fraud claim based on omission—"on account of the objective circumstances, the mistaken party would reasonably expect disclosure of the fact." No facts alleged in the Complaint support a conclusion that Plaintiff expected additional information that she was not asking for. Plaintiff apparently did not request financial information related to her five prior stock redemptions in 2005, 2007, 2011, 2017 or 2019. As such, the objective circumstances make it *un*reasonable to conclude that Reed or Kiesler should have known that she wanted that information in May 2020.

In her capacity as a director of Windy Waters, and shareholder in the Companies, and admittedly under severe "financial strain" as a result of her divorce proceedings, Plaintiff was "forced to make desperate financial decisions," including a fifth redemption of her shares in Companies in 2019, and a sixth and final redemption a mere fourteen months later. *Id.* ¶¶ 54-58, 67. Her decision to focus on negotiating with the Companies and for a stock redemption was just that—her decision.

### E.    Plaintiff Fails to State a Claim for State Law Securities Fraud (Fifth Claim for Relief).

Plaintiff's Fifth Claim for Relief, asserted under the Wisconsin Securities Fraud Act, Wis. Stat. §551.501 *et seq*. (Compl. ¶¶ 236-45), fails and must be dismissed for the same reasons as her

Second Claim for Relief (*supra*, Sec. II.B.2). As also argued above, Widen Enterprises is plainly not a proper Defendant for this Fifth Claim for Relief, given that it was not a seller of the shares and is not a signatory to the May 2020 Redemption Agreement.

Wis. Stat. § 551.501 is titled "General Fraud" (emphasis omitted), and generally prohibits fraud "in connection with the offer, sale, or purchase of any security." *Brown v. First Cap. Sur.& Tr. Corp.*, No. 2011AP63 (Wis. Ct. App.). The Wisconsin Securities Act parallels the language of Section 10b-5 of the Exchange Act. As such, the case law and analysis under Section 10b-5 apply here as well. *See Colonial Bank & Tr. Co. v. Bankshares Corp.,* 478 F. Supp. 1186, 1189 (E.D. Wis. 1979). Thus, federal case law dealing with the federal version of the rule is persuasive authority. *See State v. Evans,* 617 N.W.2d 220, n.2 (Wis. Ct. App. 2000) ("[W]here a state rule mirrors the federal rule, we consider federal cases interpreting the rule to be persuasive authority.").

In this case, Plaintiff bases her securities fraud claim on the lack of access to information and alleged non-public information. Compl. ¶ 239 (relying on Plaintiff's Second Claim for Relief). As noted above, Plaintiff had the right of access to the financial information about the Companies, and repeatedly acknowledged her need to consult with a financial adviser. *Id*. ¶¶ 97-107. Yet, Plaintiff failed to obtain and review this information, and proceeded with the sale of her shares without obtaining sufficient assistance of either a financial advisor or an attorney—both of which she identified as needing. This was Plaintiff's choice, and any loss arising from her decision was the result of Plaintiff's own action.

In addition, Plaintiff's claim that Defendants failed to inform her of any planned sale is refuted by the date on the agreement with SEG. This agreement, attached as Exhibit E to the Complaint, is dated January 27, 2021—eight months after Plaintiff sold her shares. Under this

29

Circuit's jurisprudence, it is the date of the SEG agreement that controls. *See Forrest,* 507 F.3d at 542 ("where an exhibit and the complaint conflict, the exhibit typically controls"); *Bogie,* 705 F.3d at 609; *Flournoy,* 2015 U.S. Dist. LEXIS 7181, at *3 (quoting *Forrest*).

> **F.**      **Plaintiff Fails to State a Claim for Breach of Fiduciary Duties Against Reed and Kiesler Related to the May 2020 Redemption Agreement (Sixth Claim for Relief).**

Plaintiff includes a wide range of alleged unlawful conduct in her Sixth Claim for Relief (Compl. ¶¶ 246-258). All such claims are barred under the valid and binding Release, negotiated and included in the May 2020 Redemption Agreement. Indeed, Plaintiff premises many of her claims of fiduciary breach against Reed and Kiesler on the execution of the May 2020 Redemption Agreement. The Release remains valid and binding, and Plaintiff has failed to state a claim for any breaches or damages.

> **G.**      **Plaintiff Fails to State a Claim for Unjust Enrichment (Seventh Claim for Relief).**

Plaintiff's Seventh Claim for Relief (Compl. ¶¶ 259-64) asserts a right to recovery from Reed, Kiesler, and Windy Waters under the doctrine of unjust enrichment. Plaintiff fails to state a claim in light of the May 2020 Redemption Agreement and other legal relief alleged. Therefore, dismissal of the Seventh Claim for Relief is proper.

The elements of a cause of action for unjust enrichment are "(1) a benefit conferred on the defendant by the plaintiff, (2) appreciation or knowledge by the defendant of the benefit, and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable for the defendant to retain the benefit." *Watts v. Watts,* 405 N.W.2d 303, 313 (Wis. 1987). Here, Plaintiff alleges that in redeeming her stock, Reed, Kiesler, and Windy Waters "captured the true value of [Plaintiff's] interest in the Companies, while paying [Plaintiff] only a small fraction of that value." Compl. ¶ 260. Plaintiff further alleges that "[i]t would be inequitable for Reed, Kiesler

or Windy Waters to retain the benefits conferred upon them by [Plaintiff] in the Redemption without paying [Plaintiff] the value thereof under the circumstances." *Id.* ¶ 263.

Plaintiff, however, entered into a binding contract, the May 2020 Redemption Agreement, along with the Promissory Note. As argued above, that contract is valid and binding and includes a mutual Release, which precludes this claim for unjust enrichment. As Plaintiff has no basis to void or rescind the May 2020 Redemption Agreement, her Seventh Claim for Relief cannot lie, as a cause of action for unjust enrichment is not available where the parties have entered into a valid contract. *See Cont'l Cas. Co. v. Wis. Patients Comp. Fund*, 473 N.W.2d 584, 587 (Wis. Ct. App. 1991) ("The doctrine of unjust enrichment does not apply where the parties have entered into a contract."); *Townsend v. Neenah Joint Sch. Dist.*, 2016 WL 4097785, at *4 (Wis. Ct. App. Aug. 3, 2016) ("[T]he existence of a contract is fatal to Plaintiffs' argument. Unjust enrichment is inapplicable where there is a valid, enforceable contract.").

The reason unjust enrichment is not available when the parties have entered into a valid contract is that "[u]njust enrichment is not a mechanism for correcting soured contractual arrangements." *N. Crossarm Co. v. Chem. Specialties, Inc.*, 318 F. Supp. 2d 752, 767 (W.D. Wis. 2004). *See also N. Grp., Inc. v. Tech 4 Kids Inc.*, 352 F. Supp. 3d 882, 887-88 (E.D. Wis. 2018) ("Generally, the doctrine of unjust enrichment does not apply where the parties have entered into a contract. This is because the parties have already bargained for the terms each is willing to accept, and no third person's sense of justice should upset the agreement into which they have freely entered. Unjust enrichment is not a means for improving the terms of a valid contract.")

Notwithstanding the above arguments, it also should be noted that unjust enrichment is an equitable cause of action that is not available when a plaintiff has a remedy at law. *See Smith v. RecordQuest, LLC*, 989 F.3d 513, 520 (7th Cir. 2014) ("Smith cannot resort to a remedy in equity

(unjust enrichment) when she has a remedy at law…."). In the Complaint, Plaintiff asserts numerous legal causes of action which, if allowed to survive the instant motion, have the possibility of providing her with legal remedies under federal statutes, state statutes, and the common law. As a result, Plaintiff should be precluded from asserting this claim in equity under these circumstances. *See Harris v. Harvey*, 436 F. Supp. 143, 147 (E.D. Wis. 1997); *Brame v. Gen. Motors LLC*, 535 F. Supp. 3d 832, 843 (E.D. Wis. 2021).

### H.    Plaintiff Fails to State a Claim for Civil Theft (Eighth Claim for Relief).

For Plaintiff's Eighth Claim for Relief (Compl. ¶¶ 265-70), Plaintiff once again relies on the claims of affirmative misrepresentation and material omissions in her Second Claim for Relief. *Id*. ¶ 266. As argued above with respect to the Second Claim for Relief (and the Fourth Claim for Relief as to Common Law Fraud), *see supra,* Sec. II.B.2, Plaintiff's allegations in Paragraphs 214 and 215 are *not* actually "untrue statements or omissions of material fact." Therefore, Plaintiff's predicate act for the alleged statutory violation has not been alleged. Dismissal is proper.

Under Wisconsin law, it is a crime to "[o]btain[ ] title to property of another person by intentionally deceiving the person with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made." Wis. Stat. § 943.20(1)(d). Plaintiff has not alleged facts showing intentional deception with a false representation (or material omission), much less an intent to defraud Plaintiff. Indeed, as mentioned previously, Plaintiff makes no mention whatsoever of any representations by Reed to her as to the Redemption Agreement. Instead, her negotiations and meetings were with Kiesler. Accordingly, Plaintiff fails to state a claim for Civil Theft under Wisconsin Statutes section 943.20 and 895.446.

Notwithstanding the foregoing, as to Widen Enterprises, specifically, Plaintiff fails to state a claim for civil theft. Again, Widen Enterprises was not a seller of the shares and is not a signatory

to the May 2020 Redemption Agreement. Thus, no plausible basis for liability is alleged and dismissal as to Widen Enterprises is required.

**I.      Plaintiff Fails to State a Claim for Civil Conspiracy to Commit Common Law Fraud (Tenth Claim for Relief).**

Plaintiff's allegations under her Tenth Claim for Relief (Compl. ¶¶ 286-90), asserting against all Defendants a cause of action for "Civil Conspiracy to Commit Common Law Fraud," are deficient on multiple levels. Dismissal is proper for failure to state a claim under Rule 12(b)(6).

Under Wisconsin law, a civil conspiracy is "a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful." *Thomas v. Mallett*, 701 N.W.2d 523, 566 (Wis. 2005). However, in Wisconsin, there is no such thing as a "civil action for conspiracy. There is an action for damages caused by acts pursuant to a conspiracy but none for the conspiracy alone." *Radue v. Dill*, 246 N.W.2d 507 (Wis. 1976); *see also Onderdonk v. Lamb*, 255 N.W.2d 507, 509 (Wis. 1997) (same); *Stewart v. Rice*, 2012 WL 2328227, at *1 (W.D. Wis. June 19, 2012) ("[T]here is no cause of action for conspiracy by itself; it is simply a manner of holding persons jointly liable for a violation of the law."). Therefore, Plaintiff's Tenth Claim for Relief is improper and must be dismissed.

Notwithstanding that failure of pleading, Plaintiff has not alleged the existence of an actual conspiracy. Although Plaintiff alleges that "Defendants orchestrated a conspiracy with one another," the Complaint fails to allege any participation by Reed. Rather, Paragraphs 67-122 of the Complaint set forth facts relating to how she was allegedly fraudulently induced into signing the Redemption Agreement. Those alleged facts exclusively reference Plaintiff's communications with Kiesler; there is no mention of Reed anywhere in the allegations. As a result, the conspiracy claim fails as a matter of law because Kiesler cannot conspire with himself.

That inability to conspire with oneself is expressed in the intra-corporate conspiracy doctrine, which bars as a matter of law Plaintiff's attempt to assert a civil conspiracy claim. Under the intra-corporate immunity doctrine, employees and agents of a corporation cannot, as a matter of law, conspire together because they are deemed a single entity for purposes of the law of conspiracy. *Norkol/Fibercore, Inc. v. Gubb*, 279 F. Supp. 2d 993, 1000 (E.D. Wis. 2003). *See also Elbe v. Wausau Hosp. Ctr.*, 606 F. Supp. 1491, 1502 (W.D. Wis. 1985) ("[A] corporation cannot conspire with itself and . . . the acts of an agent are the acts of the corporation."); *Smith v. Eckstein*, 2018 WL 2976031, at *3 (E.D. Wis. June 13, 2018) ("Under [the] [intra-corporate conspiracy] doctrine, a conspiracy cannot exist solely between members of the same entity."); *Medline Indus., Inc. v. Diversey, Inc.*, 563 F. Supp. 3d 894, 925 (E.D. Wis. 2021) ("[A]s a matter of law, a corporation and its wholly owned subsidiary are incapable of engaging in a conspiracy.").

As alleged, Kiesler was acting for the Companies as the Treasurer of Windy Waters and CFO of Widen Enterprises. Kiesler (like Reed, had Plaintiff alleged any conduct by Reed) was an individual actor and an agent of the Companies, both corporate defendants. As noted previously, Windy Waters was the holding company to Widen Enterprises. Therefore, the Defendants are deemed to be a single entity that, as a matter of law, cannot conspire with itself. For that reason too, Plaintiff's Tenth Claim for Relief fails to state a claim.

Finally, as argued above as to the First, Second, Fourth, Fifth, and Eighth Claims for Relief, Widen Enterprises is not a proper Defendant for this claim. Widen Enterprises was not a seller of the shares and is not a signatory to the May 2020 Redemption Agreement. Plaintiff cannot allege facts to support a claim either that Widen Enterprises conspired or defrauded Plaintiff. Dismissal as to Widen Enterprises is thus required.

J.      **Plaintiff's Declaratory Relief Claims Each Fail to State a Claim (Eleventh-Fourteenth Claims for Relief).**

Plaintiff asserts four claims pursuant to the Declaratory Judgment Act, seeking a declaration of judgment in her favor. Each claim should be dismissed, as argued below. Also for each claim, Widen Enterprises is not a proper Defendant and no claim for declaratory relief has been stated. Widen Enterprises was not a seller of Plaintiff's shares and is not a signatory to the May 2020 Redemption Agreement.

1.      **The Eleventh Claim for Relief Must Be Dismissed Because Plaintiff Has Not Stated a Claim for Securities Fraud.**

Plaintiff's Eleventh Claim for Relief (Compl. ¶¶ 291-96) seeks a declaratory judgment order based on a finding of securities fraud, thus voiding the Redemption Documents, including the May 2020 Redemption Agreement with its Release. *Id.* ¶ 292. As argued above, Plaintiff fails to state a claim for securities fraud under either the First Claim for Relief or the Second Claim for Relief. *See supra,* Sec. II.B. Accordingly, the Court cannot issue the declaratory relief requested. Dismissal is required.

2.      **The Twelfth Claim for Relief Must Be Dismissed Because Plaintiff Has Not Stated a Claim for Voiding the Redemption Documents Due to Unconscionability.**

Plaintiff's Twelfth Claim for Relief (Compl. ¶¶ 297-309) seeks a declaratory judgment order that the Redemption Documents must be voided "because they are procedurally and substantively unconscionable under Wisconsin law." *Id.* ¶ 298. Once again, Plaintiff has failed to state a claim, and dismissal is required.

Unconscionability is a question of law. *Trinkle v. Schumacher Co.*, 301 N.W.2d 255, 258 (Wis. Ct. App. 1980); *see also Leasefirst v. Hartford Rexall Drugs, Inc.*, 483 N.W.2d 585, 587 (Wis. Ct. App. 1992) ("The Wisconsin Supreme Court treats unconscionability as an issue of law . . . ."). Unconscionability has generally been recognized where there is an absence of meaningful

35

choice on the part of one party, together with contract terms that are unreasonably favorable to the other party. *See Deminsky v. Arlington Plastics Mach.*, 657 N.W.2d 411, 422 (Wis. 2011). For a contract to be declared invalid as unconscionable, it must be determined to be both procedurally and substantively unconscionable. *Wis. Auto Title Loans, Inc. v. Jones*, 714 N.W.2d 155, 164 (Wis. 2006).

In *Disc. Fabric House of Racine, Inc. v. Wis. Tel. Co.*, 345 N.W.2d 417 (Wis. 1984), the Wisconsin Supreme Court laid out the factors to be considered in determining procedural and substantive unconscionability:

> Under the "procedural" rubric come those factors bearing upon . . . the real and voluntary meeting of the minds of the contracting parties: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question. The substantive heading embraces the contractual terms themselves, and requires a determination whether they are commercially reasonable.

*Id*. at 425*; see also Wis. Auto Title Loans*, 714 N.W.2d at 165-66. Furthermore, substantive unconscionability "is usually found in cases where commercial interests have preyed on poor and disadvantaged consumers, unduly restricting the consumer's remedies or unduly expanding their own." *Nichols v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 509 F. Supp. 2d 752, 759 (W.D. Wis. 2007).

Under these factors, Plaintiff plainly fails to plead a claim for unconscionability. Plaintiff reveals by her Complaint that she had a meaningful choice—she could have decided not to sign the Redemption Agreement and instead held onto her stock. She could have explored other ways to obtain cash. The presence of meaningful choice is made especially clear just minutes before Stacy signed the Redemption Agreement, when Attorney A, in response to Plaintiff's request for counsel, told her that "nobody could force her to sign the documents." Compl. ¶ 113. The case law

is in accord. *See Hankee v. Menard, Inc.*, 2002 WL 23257167, at *4 (W.D. Wis. Apr. 15, 2002) (holding that an employment agreement was not unconscionable because the plaintiff "did have a choice: she could have rejected the agreement and found employment elsewhere."). It is perhaps unsurprising that after learning of the $162 million purchase price in September 2021, Plaintiff experienced seller's remorse and wished that she had not sold her stock. Hindsight, however, is not a proper consideration under the law of unconscionability. *See Matter of Est. of Katze-Miller*, 463 N.W.2d 853, 861 (Wis. Ct. App. 1990) (citing *Brobeck v. Telex Corp.*, 602 F.2d 866, 875 (9th Cir. 1979) ("[W]hether a contract is fair or works an unconscionable hardship is determined with reference to the time when the contract was made and cannot be resolved by hindsight."). As such, the requested declaratory relief cannot be granted.

### 3. The Thirteenth Claim for Relief Must Be Dismissed Because Plaintiff Has Not Stated a Claim for Voiding the Redemption Documents Due to Duress.

Plaintiff's Thirteenth Claim for Relief (Compl. ¶¶ 310-19) seeks a declaratory judgment order that the Redemption Documents must be voided because Plaintiff "signed them under duress." *Id.* ¶ 311. Once more, Plaintiff's actual allegations disprove duress and thus refute the right to any relief.

As discussed at length already, Plaintiff alleges that as a result of her divorce, she was "financially strained" and "forced to make desperate financial decisions." *Id.* ¶¶ 52, 54. By May 2020, she had only $7,000 in her bank account, and no source of income. *Id.* ¶ 64. On May 5, 2020, Plaintiff reached out to Reed for help. *Id.* at ¶ 67. The next day, Kiesler contacted Plaintiff and the two began discussing the sale of her stock using the familiar redemption agreement process Plaintiff had agreed to five times before. *Id.* ¶¶ 55-58, n.5, 70, 74. Kiesler initially offered Plaintiff $1.1 million for her stock, which Plaintiff questioned, saying the price seemed "too low." *Id.* ¶¶ 77, 78. Kiesler disagreed and told Plaintiff that, in his opinion, the price was "fair." *Id.* ¶ 79. When

Kiesler told Plaintiff that the offer was a "take it or leave it" offer, Plaintiff said she would talk with her financial advisor and attorney, and ultimately let the offer period elapse and refused to sell her shares. *Id.* ¶¶ 82, 86, 91, 93.

One week later, after updating the share price model using internal month-end numbers, Kiesler increased the offer under the proposed redemption arrangement to $1.3 million, and told her that she needed to accept the offer by the end of the day or it would be withdrawn. *Id.* ¶¶ 94, 96. Plaintiff contacted "friends in the wealth management industry and her personal accountant." *Id.* ¶ 97. She also spoke with her divorce attorney and even the Companies' attorney, who told her that "nobody could force her to sign the documents." *Id.* ¶ 113. After all of that, Plaintiff chose to accept the end-of-day deadline from the Companies and sign the May 2020 Redemption Agreement—an easy-to-understand three-page document, which Plaintiff admits was practically the same as her prior redemption agreements, save for the inclusion of the Release. *Id.* ¶ 130. On the face of the agreement, it clearly states that in return for $1,352,166.31, Plaintiff transferred her stock and released all parties "from any and all claims of any kind or nature . . . arising from the sale." *Id.* at Ex. A. Beyond that, Plaintiff represented and warranted that the May 2020 Redemption Agreement "constitutes valid and legal binding obligations of Seller, enforceable against Seller in accordance with its terms." *Id.* at Ex. A. § 3.

None of these factual allegations are sufficient to establish that the Redemption Documents were signed under duress. To establish duress, a party must show (1) "he has been the victim of a wrongful or unlawful act or threat," and (2) "[s]uch act or threat must be one which deprives the victim of his unfettered will." *Wurtz v. Fleischman*, 293 N.W.2d 155, 160 (Wis. 1980); *see also Pope v. Ziegler*, 377 N.W.2d 201, 203 (Wis. Ct. App. 1985) ("To establish the defense of economic duress, a defendant must prove, by clear, satisfactory and convincing evidence, that there was a

38

wrongful or unlawful act or threat that deprived him of his unfettered will."). In addition, the aggrieved party must have "no reasonable alternative" but to sign the contract. *Restatement (Second) of the Law of Contracts*, at § 175(1). "A threat, even if improper, does not amount to duress if the victim has a reasonable alternative to succumbing and fails to take advantage of it." *Id*. at § 175 cmt. b. Further, "merely driving a hard bargain or taking advantage of another's financial difficulties is not duress." *Stillwell v. Linda*, 329 N.W.2d 257, 258 (Wis. Ct. App. 1984).

The case of *Mendelson v. Blatz Brewing Co*., 101 N.W.2d 805 (Wis. 1960), is especially instructive here. In that case, the plaintiff alleged that he was a shareholder in a corporation with two other shareholders, who conspired to terminate his employment with the corporation and coerced him into selling his stock for less than its fair market value. *Id*. at 806. Upon terminating his employment, the other two shareholders gave the plaintiff 24 hours in which to sell his stock in the corporation for $19,000 or to purchase their stock on the same basis, knowing full well that he was unable to finance the purchase of their stock in a 24 hour period. *Id.* The plaintiff ultimately sold his stock for $19,000 when it was worth $60,000, and then claimed duress. *Id.* The Wisconsin Supreme Court rejected the plaintiff's claim, holding that because he could have retained his stock had he chose to do so, no duress occurred as a matter of law:

> Wisconsin is one of the jurisdictions which has adopted the modern view which holds that contracts and transfers may be voided when procured by business or economic compulsion, as well as by physical coercion. It should be pointed out that the 24 hour option given by the respondents to either buy or sell did not require the plaintiff to do either. Instead he could have retained his stock and continued in his status as a minority shareholder.

*Id.* at 809 (internal citations omitted).

The same conclusion should be made here. Plaintiff's financial hardship was caused by her divorce, not the Defendants. *See Selmer Co. v. Blakeslee-Midwest Co.*, 704 F.2d 924, 928 (7th Cir. 1983) ("The mere stress of business conditions will not constitute duress where the defendant was

not responsible for the conditions."). Plaintiff was not forced to sell her stock. As she readily admits, the Company's attorney told her, just minutes before she signed the Redemption Agreement, that "nobody could force her sign the documents." Compl. ¶ 113. Nonetheless, Plaintiff chose to do so. She had a choice—she could either hold onto her stock or sell it for $1.3 million. As such, no duress has been alleged as a matter of law. Plaintiff's Thirteenth Claim for Relief must be dismissed.

### 4.   The Fourteenth Claim for Relief Must Be Dismissed Because Plaintiff Has Not Stated a Claim for Voiding the Redemption Documents As Unenforceable As Against Public Policy.

Plaintiff's Fourteenth Claim for Relief (*Id*. ¶¶ 320-33) seeks a declaratory judgment order that the Redemption Documents must be voided because their terms render them unenforceable as against Wisconsin public policy. *Id.* ¶ 321. Plaintiff's allegations do not state a claim and must be dismissed.

By this claim, Plaintiff asserts that the Release provision in the May 2020 Redemption Agreement should be declared unenforceable, and the Redemption Documents voided, because "Wisconsin has a public policy against enforcing a contractual term that exempts one party from tort liability for harm caused intentionally or recklessly." *Id.* ¶¶ 326, 328, 329. Plaintiff's statement is patently false. Wisconsin law does *not* have a public policy against enforcing a contractual term that exempts one party from tort liability for harm caused by past intentional or reckless conduct. In *Love v. Med. Coll. of Wis.*, 371 F. Supp. 3d 489 (E.D. Wis. 2016), the court squarely rejected the exact same argument Plaintiff now makes:

> Plaintiff argues that the release did not foreclose claims for intentional or reckless misconduct. I disagree. The provision not only includes claims "of any nature whatsoever," but specifically includes age discrimination claims which are based on intentional conduct. Plaintiff's argument that a release of claims for intentional or reckless conduct is unenforceable based on public policy is also unpersuasive. Contracts which release a party from liability for future intentional or reckless conduct are unenforceable because they encourage such conduct. The release in the

present case, however, does not release defendants from liability for future acts but rather for past acts, and such releases are routinely upheld.

*Id.* at 493 (internal citations omitted).

Furthermore, "Wisconsin public policy favors freedom of contract." *Parsons v. Associated Banc-Corp*, 893 N.W.2d 212 (Wis. 2017); *see also Sonday v. Dave Kohel Agency, Inc.*, 718 N.W.2d 631, 645 (Wis. 2006) ("This court has consistently recognized that parties are free to contract and has endeavored to protect the right to contract by ensuring that promises will be performed."). As such, Plaintiff's Fourteenth Claim for Relief must be dismissed as a matter of law. Her claim is contrary to the law and contrary to common sense.

### K.   Plaintiff Fails to State a Claim for Piercing the Corporate Veil (Fifteenth Claim for Relief).

Plaintiff's Fifteenth Claim for Relief (Compl. ¶¶ 334-40) also must be dismissed for failure to state a claim. Wisconsin courts have routinely held that piercing the corporate veil is not a cause of action. *See Orlando Residence Ltd. v. GP Credit Co.*, 2007 WL 2903240, at *4 (E.D. Wis. Sept. 28, 2007) ("An attempt to pierce the corporate veil is not itself a cause of action, but rather is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract."); *Eberts v. Goderstad*, No. 05-C-527, 2008 U.S. Dist. LEXIS 2141, *5, 2008 WL 123594, at *2 (E.D. Wis. Jan. 10, 2008 ("veil piercing is an equitable *remedy* rather than a claim in its own right"); *Int'l Fin. Servs. Corp. v. Chromas Tech. Can., Inc.,* 356 F.3d 731, 736 (7th Cir. 2004) ("Piercing the corporate veil, after all, is not itself an action; it is merely a procedural means of allowing liability on a substantive claim, here breach of contract."). Instead, this doctrine is a remedy (and rarely imposed).

The allegation as to Widen Enterprises, specifically, is also subject to dismissal given that no claims for unlawful conduct have been stated against it by Plaintiff. Widen Enterprises was

neither a seller of Plaintiff's shares nor a signatory to the May 2020 Redemption Agreement. Therefore, Plaintiff cannot be found to have stated a claim against Widen Enterprises.

In any case, a claim for piercing the corporate veil is not a standalone cause of action. Accordingly, this Court should dismiss the Fifteenth Claim for Relief, with prejudice.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully requests that the Court grant its motion to dismiss, and dismiss the Complaint in its entirety, and with prejudice.

Dated: September 26, 2022

Respectfully submitted,

*/s/ Dean P. Laing*
Dean P. Laing
Christa D. Wittenberg
O'Neil, Cannon, Hollman, DeJong & Laing S.C.
111 E. Wisconsin Ave.
Milwaukee, WI 53202
Phone: 414.276.5000
Dean.Laing@wilaw.com
Christa.Wittenberg@wilaw.com

*/s/ Mark H. Churchill*
Mark H. Churchill
Martin Durkin
HOLLAND & KNIGHT LLP
1650 Tysons Blvd., Suite 1700
Tysons, VA 22102
Phone: 703.720.8600
Fax: 703.720.8610
mark.churchill@hklaw.com
martin.durkin@hklaw.com

*Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 26th day of September 2022, I electronically filed the foregoing document using the Court's CM/ECF system, copies of which will be sent electronically to the registered participants, as identified on the Notice of Electronic Filing.


/s/ Dean P. Laing
Dean P. Laing
*Counsel for Defendants*