UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

STACY L. RANDALL,

Plaintiff,

v.

REED C. WIDEN, MICHAEL
KIESLER, WIDEN ENTERPRISES,
LLC, and WINDY WATERS, INC.,

Defendants.

Case No. 3:22-cv-00400-jdp

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE

### INTRODUCTION

Plaintiff Stacy L. Randall ("Stacy") has alleged "a cohesive story that explains clearly, logically, and in detail the circumstances" through which Defendants defrauded her into signing a redemption agreement that effectively sold Defendants her one-fifth interest in her family's company for a tiny fraction of its true value. (Op. & Order 9, July 24, 2023, ECF No. 35 (the "Op. and Order").) Under that redemption agreement, which contains a release provision and incorporates a separate promissory note,[1] Defendants agreed to pay Stacy approximately $1.3 million in eighty-three monthly installments, implying a valuation of the company of approximately $6.5 million. (*See* Compl. ¶¶ 94, 168, 214, ECF No. 1.) Defendants then sold the same company for $162 million just over a year later, pocketing nearly

---

[1] References herein to the redemption agreement include the release provision and promissory note.

$31 million at Stacy's direct expense.  As this Court has recognized, Stacy's allegations, taken as true, state claims for federal and state law securities fraud and common law fraud (Op. & Order 7-19), and also state a claim that the fraudulently induced redemption agreement is void under state law and two provisions of the Securities Exchange Act of 1934.  (Op. & Order 18, 20, 24, 25; Compl. ¶¶ 291-296; 297-309; 310-319; 320-333); *see* 15 U.S.C. § 78cc(a), (b).

In their Motion to Strike (ECF No. 32), Defendants ignore all of this—including Stacy's *actual claims*, which arise under federal as well as state law.  They argue that because Stacy has accepted, and not offered to return, the monthly payments she has so far received under the fraudulently induced redemption agreement, that Stacy has ratified that contract's validity under state contract law doctrines and thus waived her right to seek recission.  In their Motion to Dismiss (ECF No. 13), Defendants previously argued that Stacy "has failed to state a claim to rescind the redemption agreement or otherwise have it declared void," but this Court "has concluded otherwise." (Op. & Order 24-25.)  In other words, Defendants ask the Court to grant, in response to their Motion to Strike, precisely the relief the Court declined to grant in response to Defendants' Motion to Dismiss. While superficially appealing, Defendants' Motion to Strike is fatally flawed and should be rejected for four independently sufficient reasons.

*First*, Defendants' motion impermissibly relies on facts outside the Complaint. In essence, Defendants seek summary judgment without complying with summary judgment requirements.  This is inappropriate and should be rejected out of hand.

*Second*, the argument that Stacy ratified the contract by failing to "tender back" the payments she has received depends on Defendants' assertion that the fraudulently induced contract is "voidable," as opposed to void.  (*See* Mot. 10, 11, 15, 16, 18.)  It is black letter law that not possible to ratify a contract that is *void*; such a contract is a legal nullity.  *E.g.*, *Griffin v. Smith*, 101 F.2d 348, 349 (7th Cir. 1938); *Perry v. Milwaukee Bd. of Sch. Directors*, 131 Wis. 2d 380, 385, 388 N.W.2d 638 (Ct. App. 1986).  And the Exchange Act is crystal clear that contracts made in violation of it, or that purport to waive its requirements, "shall be void"—not voidable.  15 U.S.C. § 78cc(a) and (b).  Defendants' ratification argument thus fails at the outset.

*Third*, even if the redemption agreement were merely voidable, as opposed to void, it is *federal* law that controls the validity of Stacy's rights under the Exchange Act, or any purported waivers thereof.  Thus, Defendants' motion, which relies exclusively on substantive state law, has no bearing on Stacy's federal claims. Applicable federal law, by contrast, has consistently rejected the notion that state law tender back and ratification doctrines can extinguish substantive rights under federal remedial statutes like the Exchange Act.

*Fourth*, even if the redemption agreement were merely voidable *and* substantive state law controlled the issue, that law does not require Stacy to return, or tender, the note payments she has received in order to maintain a claim for rescission.  To the contrary, Defendants' selective recitation of state contract law fails to appreciate that the "tender-back rule" does not apply where the consideration received "consists of money which can be credited if restitution is granted."

3

Restatement (First) of Restitution § 65 (Am. Law Inst. 1937). Here, even if *all* of Stacy's claims ultimately fail, she will *still* be entitled to retain every dollar paid to her under the redemption agreement. And, if Stacy succeeds in obtaining rescission (or a recessionary measure of damages), the amounts already paid to her can and will be credited against the remainder owed. Stacy need not return, or offer to return, money that she is entitled to retain *no matter the outcome of her suit*.

For each of these reasons, discussed in more detail below, the Court should deny the motion.

## LEGAL STANDARD

"Under Federal Rule of Civil Procedure 12(f), a court may strike from any pleading 'any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Stinson v. Schueler*, No. 19-cv-379-jdp, 2020 WL 3403094, at *1 (W.D. Wis. June 19, 2020). "But motions to strike are generally disfavored because they potentially serve only to delay." *Id.* (citing *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)); *see also Redwood v. Dobson*, 476 F.3d 462, 471 (7th Cir. 2007) ("Motions to strike disserve the interest of judicial economy. The aggravation comes at an unacceptable cost in judicial time."). And motions to strike are particularly inappropriate when they raise substantive issues: for instance, a motion to strike a defense is "appropriate only when the defense is frivolous or clearly presents no bona fide issue of fact or law." *CMFG Life Ins. v. Credit Suisse Secs. (USA) LLC*, No. 14-cv-249-wmc, 2017 WL 2544049, at *2 (quoting *Prudential Ins. Co. of Am. v. Marine Nat'l Exch. Bank*, 55 F.R.D. 436, 438 (E.D. Wis. 1972)). Accordingly,

4

a motion to strike should be denied where "the issues will be better answered on a more fulsome record than is possible at the pleading stage." *Id.* at *3.

"Matter outside the pleadings normally is not considered on a Rule 12(f) motion; for example, affidavits in support of or in opposition to the motion typically may not be used." Wright & Miller, 5C Federal Practice & Procedure Civ. § 1380 (3d ed.) (footnotes omitted); *see also DuRocher v. Nat'l Collegiate Athletic Ass'n*, No. 1:13-cv-01570-SEB-DML, 2015 WL 1505675, at *1 (S.D. Ind. Mar. 31, 2015) ("'Generally, material outside of the pleadings is not considered on a motion to strike' because 'the Court must treat all well pleaded facts as admitted.'") (citation omitted); *U.S. Oil Co., v. Koch Refining Co.*, 518 F. Supp. 957, 959 (E.D. Wis. 1981) ("In determining whether to grant a motion to strike, the Court must treat all well pleaded facts as admitted and cannot consider matters outside the pleadings.").

## ANALYSIS

### I.   Defendants' Motion Is Procedurally Improper.

As Defendants appears to recognize, Defendants' current argument is akin to an affirmative defense that Stacy has waived her right to seek rescission by ratifying the contract.[2]  (*See, e.g.*, Mot. 2 ("Randall has ratified the Stock Redemption Agreement and Promissory Note and waived her right to rescission thereof.").)  In sum and substance, Defendants argue that the Court cannot but credit their position that Stacy has affirmed the redemption agreement and waived her right to rescission

---

[2] Defendants have yet to answer the Complaint and thus have pled no defenses yet.

thereof, supporting that motion with a declaration and multiple exhibits outside the pleadings.  In other words, Defendants have brought what they caption a motion to strike—but as relief, they request summary judgment.  Defendants ask the Court to enter judgment in their favor on their waiver/ratification defense, based on material outside the Complaint, and without adhering to this Court's summary judgment procedures.

The factual basis for their claim of waiver is the Declaration of Reed Widen setting forth payments made to Stacy since May 2020, along with bank statements, a litigation hold letter, and a confidential settlement communication from Stacy's attorneys.  The Court should not consider these materials on a motion to strike— particularly not where, as here, Defendants have not followed the procedures for summary judgment motions applicable in this Court.[3]  (*See* Prelim. Pretrial Order 2, ECF No. 22 ("If any party files a motion for summary judgment, all parties must follow this court's procedure governing such motions, a copy of which is attached to this order.  The court will not consider any document that does not comply with its summary judgment procedure."); Standard Attachments for Civil Cases Assigned to Judge Peterson 2-8.)  And without those materials, Defendants' motion to strike lacks any basis whatsoever, which is fatal to the motion.  *See Transamerica Life Ins. v.*

---

[3] Stacy recognizes that courts occasionally convert Rule 12(f) motions to motions for summary judgment, typically where both parties treat the motion as such.  *E.g.*, *Marco Holding Co. v. Lear Siegler, Inc.*, 606 F. Supp. 204, 212-13 (N.D. Ill. 1985) ("Ordinarily, a Rule 12(f) motion is decided on the basis of the pleadings alone. Here, however, both plaintiff and defendant have submitted exhibits and deposition testimony in support of their positions.").  That is not the case here, where Defendants have failed entirely to follow the requisite procedures and where Stacy has not submitted materials outside the pleadings.

*Rabadi*, No. CV 15–07623–RSWL–Ex, 2016 WL 7444912, at *1 (C.D. Cal. Mar. 21, 2016) ("The grounds for a motion to strike must appear on the face of the pleading under attack.").

If Defendants believe they are entitled to judgment as a matter of law on their waiver defense (and to be clear, Stacy disagrees), then they must bring a motion for summary judgment.  They should not be permitted to disregard this Court's procedures in seeking to secure summary judgment relief under the guise of a motion to strike "redundant, immaterial, impertinent, or scandalous matter" from the Complaint. Fed. R. Civ. P. 12(f).

Defendants' failure to follow procedure is sufficient to deny the present motion. However, Stacy anticipates that Defendants will likely raise similar waiver and ratification arguments later in the case.  Thus, Stacy respectfully submits that the interests of judicial economy will be served should the Court also analyze Defendants' arguments on their merits, and she proceeds to address those arguments accordingly.

## II.    The Redemption Agreement Cannot Be Ratified Because It Is Void.

Defendants' ratification/waiver argument fails at the outset because the Exchange Act renders the redemption agreement *void*, not merely voidable.  The Exchange Act, which forms the basis of at least three of Stacy's claims, renders void any provision purporting to waive compliance with the Exchange Act or its rules and regulations, as well as any contract made in violation of the Exchange Act as to the rights of any party entering into it in violation of the Act.  *See* 15 U.S.C. § 78cc(a),

(b);[4] *Jadoff v. Gleason*, 140 F.R.D. 330, 333-34 (M.D.N.C. 1991) (noting that 15 U.S.C. § 78cc(a) "is the foundation of a general policy disfavoring releases in security claims" and that "releases attempting anticipatory waivers of compliance with the securities laws are void").

Under the controlling facts of the Complaint, the redemption agreement falls squarely within the Exchange Act's prohibitions. The redemption agreement was "made in violation of [a] provision of this chapter [and] of [a] rule or regulation thereunder," 15 U.S.C. § 78cc(b), and the release provision purports to preclude Stacy from seeking relief for Defendants' violations of the Exchange Act, thereby preemptively waiving Defendants' compliance with that federal law based on the operation of state contract law. (*See* Compl. ¶¶ 198-209 (17 C.F.R. § 240.10b-5(a),(c)), 210-219 (17 C.F.R. § 240.10b-5(b)), 220-226 (15 U.S.C. § 78t), 291-296 (15 U.S.C. § 78cc(a), (b))); *see, e.g.*, *Cohen v. Tenney Corp.*, 318 F. Supp. 280, 282 (S.D.N.Y. 1970) ("It is obvious that a release fits within the general language of Section 29(a) as a provision which purports to bind the signer to waiving the released's compliance with

---

[4] Section 78cc(a) provides that "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of a self-regulatory organization, shall be void."

Section 78cc(b) provides that "[e]very contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract . . . heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision, rule, or regulation."

the provisions of the Act."). This makes the redemption agreement—including the release contained therein—void *ab initio*.

It is black letter contract law that a void contract is a legal nullity that cannot be revived by ratification or subsequent validation. *See, e.g.*, 17A Am. Jur. 2d *Contracts* § 9 ("A void contract is not a contract at all, and is without legal effect; it binds no one and is a mere nullity. Accordingly, an action cannot be maintained for damages for its breach, no disaffirmance is required to avoid a void contract, and it cannot be validated by ratification. A void contract is void as to everybody whose rights would be affected by it if it were valid."); *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 432 (1998) (Breyer, J. concurring) ("an absolutely void contract, it is said, 'is void as to everybody whose rights would be affected by it if valid'" (citation omitted)). As a matter of law, Stacy cannot have ratified, validated, or affirmed the redemption agreement or release, because those instruments are a nullity.[5]

Thus, even under the state law upon which Defendants rely, the redemption agreement cannot be ratified, nor can Stacy's right to rescission—or an equivalent equitable remedy—be waived on the basis of ratification. Defendants' cases involve *voidable* contracts, not contracts that were void *ab initio*. *See Thompson v. Vill. of*

---

[5] It is unclear whether Defendants also intend to argue election of remedies over and above the arguments in their Motion to Dismiss. (*See* Mot. to Strike 10-11.) To the extent Defendants intend such an argument, the Court has already rejected it in in the context of the Motion to Dismiss. (Opinion and Order 20 ("It is premature at this stage for the court to determine the appropriate remedy."); *see id.* 18-19 (holding that Stacy can maintain her claim seeking an equitable remedy).) In any event, Stacy's prayer for relief seeks the "[v]oiding *and/or* rescinding" of the redemption agreement. (Compl. Prayer for Relief ¶ B (emphasis added).) To the extent that the redemption agreement is void, it need not be rescinded, as it is a nullity that never had legal effect.

*Hales Corners*, 115 Wis. 2d 289, 318, 340 N.W.2d 704(1983) (purportedly "voidable" contract); *AVL Powertrain Eng'g, Inc. v. Fairbanks Morse Engine*, 178 F. Supp. 3d 765, 773 (W.D. Wis. 2016) (same); *Grube v. Daun*, 213 Wis. 2d 533, 551, 570 N.W.2d 851 (1997) (injured party "may choose between the alternative remedies of contract damages or rescission of that contract"); *Beers v. Atlas Assurance Co.*, 231 Wis. 361, 368, 285 N.W. 794, 797 (1939) (regarding the "power of avoidance").

And the cases Defendants rely on to argue that the redemption agreement is voidable, rather than void, do not involve the Exchange Act.  *See First Nat'l Bank & Tr. Co. of Racine v. Notte*, 97 Wis. 2d 207, 209, 293 N.W.2d 530, 532 (1980); *Whipp v. Iverson*, 43 Wis. 2d 166, 171, 168 N.W.2d 201, 204 (1969); *Harley-Davidson Motor Co. v. PowerSports, Inc.*, 319 F.3d 973, 988 (7th Cir. 2003); *Tankstar USA, Inc. v. Navistar, Inc.*, No. 2017AP1907, 2018 WL 6199278, at *6 (Wis. Ct. App. 2018) (unpublished decision).

## III.   Federal Law Precludes Ratification of the Redemption Agreement.

Even if the redemption agreement *were* merely voidable, as opposed to void, Defendants' argument would still fail as to Stacy's federal securities law claims.  (*See* Compl., Claims 1, 2, 3, 11.)   Contrary to Defendants' contention that state law contract doctrines extinguish Stacy's rights under the Exchange Act, including her right to rescind the redemption agreement or seek restitution for her loss, it is clearly established that *federal* law controls the validity of such federal rights.  For this reason, federal courts have consistently held that the state law doctrines of tender-

back and ratification do not extinguish rights under federal remedial statutes. Accordingly, the Court should deny the motion to strike on this basis, as well.

*Oubre*, which involved a release provision that was *voidable* by statutory operation at the option of the injured party (as opposed to void), is instructive on the proper analysis here. *See Oubre*, 522 U.S. at 431 (Breyer, J. concurring) (distinguishing between void and voidable contracts). In *Oubre*, the petitioner employee, "as part of a termination agreement, signed a release of all claims against her employer," receiving as consideration severance pay in installments. *Id.* at 423-24. The release did not comply with federal statutory requirements under the Age Discrimination in Employment Act of 1967 (ADEA). *Id.* at 424. Accordingly, after Oubre received the final payment, she sued under the ADEA; the employer argued that her suit was barred by the release because she ratified and validated it "by retaining the moneys paid to secure it." *Id.*[6]

The Court began by rejecting the employer's rigid view of state contract jurisprudence, noting that "in equity, a person suing to rescind a contract, as a rule, is not required to restore the consideration at the very outset of the litigation." *Id.* at 426. But more to the point, the Court held, state contract jurisprudence was not the governing law:

> Even if the employer's statement of the general rule requiring tender back before one files suit were correct, it would be unavailing. The rule cited is based simply on the course of negotiation of the parties and the

---

[6] As discussed *infra*, at Section IV, the fact that Stacy received *no consideration* for the release provision in the redemption agreement further distinguishes her case from those relied on by Defendants regarding release agreements.

> alleged later ratification. The authorities cited do not consider the
> question raised by statutory standards for releases and a statutory
> declaration making nonconforming releases ineffective. It is the latter
> question we confront here.

*Id.*   Accordingly, the Court then turned to the text of the Older Workers Benefit

Protection Act (OWBPA), which had amended the ADEA.   It reasoned that "[t]he

statutory command is clear: An employee 'may not waive' an ADEA claim unless the

waiver or release satisfies the OWBPA's requirements."   *Id.* at 426-27.   The policy, it

held, was "likewise clear . . . : it is designed to protect the rights and benefits of older

workers."   *Id.* at 427.   Thus, the Court concluded, "[t]he OWBPA implements

Congress' policy via a strict, unqualified statutory stricture on waivers, and we are

bound to take Congress at its word. . . . Courts cannot with ease presume ratification

of that which Congress forbids."   *Id.*   In other words, the Court held, "[t]he text of the

OWBPA forecloses the employer's defense, notwithstanding how general contract

principles would apply to non-ADEA claims."   *Id.*

Similarly, in *Hogue v. S. R. Co.*, 390 U.S. 516 (1968) (per curiam), the plaintiff,

who had previously executed a release but later sought to maintain a claim under the

Federal Employers' Liability Act, argued that the release was premised on "mutual

mistake of fact."   *Id.* at 516.   The Georgia Court of Appeals held that the plaintiff had

to tender back to his employer the consideration he had received for the release as a

prerequisite to bringing his suit.   *Id.*   The U.S. Supreme Court, noting that federal

rather than state law governed the question of whether a tender back was required,

*id.* at 517, disagreed:

> It is sufficient for purposes of this decision to note that a rule which
> required a refund as a prerequisite to institution of suit would be 'wholly

> incongruous with the general policy of the Act to give railroad employees
> a right to recover just compensation for injuries negligently inflicted by
> their employers.' Rather it is more consistent with the objectives of the
> Act to hold, as we do, that it suffices that, except as the release may
> otherwise bar recovery, the sum paid shall be deducted from any award
> determined to be due to the injured employee.

*Id.* at 518 (citation omitted).

Following *Oubre*, the circuit courts have consistently applied the rule set forth in *Oubre* and *Hogue*, looking to the statutory text of the federal remedial statute at issue as well as the policy behind the statute in determining whether retention of benefits may serve to ratify a release and determining that it does not. *See, e.g.*, *McClellan v. Midwest Machining, Inc.*, 900 F.3d 297, 308 (6th Cir. 2018) (holding that "the tender-back doctrine does not apply to claims brought under Title VII and the [Equal Pay Act]"); *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 784 (3d Cir. 2007) (rejecting tender back/ratification defense in the context of ERISA claims); *Botefur v. City of Eagle Point*, 7 F.3d 152, 156 (9th Cir. 1993) ("We hold that a civil rights plaintiff is not required to return or offer to return consideration received pursuant to a valid release agreement as a prerequisite to initiating a § 1983 action premised on the violations purportedly released by the agreement.").[7] And while this

---

[7] Stacy anticipates that Defendants might rely on *Fleming v. U.S. Postal Service AMF O'Hare*, 27 F.3d 259 (7th Cir. 1994), which held that the tender back rule *did* apply in the context of Title VII and the Rehabilitation Act. Importantly, Title VII does not contain a provision analogous to sections 78cc(a) and (b) of the Exchange Act, which explicitly renders void contracts made in violation of the statute or waivers of rights thereunder (though Stacy submits that the weight of authority does not require such explicit regulation). Indeed, *Fleming* recognized that "[w]hen federal law limits a class of releases, as in cases under the Federal Employers' Liability Act, or the closely parallel Jones Act, or the Age Discrimination in Employment Act, each of which regulates releases, *see* 45 U.S.C. § 55, 46 U.S.C. § 688(a), 29 U.S.C. § 626(f)(1), the common law rule requiring tender as a prerequisite to rescission

issue does not arise under the Exchange Act, which renders violative agreements and releases void, not merely voidable (*see* Section II, *supra*), the rationale of *Oubre* and *Hogue* would be no less applicable to that law than the other federal remedial statutes directly addressed by the courts so far—which is to say that both the text and the purpose of the Exchange Act preclude Defendants' ratification argument.

As noted above, 15 U.S.C. sections 78cc(a) and (b) clearly preclude contractual provisions purporting to waive compliance with the Exchange Act or its rules and regulations, as well as contracts made in violation of the Exchange Act as to the rights of parties entering into them in violation of the Act. (*See* Section II, *supra*.) Likewise, the policy considerations underpinning the Exchange Act, like the policy behind the OWBPA and the FELA (and section 1983, and ERISA, and Title VII, and the EPA), militate against applying state law contractual ratification principles in order to cut off rights under federal remedial statutes. The Exchange Act was "part of an overall broad scheme of federal regulation enacted in the early 1930s, through which Congress wanted investors to have access to comprehensive, accurate information about the companies in which they were investing." *AUSA Life Ins. v. Ernst & Young*, 206 F.3d 202, 218 (2d Cir. 2000) (footnote & citation omitted). It was intended to "promote investor confidence in the United States securities markets and thereby to

---

may have to give way." *Fleming*, 27 F.3d at 261. In any event, that case predated *Oubre* and the Supreme Court's emphasis on the policy underlying federal remedial statutes; "[f]ollowing *Oubre*, courts routinely reject tender-back and ratification rules under federal remedial statutes that evince an intent to move beyond common law principles." *GunBroker.com, LLC v. Tenor Cap. Partners, LLC*, No. 1:20-CV-613-TWT, 2021 WL 5113200, at *9 (N.D. Ga. Nov. 3, 2021).

encourage the investment necessary for capital formation, economic growth, and job creation." *Id.* (quoting Private Securities Litigation Reform Act of 1995, P.L. 104-67, S. Rep. No. 104-98 (June 19, 1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 683).  To apply Defendants' ratification/waiver argument would undercut those principles: far from encouraging access to comprehensive, accurate information for investors, it would promote *violation* of the Exchange Act by encouraging bad actors to induce financially vulnerable investors into violative contracts with consideration that the investor cannot easily tender, and to procure releases to such contracts so as to insulate violations of the Exchange Act, including fraudulent representations and omissions.  *Cf. GunBroker.com*, 2021 WL 5113200, at *9 (in context of Investment Advisers Act, noting that "[a] tender-back requirement could undermine" the goals of preventing fraudulent practices by investment advisers and protecting investors "by deterring plaintiffs from bringing meritorious claims").

Defendants' arguments assume that state law contract principles can override the statutory text of the Exchange Act and the policies underlying that federal law. The Supreme Court has repeatedly held that this is not permitted.  Accordingly, the Court should deny Defendants' motion to strike based on its substantive failings, as well.

## IV. Stacy Need Not Tender Back Money She Has the Right to Retain Regardless of the Case's Outcome, Which Will Be Credited Against Any Damages Award.

Finally, even assuming that state law contractual principles *could* affect the viability of Stacy's federal claims under the Exchange Act, Defendants' motion to

strike *still* fails under the doctrines of tender-back and ratification.  Defendants claim that Stacy, by accepting and thus far failing to tender back monthly payments, has ratified the contract and thereby waived her right to seek its rescission.   But Defendants are incorrect on the law.  While in some circumstances a person's right to restitution for a benefit conferred in a voidable transaction may depend on the return, or offer to return, anything she received as part of the transaction, there is no such requirement where the thing received "consists of money which can be credited if restitution is granted."  Restatement (First) of Restitution § 65; *see also* Restatement (Third) of Restitution and Unjust Enrichment § 54(5) (Am. Law Inst. 2011) ("Restitution or a tender of restitution by the claimant is not a prerequisite of rescission if affirmative relief to the claimant can be reduced by (or made subject to) the claimant's reciprocal obligation of restitution.").   In other words, "[i]f what has been received is merely money which can be credited upon the amount which will be paid to the transferor, it is unnecessary to require him to offer to repay it." Restatement (First) of Restitution § 65, cmt. e.  The Restatement (First) provides the following example:

> Fraudulently misrepresenting his assets and the current exchange quotation, A obtains from B ten shares of stock for $500 in money and a promise to pay $1500.  A sells the shares for $3000.  Upon discovery of the fraud and without offering to return the $500 B demands from A the proceeds of the shares.  B is entitled to recover the value of the shares or the amount of their proceeds, less $500.

*Id.* at Illustration 17.[8]

This is *precisely* the situation at issue in this case.  Stacy has alleged that, after fraudulently misrepresenting the Companies' assets and the value of Stacy's shares, Defendants obtained from Stacy her entire interest in exchange for a promise to pay approximately $1.3 million over eighty-three months.  (*See* Compl. ¶¶ 125-141.)  Defendants then sold that interest for approximately $32 million, which Stacy would have received had Defendants not defrauded her into selling them her interest.  (*See id.* ¶¶ 150-51.)  Upon discovery of Defendants' fraud, Stacy demanded the proceeds from the sale of her interest, the difference between what she received for her interest and its true value.  Stacy is entitled to recover the value of the shares or the amount of their proceeds, less the money that she has been paid under the contract.  Thus, even without considering Stacy's claims for damages, including treble damages, Defendants owe Stacy *at least* the approximately $30.7 million difference between what they paid her and what she would have received absent their fraud.  Defendants

---

[8] Comment j to the Restatement (Third), which explains that "Section 54(5) explicitly eliminates previous requirements that the claimant tender restitution to the other party as a precondition of rescission," provides a similar illustration:

> By fraudulent misrepresentations, Seller induces Buyer to purchase 100 shares of XYZ common stock at $100 per share. Shortly thereafter, XYZ pays a dividend of $2.50 per share. Learning subsequently of Seller's fraud, Buyer brings an action to rescind the transaction. Buyer need not tender to Seller either the shares or the dividend as a precondition to bringing suit. Buyer's obligation to make restitution of the dividend ($250) can be set off against his claim to restitution of the price; judgment for a net $9750 in favor of Buyer may be made conditional on Buyer's restitution to Seller of the shares or their fungible equivalent.

*Id.* at Illustration 29.

do not (and cannot) argue that Stacy has lost her right to the $1.3 million.  Stacy need not tender back money she has a right to retain regardless of her claims in order to recoup what she is still owed, particularly where the amount she has received will be credited for purposes of that recoupment.

Wisconsin case law is also in accord.  For example, in *Bowe v. Gage*, 127 Wis. 245, 106 N.W. 1074 (1906), the defendants, who had an interest in a farm, entered into an agreement with the plaintiffs, real estate agents, under which they would pay the plaintiffs a two percent commission if the plaintiffs procured a purchaser for the farm at an acceptable price.  After the defendants rejected numerous offers as inadequate, one of them informed the plaintiffs that the farm was off the market and offered to pay the plaintiffs $25 for the services they had rendered, which they accepted.  However, the defendant then sold the farm to one of the purchasers the plaintiffs had identified.  The plaintiffs brought an action to recover the two percent commission, less the $25 they had been paid.

One of the defendants' arguments was that the "conceded failure to either return or tender back the $25 paid precluded plaintiffs from denying the validity of the settlement on the ground of fraud . . . ."  *Id.* at 1076.  The Wisconsin Supreme Court rejected that argument, holding that "plaintiffs were entitled to retain the money, subject only to an equity in favor of defendants that if plaintiffs showed themselves entitled to payment according to the terms of the contract of employment by reason of completed performance thereof, such payment should be applied thereon . . . ."  *Id.*  "This was in practical effect a return of the money to the defendants, for it

was applied, to their benefit, upon a debt which the jury has found that they owed."

*Id.*  The Court concluded:

> [T]he whole doctrine of refund upon repudiation of a contract of settlement is, not technical, but equitable, and requires merely that the practical rights of the other party shall not thereby be prejudiced; that he shall be no worse off than if he had never made the contract of settlement.  Under this principle, application of money paid on a void settlement to an actual existing debt due from the payor entirely satisfies all requirements.

*Id.*

Similarly, here, Stacy contends that the redemption agreement is void and that she is owed the fair value of the shares Defendants took from her—if not as a measure of damages for securities fraud, then as restitution for Defendants' unjust enrichment.  She is therefore entitled to retain the monies paid thus far "subject only to an equity in favor of defendants"—that is, a setoff—should she prove her claims.  *Id.*  Said another way: if Stacy succeeds in demonstrating that the redemption agreement is void, she is entitled to recover the fair value of the shares that Defendants fraudulently obtained from her, or Defendants' proceeds from those shares, less the monies that Defendants have paid her toward such amount.  If she does not succeed in her claims, then she remains entitled to keep what Defendants have paid her.  Either way, there is no requirement that she return, or offer to return, the monies paid until now.

The cases that Defendants cite do not change this conclusion.  Those cases involve bargained-for releases of claims, where consideration was paid specifically to compensate the would-be plaintiffs for the releases that they executed.  *See, e.g.*, *Grillet v. Sears, Roebuck & Co.*, 927 F.2d 217, 218 (5th Cir. 1991), *overruled on other*

*grounds by Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994) (plaintiff paid approximately $36,000 as consideration for signing release waiving claims against Sears); *Seward v. B.O.C. Div. of Gen. Motors Corp.*, 805 F. Supp. 623, 626 (N.D. Ill. 1992) (plaintiff paid monthly benefits in exchange for signing release); *O'Shea v. Com. Credit Corp.*, 930 F.2d 358, 359-60 (4th Cir. 1991), *superseded by statute on other grounds*, 29 U.S.C. § 626(f) (plaintiff accepted severance benefits, including 27 weeks' severance pay, in exchange for release).  Hence, the plaintiffs would not be entitled to that consideration if the contracts were rescinded; the failure to tender was, therefore, inconsistent with the claim for rescission.

In contrast, Stacy in this case was paid *absolutely nothing* for the release contained in the redemption agreement.  (*See* Compl. Ex. 1 at 1, ECF No. 1-6 at 2 (calculating $1,352,166.31 purchase price exclusively as function of price per share of Class A and Class B stock).)  Stacy is owed at least this consideration for her interest *regardless* of the outcome of this suit.  And it will be credited to Defendants in the event that she secures an award for further amounts.  For the same reason, Defendants' repetitious refrain that Stacy "cannot have her cake and eat it too" (Mot. 2, 19) is misplaced.[9]  Stacy's demand for recission (to the extent the redemption agreement is not declared void) is not inconsistent with her retention of the note

---

[9] Defendants' citation to *Farrar v. State*, 52 Wis. 2d 651, 661-62, 191 N.W.2d 214 (1971) (*see* Mot. 19-20), is similarly misplaced.  *Farrar* involved a criminal defendant who, having pled guilty on the basis of a plea bargain under which the district attorney recommended a one-year prison sentence, chose not to challenge a two-year prison sentence recommendation in the presentence report; after being sentenced to two years, he then sought to withdraw his guilty plea to challenge the presentence report.  The case bears absolutely no resemblance to this one.

payments; to the contrary, the only benefits retained from Defendants are benefits she is owed *whether or not* the redemption agreement is void or rescinded.  Unlike the plaintiffs in Defendants' cases, she has not accepted benefits in consideration of a release of her claims that she has refused to return; she has accepted only payments for the interest in Windy Waters that Defendants purchased from her, and which Defendants owe her no matter the outcome of this case.  Equity does not demand she return, or offer to return, those payments.  As the Seventh Circuit put it in *Fleming*:

> Unproblematic for excusing tender, however, is the case in which all the plaintiff obtained in exchange for the release was something to which he was already entitled, as distinct from obtaining payment of a disputed or disputable claim.  For in the former case the release would fail for want of consideration, and the amount that the plaintiff had received in exchange for the release would simply be set off against any recovery that he might obtain in the suit.

*Fleming*, 27 F.3d at 261 (citations omitted).  This is precisely such a case.[10]

## CONCLUSION

Defendants' motion presents itself as simple syllogism.  But, at the risk of mixing metaphors, when one lifts the motion's hood, it is all hat and no cattle.

As a threshold issue, Defendants cannot simply obtain a dispositive ruling on their as-yet-unpled defenses based on their version of the facts.  The Court rejected similar efforts in Defendants' motion to dismiss, explaining that "many of defendants' arguments impermissibly rely on evidence outside the pleadings and will need to be

---

[10] While Stacy need not return, or tender, the note payments she has received and will receive going forward, Stacy will agree to tender the payments she has received if Defendants stipulate that the redemption agreement, release, and promissory note are void.

resolved on summary judgment or at trial" (Op. & Order 16)—not on a motion to strike.

The motion fairs no better on the merits.  It is beyond debate that a contract that violates the Exchange Act, or that purport to waive one's rights thereunder, "shall be void."  And it is black letter contract law that a void contract cannot be revived through ratification.  Even if that were not the case, the Supreme Court has clearly held that federal, not state, law governs the rights granted by, or waived under, federal remedial law such as the Exchange Act.  And federal courts have consistently rejected application of the tender-back rule and doctrine of ratification to federal remedial statutes.  Finally, even under its own terms, the tender-back rule does not apply to situations such as this, where the plaintiff is entitled to retain monetary consideration regardless of whether they prevail and where any further amounts owed can be credited against the consideration received.

For all these reasons, Stacy respectfully requests that the Court deny the motion to strike.

Dated this 28th day of July, 2023.

<div style="margin-left: 40%;">

s/ Mark A. Cameli
Mark A. Cameli
WI State Bar ID No. 1012040
mcameli@reinhartlaw.com
David Palay
WI State Bar ID No. 1115862
dpalay@reinhartlaw.com
Monica A. Mark
mmark@reinhartlaw.com
WI State Bar ID No. 1082428
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone:  414-298-1000
Facsimile:  414-298-8097

Mailing Address:
P.O. Box 2965
Milwaukee, WI 53201-2965

Attorneys for Plaintiff

</div>