# In The Matter Of:

*Stacy L. Randall v*
*Reed C. Widen, et al.*

*Stacy L. Randall*
*August 28, 2023*
*Confidential*

*Colleen Reed Reporting LLC*
*P.O. Box 293*
*Milwaukee, Wisconsin 53201*
*www.colleenreed.com*

Original File 082823StacyRandallF.txt
**Min-U-Script® with Word Index**

**EXHIBIT 1**

Case: 3:22-cv-00400-jdp  Document #: 48-1  Filed: 09/20/23  Page 2 of 4

Stacy L. Randall v  
Reed C. Widen, et al.

Confidential

Stacy L. Randall  
August 28, 2023

## Page 1

```
  1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF WISCONSIN
  2
     --------------------------------------------------
  3
     STACY L. RANDALL,
  4
  5            Plaintiff,
  6
          -vs-                         CIVIL ACTION NO.
  7                                    22-CV-400
  8   REED C. WIDEN, MICHAEL
      KIESLER, WIDEN ENTERPRISES,
  9   LLC, and WINDY WATERS, INC.,
 10
               Defendants.
 11
     --------------------------------------------------
 12
 13  CONFIDENTIAL - VIDEO DEPOSITION OF: STACY L. RANDALL
 14  DATE:           August 28, 2023
 15  TIME:           9:21 a.m. to 7:02 p.m.
 16  LOCATION:       Reinhart Boerner Van Deuren, S.C.
                     22 East Mifflin Street, Suite 700
 17                  Suite 700
                     Madison, Wisconsin 53703
 18
 19  REPORTED BY:    Ali J. Kornburger
 20
 21
 22
 23
 24
 25
```

## Page 2

```
  1                    A P P E A R A N C E S
  2   REINHART BOERNER VAN DEUREN, S.C., by
      JESSICA HUTSON POLAKOWSKI, ATTORNEY AT LAW
  3   MARK A. CAMELI, ATTORNEY AT LAW
      DAVID G. PALAY, ATTORNEY AT LAW
  4   22 East Mifflin Street, Suite 700
      Madison, Wisconsin 53703
  5   jpolakowski@reinhartlaw.com
      mcameli@reinhartlaw.com
  6   dpalay@reinhartlaw.com
      appeared on behalf of the Plaintiff.
  7
      HOLLAND & KNIGHT, LLP, by
  8   MARK H. CHURCHILL, ATTORNEY AT LAW
      1650 Tysons Boulevard, Suite 1700
  9   Tysons, Virginia 22102
      mark.churchill@hklaw.com
 10   appeared on behalf of the Defendants.
 11   HOLLAND & KNIGHT, LLP, by
      SARAH MORAIN, ATTORNEY AT LAW
 12   1650 Tysons Boulevard, Suite 1700
      Tysons, Virginia 22102
 13   sarah.morain@hklaw.com
      appeared via telephone on behalf of the Defendants.
 14
      O'NEIL, CANNON, HOLLMAN, DEJONG & LAING, S.C., by
 15   CHRISTA D. WITTENBERG, ATTORNEY AT LAW
      Bank One Plaza, Suite 1400
 16   111 East Wisconsin Avenue
      Milwaukee, Wisconsin 53202-4870
 17   christa.wittenberg@wilaw.com
      appeared on behalf of the Defendants.
 18
 19
      ALSO PRESENT:
 20
 21   Mark Lyle, Videographer
 22
 23
 24
 25
```

## Page 3

```
  1                        I N D E X
  2
      EXAMINATION BY:                                    PAGE
  3
      Mr. Churchill                                        6
  4
  5   EXHIBITS:                                         MARKED
  6   Exhibit 1 -  Notice of Deposition of Plaintiff      7
                   Stacy L. Randall
  7   Exhibit 2 -  Complaint                              8
      Exhibit 3 -  Plaintiff Stacy L. Randall's
  8                Objections and Responses to
                   Defendant's First Requests for
  9                Production of Documents
      Exhibit 4 -  Shareholder Agreement of Widen         40
 10                Colourgraphics, LTD
      Exhibit 5 -  Amendment of Shareholder Agreement     55
 11                of Widen Colourgraphics, LTD,
                   Effective 9/12/2001
 12   Exhibit 6 -  Second Amendment to Shareholder        77
                   Agreement
 13   Exhibit 7 -  Restated Stock Transfer Agreement     105
      Exhibit 8 -  Plaintiff Stacy L. Randall's          110
 14                Objections and Responses to
                   Defendant's First Set of
 15                Interrogatories
      Exhibit 9 -  December 2019 string of text          131
 16                messages
      Exhibit 10 - Screenshot of text messages with      135
 17                Reed Widen
      Exhibit 11 - 2005 Stock Redemption Agreement       162
 18   Exhibit 12 - 2007 Stock Redemption Agreement       175
      Exhibit 13 - 2011 Stock Redemption Agreement       187
 19   Exhibit 14 - 2017 Stock Redemption Agreement       203
      Exhibit 15 - 2019 Stock Redemption Agreement       212
 20   Exhibit 16 - Joint Petition for Divorce            218
      Exhibit 17 - 4/3/19 letter Amy T. Collins to       220
 21                Stacy L. Randall
      Exhibit 18 - Notice of Motion and Motion to        227
 22                Modify Temporary Order
      Exhibit 19 - Notice of Hearing                     239
 23   Exhibit 20 - Amended Temporary Order               242
      Exhibit 21 - Text exchange Windy47391 to 47392     245
 24   Exhibit 22 - Text message From Stacy Randall to    279
                   Mark Goff
 25   Exhibit 23 - Text message from Stacy Randall to    280
```

## Page 4

```
  1   Exhibit 24 - Text message from Stacy Randall to    284
                   Mark Goff
  2   Exhibit 25 - Text message from Stacy Randall to    285
                   Mark Goff
  3   Exhibit 26 - Email chain Scott Spangler            298
      Exhibit 27 - Widen Financial Statements            301
  4                Consolidated December 31, 2019
      Exhibit 28 - Text message from Stacy Randall to    313
  5                Justin Randall
      Exhibit 29 - May 13, 2020, Stock Redemption        316
  6                Agreement
      Exhibit 30 - Text message from Stacy Randall to    323
  7                Mike Kiesler
      Exhibit 31 - Text message from Stacy Randall to    325
  8                Mike Kiesler
  9
 10
 11
 12
 13
 14
 15
 16
 17
 18
 19
 20
 21
 22   (Original transcript supplied to Attorney Christa D.
      Wittenberg)
 23   (Originals of Exhibits 1 through 31 are attached to
      the original transcript. Scanned copies were provided
 24   to all counsel)
 25
```

Page 245

1 speculation.
2           THE WITNESS: I did not know about it
3 prior.
4           (Exhibit No. 21 was marked.)
5 BY MR. CHURCHILL:
6 Q   The court reporter has now handed you what's
7     been marked for identification as Exhibit 21 to
8     your deposition, Ms. Randall.
9 A   Yes.
10 Q   It is a two-page document labeled Windy47391 to
11     47392, and it is a series of texts on the second
12     page. First page I believe is just a cover
13     page. There's a series of texts on page 2. Do
14     you see those?
15 A   Yes.
16 Q   Do you recognize these as texts between you and
17     your brother Reed?
18 A   Yes.
19 Q   That's his -- he's indicated as owner, that's
20     his phone number, right, 608-217-5910?
21 A   Last I knew that was his phone number.
22 Q   Okay. And you did, in fact, text your brother
23     on the 5th of May 2020 at 4:14 p.m. and write,
24     "Steve is taking me to court. He wants me to
25     pay him maintenance. His reasons are all

Page 246

1     bullshit. I'm going to need to get some money."
2 A   Yes.
3 Q   And your brother Reed wrote back at 5:25 p.m.,
4     "We have a Covod problem." He accidently
5     misspelled COVID, right? "Your timing couldn't
6     be worse. We might have to take care of it in
7     Milmont." Do you see that?
8 A   Yes.
9 Q   Why did you reach out to your brother?
10 A   I always reached out to my brother when I wanted
11     to cash in some of my stock.
12 Q   And your brother had always agreed, right?
13 A   No. He told me to talk to Kiesler.
14 Q   Ultimately, you had redeemed the stock when you
15     had requested it, though, correct?
16 A   Yes.
17 Q   What did you understand at the time him to mean
18     by his reference to might have to take care of
19     it in Milmont?
20 A   I didn't ask. I don't know. It never came up
21     again.
22 Q   But what did it mean to you at the time,
23     anything?
24 A   No.
25 Q   You said it never came up again. Did you ever

Page 247

1     ask after this May 5, 2020, text exchange with
2     your brother about whether or not there was
3     money that could be provided to you through
4     Milmont?
5 A   Did not.
6 Q   Why not?
7 A   I didn't know what he meant by take care of
8     through Milmont. So I didn't have questions to
9     ask because I didn't know.
10 Q   You knew at the time that Milmont included the
11     cottages, correct?
12 A   Yes.
13 Q   So is it your testimony that you didn't
14     understand that taking care of it in Milmont
15     referred to something to do with the cottages?
16           MS. POLAKOWSKI: Objection.
17 Mischaracterizes her testimony.
18           THE WITNESS: I figured that it
19 probably had something to do with the cottages.
20 BY MR. CHURCHILL:
21 Q   Do you have a sentimental attachment to the
22     cottages?
23           MS. POLAKOWSKI: Objection. Form.
24 Vague.
25           THE WITNESS: I used to have a huge

Page 248

1 sentimental value, but I don't have that anymore.
2 BY MR. CHURCHILL:
3 Q   At the time of this redemption, which would have
4     been -- well, actually we're not at the
5     redemption yet. So May of 2020. So more than
6     three years ago did you have that sentimental
7     attachment to Milmont?
8 A   Yes.
9 Q   Would you have been interested in that time
10     frame, May of 2020, in selling off part of your
11     interest in the cottages?
12           MS. POLAKOWSKI: Objection. Calls for
13 speculation.
14           THE WITNESS: I never thought about
15 it.
16 BY MR. CHURCHILL:
17 Q   But you would have been interested?
18           MS. POLAKOWSKI: Same objection.
19           THE WITNESS: I don't know what I
20 would have thought at that time.
21 BY MR. CHURCHILL:
22 Q   Isn't it true that when the topic of Milmont
23     came up later after the redemption and closer to
24     the time of you filing suit that you made it
25     clear that you didn't want to part with your

Page 249

1    interest in Milmont?
2         MS. POLAKOWSKI: Objection.
3    Foundation. Assumes facts not in evidence.
4         THE WITNESS: Milmont had nothing to
5    do with this suit.
6    BY MR. CHURCHILL:
7  Q   Did you try to explore other ways to obtain
8      money other than a sale of your stock from Windy
9      Waters?
10 A   No.
11 Q   Did you apply for any loans?
12        MS. POLAKOWSKI: Objection. Vague as
13   to timing.
14   BY MR. CHURCHILL:
15 Q   We're still talking in this May 2020 time frame
16     prior to your May 18 hearing in your divorce
17     case.
18 A   No.
19 Q   In that same time frame prior to your May 18
20     hearing while your divorce proceeding was going
21     on, did you ask other family members for money?
22 A   No.
23 Q   In that same time frame did you take money out
24     of retirement accounts?
25 A   No.

Page 250

1  Q   Did you consider moving?
2  A   In May of 2020?
3  Q   Yes.
4  A   I had already moved, so, no.
5  Q   Where were you living at the time?
6  A   I was living in an apartment that I'm still in
7      in McFarland.
8  Q   Did you have an obligation in May of 2020 for
9      condo payments?
10        MS. POLAKOWSKI: Objection. Calls for
11   a legal conclusion.
12        THE WITNESS: I didn't think so.
13   BY MR. CHURCHILL:
14 Q   But did you? You said you didn't think so. Did
15     you have an obligation for condo payments in May
16     of 2020?
17        MS. POLAKOWSKI: Objection. Calls for
18   a legal conclusion. Asked and answered.
19        THE WITNESS: I don't know.
20   BY MR. CHURCHILL:
21 Q   Did you have any rental properties at the time
22     in May of 2020 prior to May 18?
23 A   Yes.
24 Q   What were those rental properties?
25 A   They were condominiums in Cottage Grove.

Page 251

1  Q   How many?
2  A   I believe there was eight.
3  Q   And do you know their approximate value at the
4      time?
5  A   I did not.
6  Q   Did you consider selling any of the eight condos
7      that you owned?
8  A   No.
9  Q   Why not?
10 A   That was part of our income at the time.
11 Q   When you say "our income," you mean --
12 A   Steve and I.
13 Q   -- you and Steven? And how did you get that
14     income, you rented them out?
15 A   Yes.
16 Q   And did you obtain lease -- excuse me, did you
17     obtain rental income on all eight?
18 A   Yes.
19 Q   Where is Cottage Grove?
20 A   It's between --
21 Q   Sorry. I don't know.
22 A   I think it's south of Madison, but I don't know.
23 Q   How long had you had those condos?
24 A   I really don't know.
25 Q   Do you still own those condos today?

Page 252

1  A   I do not.
2  Q   Were those -- any of those eight condo
3      properties that you and Steven purchased with
4      some of the money you got from the prior stock
5      redemptions?
6  A   No.
7  Q   You mentioned earlier in your testimony that
8      there were properties that Steven had purchased.
9      Do you remember that?
10 A   Yes.
11 Q   What properties were you discussing then?
12 A   The properties in Florida.
13 Q   And did you still have those properties in May
14     of 2020?
15 A   No.
16        MS. POLAKOWSKI: Objection to form.
17   Mischaracterizes her testimony.
18   BY MR. CHURCHILL:
19 Q   What were those properties exactly?
20 A   I didn't have much interest in that. I believe
21     most of them were homes.
22 Q   When you say you didn't have much interest, do
23     you mean like personal intellectual interest or
24     financial interest?
25 A   Intellectual.