IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

STACY L. RANDALL,

      Plaintiff,

v.

REED C. WIDEN, MICHAEL KIESLER,        Civil Action No. 22-cv-400
WIDEN ENTERPRISES, LLC, and
WINDY WATERS, INC.,

      Defendants.

## DEFENDANTS' STATEMENT OF ADDITIONAL PROPOSED FINDINGS OF FACT IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and the Honorable James D. Peterson's standing orders on motions for summary judgment, Reed C. Widen, Michael J. Kiesler, Widen Enterprises, LLC, and Windy Waters, Inc. (collectively, the "Defendants") submit the below Additional Proposed Findings of Fact that demonstrate Plaintiff's Motion for Summary Judgment should be denied.

### ADDITIONAL PROPOSED FINDINGS OF FACT

***Communication With Randall Regarding Final Stock Redemption***

1.      In November 2019, just 11 months after her fifth stock redemption, when she received $120,000 for selling 281 shares under the Stock Price Formula, Plaintiff Stacy L. Randall ("Randall") reached out to Michael Kiesler ("Kiesler") to alert him she may be requesting money again in early 2020. Kiesler Decl., Sept. 29, 2023, (ECF No. 74) pp.9-10, ¶¶ 62-67, Ex. I (ECF No. 75-14); Kiesler Decl., Nov. 10, 2023, p.3, ¶ 12, Ex. D (WINDY0056317).

1

2.     In an email with the subject line "What else $$$$," Randall stated: "I know you just love hearing from me…… Especially when I need money!!" Kiesler Decl., Nov. 10, 2023, p.3, ¶ 12, Ex. D (WINDY0056317).

3.     As she had predicted, Randall asked Reed Widen ("Reed") for money in May 2020 and wanted to sell stock. Reed Dep., Aug. 23, 2023, at 66:11-67:20; Reed Decl., Sept. 29, 2023, (ECF No. 67) pp.5-6, ¶ 49, Ex. B (ECF No. 67-1); Randall Dep., Aug. 28, 2023, at 245:6-246:11; Kiesler Decl., Nov. 10, 2023, pp.6-7, ¶ 27.

4.     Windy Waters did not request or initiate any stock transaction by Randall. Reed Decl., Nov. 10, 2023, p.4, ¶ 21; Kiesler Decl., Nov. 10, 2023, pp.6-7, ¶ 27.

5.     Reed directed Kiesler to call Randall on behalf of Windy Waters to offer an all-or-nothing redemption for her shares of Windy Waters and, if she accepted, to carry out the transaction, and Kiesler did. Reed Decl., Sept. 29, 2023, (ECF No. 67) p.6, ¶ 54; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.15, ¶ 110.

6.     Reed understood any purchase of Randall's shares would be done consistently with the Stock Price Formula that had been used with all prior stock redemptions between 2005 and 2020, and never even considered any other options (nor did Randall request any). Reed Dep., Aug. 23, 2023, at 80:18-81:14; Reed Decl., Sept. 29, 2023, (ECF No. 67) p.6, ¶ 55; Reed Decl., Nov. 10, 2023, p.3, ¶ 19; Kiesler Dep., Sept. 19, 2023, at 168:24-169:7; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) pp.6-7, 15-16, ¶¶ 41-45, 112, 116.

7.     After Randall reached out to Reed, and Reed talked to Kiesler and asked him to help Randall, Kiesler spoke to Randall on the morning of May 6, 2020. Kiesler Dep., Sept. 19, 2023, at 172:23-173:2; Randall Dep., Aug. 28, 2023, at 261:19-24; Reed Decl., Sept. 29, 2023, (ECF No. 67) pp.5-6, ¶¶ 49-51; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.15, ¶¶ 109-13.

8.      During that conversation, Kiesler walked Randall through the calculation of the Stock Price Formula using November 2019 numbers. Kiesler Decl., Nov. 10, 2023, pp.6-7, ¶ 27.

9.      Randall never received a copy of the spreadsheet Kiesler used to calculate the price per share Windy Waters was willing to pay for Randall's stock in May 2020. Kiesler Dep., Sept. 19, 2023, at 71:10-21; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.16, 20, ¶¶ 119, 156, Ex. U (ECF No. 75-23); Kiesler Decl., Nov. 10, 2023, pp.5, 7-8, ¶¶ 23, 29.

10.     Kiesler never used the phrases "estimated value of Windy Waters," "fair value," or "concluded value of Windy Waters" when talking to Randall in May 2020. Kiesler Dep., Sept. 19, 2023, at 70:1-20, 71:10-21; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.16, ¶ 119, Ex. U (ECF No. 75-23); Kiesler Decl., Nov. 10, 2023, pp.5-8, ¶¶ 23, 27, 30.

11.     Prior to executing the May 13, 2020 Redemption Agreement, Randall did not ask to see and did not see the spreadsheet Kiesler used to make the calculation. Kiesler Decl., Nov. 10, 2023, pp.7-8, ¶ 29; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.20, ¶ 156; Wittenberg Decl., Sept. 29, 2023, (ECF No. 70) p.2, ¶ 5, Ex. D (ECF No. 70-4: Pl.'s Objections And Resps. To Defs.' First Set Of Reqs. For Admis.) at Resp. No. 58.

12.     Kiesler never showed Randall any version of the spreadsheet he used to calculate the Stock Price Formula in any form or on any occasion prior to May 13, 2020. Kiesler Dep., Sept. 19, 2023, at 71:10-21; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) pp.16, 20, ¶¶ 119, 156, Ex. U (ECF No. 75-23); Kiesler Decl., Nov. 10, 2023, pp.7-8, ¶ 29.

13.     When Kiesler walked Randall through the calculation of the per-share price he used to calculate the amount Windy Waters offered Randall for her stock, he did not read the words listed in the first column of the chart; rather, he explained the concepts conversationally. Kiesler

Decl., Nov. 10, 2023, pp.6-8, ¶¶ 27, 30-31; Kiesler Dep., Sept. 19, 2023, at 70:1-6, 70:18-71:2;

Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.16, ¶ 119, Ex. U (ECF No. 75-23).

14.     When Kiesler got to the row labeled "Estimated Value of Windy Waters" on his

calculation spreadsheet, he explained the figure represented the total dollar amount for all of the

shares of Windy Waters using the Stock Price Formula. Kiesler Decl., Nov. 10, 2023, pp.6-7, ¶

27.

15.     Next, when he explained the next two rows on his calculation spreadsheet, Kiesler

explained only that he compared the formula price to the price using net assets and concluded that

the formula price was more favorable to Randall. Kiesler Decl., Nov. 10, 2023, pp.6-7, ¶ 27.

16.     Kiesler made no representation to Randall in May 2020 about the value of Windy

Waters or its stock or Randall's stock specifically. Wittenberg Decl., Sept. 29, 2023, (ECF No. 70)

p.2, ¶ 5, Ex. D (ECF No. 70-4: Pl.'s Objections And Resps. To Defs.' First Set Of Reqs. For

Admis.) at Resp. No. 58; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) pp.19-20, ¶¶ 151, 156;

Kiesler Decl., Nov. 10, 2023, p.8, ¶ 32.

17.     Randall denied that Kiesler ever walked her through the formula. Randall Dep.,

Aug. 28, 2023, at 263:20-265:23, 303:22-304:3, 317:8-17.

18.     Kiesler assured Randall she could "take it or leave it," making it clear she was not

obligated to sell her shares. Randall Dep., Aug. 28, 2023, at 267:20-21; Kiesler Dep., Sept. 19,

2023, at 227:22-24; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.17, ¶ 128.

19.     Kiesler's best recollection of the conversation between him and Randall on May 6,

2020, is as follows:

Randall – Hello
Kiesler – Hi Stacy, it's Mike.  Reed called and told me to call you about needing
        money.

Randall – I need it for fucking legal fees. I need $100,000.

Kiesler – Is there any other way you can get the money?

Randall – No.

Kiesler – Did Reed tell you we just received PPP money from the government?

Randall – He said something about a COVID problem and that I might have to go through Millmont.

Kiesler – Based on my conversation with Reed, we aren't willing to make $100,000 available to you. We just can't do that.

Randall – How about $50,000?

Kiesler – I still don't know if we can make that available to you.  Reed did say the company would be willing to purchase all of your shares.  He said that the only way to get you money is by selling all your shares and spreading payments over time like we did with your brothers Stewart and Price. We'd create a note and pay you over 7 years like we did with Stewart and Price, if you would like.

Randall – How much would I get for my shares?

Kiesler –I'd have to look at the formula that we base it on.  Hold on, let me bring it up on my computer. [He opens a spreadsheet and stock summary on his computer.] I only have November 2019 numbers right now, and I would have to update it with year-end numbers, but let me do some math using this. [He calculates.] Based on the calculation, it comes to $1,126,125.04 for all your shares.

Randall – That seems awfully low.  This is all I have to live on.

Kiesler – Well, let me explain to you how we went through it.  It's the same formula we've always used. We treat all shareholders the same way, to be fair to everyone, and we've used it consistently for you and everyone, including Price and Stewart.  Let me go through it with you so that you know how it works.

Randall – Okay.

Kiesler – The calculation starts with Net Income which is revenue less expenses which was a loss of $971,438. Then it adds back income tax expense and depreciation. Then it subtracts other income and adds back other expenses. It then subtracts gains from one of our investment accounts and adds losses for the other investment account. So Net Income plus and minus all those items equals earnings before income tax, depreciation and amortization.

Randall – Okay.

Kiesler – Then there is a weighted average that is used which looks at the current year and two previous years and multiplies that number by a multiple that has been used throughout time. Then cash and investment amounts are added back and Price's stock redemption note is subtracted to come up with a formula value for the whole company, which is $6,185,398. That is compared to the stockholders' equity amount from the company's financials, which is $1,326,205. We take the higher number to figure out the price per share amount, then divide by the number of shares. From

5

> these numbers, the formula value is higher, and that is $538.17 per share of voting stock and $512.54 per share for common stock. And like I said, these numbers are all November numbers and I'll have to update the calculation with December numbers and let you know.
>
> Randall – Okay. I don't know what to do.
>
> Kiesler – Well, you can do whatever you want, but it could be smart to sell your shares and be in control of your finances.  With COVID continuing, the amount may be lower in the future. And worse case if COVID continues to be a problem for however long or even gets worse, who knows if Widen may even be around in a few years. But it's up to you.
>
> Randall – It could go up, too.
>
> Kiesler – It could, that is true. We are dealing with a huge unknown here.
>
> Randall – Okay. I'm not sure I want to sell all my shares.
>
> Kiesler – The decision isn't up to me.  Reed makes the decision. Reed has the ultimate decision. I have to verify to make sure with him, but this is all we are willing to offer, so you'll have to either take it or leave it. Let me know what you think before the end of the day, because if you want to do this, we have to decide whether to return the PPP money.
>
> Randall – Okay.

Kiesler Decl., Nov. 10, 2023, pp.6-7, ¶ 27.

20. The entire conversation was approximately 10-15 minutes long. Kiesler Decl., Nov. 10, 2023, p.7, ¶ 28.

21. Kiesler called Randall on May 13 to communicate the updated calculation under the Stock Price Formula, using December 2019 financials as promised, of over $1.3 million. Randall Dep., Aug. 23, 2023, at 303:17-304:3, 304:9-12; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.18, ¶ 140; Wittenberg Decl., Sept. 29, 2023, (ECF No. 70) pp.1-2, ¶ 4, Ex. D (ECF No. 70-4: Pl.'s Objections And Resps. To Defs.' First Set Of Reqs. For Admis.) at Resp. No. 63.

22. Randall agreed with the terms on the spot during the call and said she would be coming in later that day to sign the documents. Randall Dep., Aug. 28, 2023, at 303:17-304:23, 313:2-15; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.18, ¶ 142; Wittenberg Decl., Sept. 29, 2023, p.2, ¶ 14, Ex. N (ECF No. 70-13).

23. Randall did not ask for any financial information or documents about the company during her discussion with Kiesler in May 2020. Randall Dep., Aug. 28, 2023, at 266:23-267:1; Kiesler Dep., Sept. 19, 2023, at 232:2-22; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.16, ¶ 122.

24. From May 5 through May 13, 2020, Randall never asked any of the Defendants what the value of Windy Waters or Widen Enterprises was. Reed Decl., Sept. 29, 2023, (ECF No. 67) p.7, ¶ 62; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.20, ¶ 154.

25. From May 5 through May 13, 2020, Kiesler never told Randall what the value of Windy Waters or Widen Enterprises was because he did not know. Kiesler Decl., Nov. 10, 2023, p.8, ¶ 33; Kiesler Dep., Sept. 19, 2023, at 78:7-17, 139:7-14, 149:5-12; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) pp.16, 21, ¶¶ 123, 164-65.

26. Reed, Matthew Gonnering ("Gonnering"), and Kiesler did not know the fair market value of Widen Enterprises, Windy Waters, or a share of stock in Windy Waters as of May 13, 2020. Reed Dep., Aug. 23, 2023, at 97:25-99:5, 127:15-25, 128:8-15, 132:7-19, 133:1-10, 164:25-165:20; Reed Decl., Sept. 29, 2023, (ECF No. 67) p.9, ¶¶ 77-78; Reed Decl., Nov. 10, 2023, p.4, ¶ 22; Kiesler Dep., Sept. 19, 2023, at 78:7-17, 139:7-14, 149:5-12; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.21, ¶¶ 164-65; Kiesler Decl., Nov. 10, 2023, p.8, ¶ 34; Gonnering Dep., Sept. 21, 2023, at 100:4-12, 106:17-22, 107:22-23, 109:1-7, 110:7-8; Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.7, ¶¶ 49-50; Gonnering Decl., Nov. 10, 2023, p.2, ¶ 7; Wittenberg Decl., Sept. 29, 2023, (ECF No. 70) p.2, ¶ 6, Ex. E (ECF No. 70-5: Windy Waters' Objections And Resps. To Pl.'s Second Set of Interrogs.) at Resp. No. 11.

27. Reed believed it was in the company's best interest to buy Randall out in full rather than in part, if it was going to do anything, for three reasons: (1) Windy Waters was no longer willing to be Randall's bank every time she needed money, (2) each time Randall redeemed shares

it cost Windy Waters attorneys' fees and required time by Kiesler to calculate the formula and confer with counsel; and (3) Windy Waters preferred active, as opposed to passive, shareholders going forward. Reed Decl., Sept. 29, 2023, (ECF No. 67) p.6, ¶ 52; Kiesler Dep. 168:1-16; Gonnering Dep., Sept. 21, 2023, at 161:6-25, 166:6-168:15; Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.6, ¶¶ 42-43.

28.     Initially, Randall made it seem as though she needed the money quickly. Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.15, ¶ 113.

29.     She had a divorce proceeding coming up on May 18, 2020, during which her husband's request for maintenance payments would be heard. Randall Dep., Aug. 28, 2023, at 239:18-243:7.

### Randall's Lack of Reliance

30.     On May 6, 2020, after her first call with Kiesler, Randall contacted her son, Justin Randall ("Justin"), and told him about the offer. Randall Dep., Aug. 28, 2023, at 280:24-281:24; Wittenberg Decl., Sept. 29, 2023, (ECF No. 70) p.2, ¶ 11, Ex. K (ECF No. 70-10).

31.     Justin told her she should get a lawyer prior to redeeming all of her stock and told her she should have an attorney look at the financials of Widen Enterprises. Randall Dep., Aug. 28, 2023, at 276:4-14, 294:20-295:9.

32.     Justin also advised Randall to contact an accountant. Justin Randall Dep. ("Justin Dep."), Oct. 25, 2023, at 83:21-84:14, 91:5-24, 94:12-95:7, 186:2-25.

33.     During their second phone call on May 6, 2020, Randall told Kiesler that she had never thought he and Reed had an interest in Randall's well-being and believed she made it clear that she did not trust them. Randall Dep., Aug. 28, 2023, at 285:23-286:18, 291:18-293:3; Wittenberg Decl., Sept. 29, 2023, (ECF No. 70) p.2, ¶ 13, Ex. M (ECF No. 70-12).

34.     In their second conversation on May 6, 2020, Randall told Kiesler she wanted to talk with her lawyer and financial advisor, and Kiesler told her she should do that. Kiesler Dep., Sept. 19, 2023, at 212:15-24, 213:9-18; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.17, ¶¶ 129-30; Wittenberg Decl., Sept. 29, 2023, (ECF No. 70) p.1, ¶ 3, Ex. B (ECF No. 70-2: Defs.' First Am. Objections And Resps. To Pl.'s First Reqs. For Admis.) at Resp. No. 34.

35.     She expressed her actual understanding of the share price calculation and the conversation after her second phone call with Kiesler on May 6, explaining to her financial advisor Mark Goff directly after the call as follows:

> Mikes [sic] attitude sure turned around in a hurry when I told him that I would like to hire someone that would represent me to look at the books and do their own evaluation of the company. I told him I have never thought that they have had an interest in my well being. He told me that the company puts all of the in coming [sic] "profit" right back into the business. So they never make any money…. He gave me the way they have evaluated the company shares since 1991. It has nothing to do with how good or bad the company is doing. He was trying to tell me in 7 years my stock would still be worth 1.1 mill. I don't understand how that could be. Just when I was going to call him back he was calling me, it was at 3:58. I had to chuckle thinking he was going to pressure me for a decision. What he told me was that he had just received an email saying the government has pushed back the deadline for another week so he doesn't need my answer today after all. Now I have time to talk to Scott Spangler on Monday to see what he thinks I should do. Kiesler now knows I don't trust he or Reed and that I don't believe they have my best interest in mind at all. I could tell he was in disbelief and I could hear some sadness in his voice.

Randall Dep., Aug. 28, 2023, at 285:23-286:18; Wittenberg Decl., Sept. 29, 2023, (ECF No. 70) p.2, ¶ 13, Ex. M (ECF No. 70-12).

36.     Randall denied that Kiesler walked through the formula with her. Randall Dep., Aug. 28, 2023, at 263:20-265:23, 303:22-304:3, 317:8-17.

37.     Randall did not contact any attorneys following her May 6 conversation with Kiesler until May 13, the day she signed the redemption agreement. Randall Dep., Aug. 28, 2023, at 276:4-25.

38.     On May 13, when Randall spoke with Windy Waters' counsel, he offered to provide her with the names of attorneys she could consult with, but she declined the offer. Scott Seid Dep. ("Seid Dep."), Aug. 17, 2023, at 33:9-34:12, 39:1-14, 122:10-21.

39.     Seid also told Randall (1) he could not give her advice because the firm represents the company, (2) that if she was uncomfortable signing the documents, there was no reason to do it, and (3) that if she felt like she needed to talk to an attorney first, that she absolutely had the right to do that and should do that. Am. Answer (ECF No. 45), ¶¶ 110-11, 113; Seid Dep., Aug. 17, 2023, at 33:9-34:14, 38:2-39:12, 40:6-11; Wittenberg Decl., Sept. 29, 2023, (ECF No. 70) p.3, ¶ 17, Ex. R (ECF No. 70-16).

40.     Between May 6, 2020, and May 13, 2020, Reed and Randall had no contact and did not communicate in any way. Reed Decl., Sept. 29, 2023, (ECF No. 67) p.7, ¶ 64; Randall Dep., Aug. 28, 2023, at 261:12-18.

41.     Between May 5 and May 13, 2020, Reed and Kiesler had no discussions about what information Randall did or did not have about Windy Waters, and Reed did not otherwise know what information Randall did or did not have about Windy Waters. Reed Decl., Sept. 29, 2023, (ECF No. 67) p.7, ¶ 65.

42.     Reed made no statement of fact to Randall related to her stock redemption between May 5, 2020 and May 13, 2020. Reed Decl., Sept. 29, 2023, (ECF No. 67) pp.7-8, ¶¶ 64, 66-67.

### Company Officer Roles

43.    Windy Waters' bylaws provided for only the standard officer roles of president, one or more vice-presidents, secretary, and a treasurer. Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.20, ¶ 159, Ex. X (ECF No. 74-10).

44.    Between 2007 and the time of Randall's final redemption, Reed was never elected to be an officer or director of Windy Waters. Reed Decl., Nov. 10, 2023, p.2, ¶ 7; Reed C. Widen Decl., July 14, 2023, (ECF No. 33) p.1, ¶ 2, Ex. A (ECF No. 33-1).

45.    Between 2007 and the time of Randall's final redemption, Reed was not an officer or director of Windy Waters. Reed Decl., Nov. 10, 2023, p.2, ¶ 7; Reed C. Widen Decl., July 14, 2023, (ECF No. 33) p.1, ¶ 2, Ex. A (ECF No. 33-1).

### Historical Application of Stock Price Formula

46.    The Stock Price Formula was described in the May 7, 2007 Second Amendment to Shareholder Agreement of Windy Waters (the "Second Amendment"). A true and correct copy of the document is attached to Michael J. Kiesler's September 29, 2023, Declaration as Exhibit D. Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.6, ¶ 37, Ex. D (ECF No. 74-4).

47.    The Stock Price Formula is based on a commonly used metric in accounting called EBITDA, short for earnings before interest, taxes, depreciation, and amortization. Kiesler Decl., Nov. 10, 2023, p.4, ¶ 17.

48.    The starting point for calculating the EBITDA of Windy Waters was Windy Waters' net income (which itself was a function of revenue minus expenses). Kiesler Decl., Nov. 10, 2023, p.4, ¶ 18.

49.    The Stock Price Formula was originally created in 2004 by Baker Tilly, the accounting firm used by Windy Waters. Bruce Hutler Decl. ("Hutler Decl."), Sept. 29, 2023, (ECF

11

No. 68) pp. 1-2, ¶¶ 1-6, Ex. 1 (ECF No. 68-1); Declaration of Brad DeNoyer, Nov. 10, 2023, ("DeNoyer Decl."), p.1, ¶ 4; Reed Decl., Sept. 29, 2023, (ECF No. 67) p.4, ¶¶ 33-34; Kiesler Decl., Nov. 10, 2023, p.5, ¶¶ 19-20, Ex. K (WINDY0056415).

50.     Baker Tilly explained to Kiesler that the formula would be a fair way to approximate a price in the ballpark of fair market value, and would eliminate the need to obtain a formal valuation each time a stock transaction was requested. DeNoyer Decl., Nov. 10, 2023, p.2, ¶ 5; Kiesler Decl., Nov. 10, 2023, p.5, ¶ 22.

51.     After its creation in 2004, the Stock Price Formula was included in stock transfer agreements for Mike Kiesler, Gary Norris, Thomas Schmidt, and Terry Vial when they acquired stock in 2004. Kiesler Decl., Nov. 10, 2023, p.5, ¶¶ 19-20, Ex. K (WINDY0056415).

52.     Then, in 2007, Windy Waters' counsel recommended memorializing use of the Stock Price Formula in the Second Amendment to Shareholder Agreement of Windy Waters. Kiesler Decl., Nov. 10, 2023, p.5, ¶ 21, Ex. L (WINDY0056348).

53.     The lawyer drafted the agreement and asked Kiesler to circulate it for signature. Kiesler Decl., Nov. 10, 2023, p.5, ¶ 21, Ex. L (WINDY0056348).

54.     Randall and the other two voting shareholders at the time signed it, along with their spouses. Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.6, ¶ 37, Ex. D (ECF No. 74-4).

55.     Kiesler calculated the Stock Price Formula to obtain a per-share price for every stock transaction since 2004. Kiesler Decl., Sept. 29, 2023, (ECF No. 74) pp.4-6, ¶¶ 35-36, 41 Kiesler Dep., Sept. 19, 2023, at 195:1-8, 204:3-7; Gonnering Dep., Sept. 21, 2023, at 148:1-5, 148:19-20, 149:4-8; Corp. Representative of Windy Waters, Inc. Dep. ("Windy Waters Dep."), Nov. 3, 2023, at 86:18-87:5, 88:22-90:21, 91:20-93:5; Wittenberg Decl., Nov. 10, 2023, p.2, ¶ 8, Ex. G (Ex. 8 to Windy Waters Dep.).

56.     Since 2013, based on advice from Windy Waters' advisor, Bruce Hutler, every time Kiesler calculated the stock price, Kiesler compared the formula price to a per-share price using the company's assets minus liabilities—that is, the net assets, referred to as the stockholder's equity amount in Windy Waters' financial statements. Hutler Decl., Sept. 29, 2023, (ECF No. 68) pp.1, 4, ¶¶ 3, 14; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.6, ¶¶ 39-41; Windy Waters Dep., Nov. 3, 2023, at 112:15-25.

57.      The only time a price other than the Stock Price Formula price was paid was on the one occasion after 2013 when Kiesler compared the formula per-share price to a per-share price using the company's assets and found the price calculated from net assets was higher. Kiesler Decl., Sept. 29, 2023, (ECF No. 74) pp.4-6, 11, ¶¶ 35-41, 78-80, Ex. M (ECF No. 75-18); Windy Waters Dep., Nov. 3, 2023, at 86:18-87:5, 88:22-90:21, 91:20-92:3; Wittenberg Decl., Nov. 10, 2023, p.2, ¶ 8, Ex. G (Ex. 8 to Windy Waters Dep.).

58.     This use of the Stock Price Formula, even in voluntary transactions, was based on the custom, practice, and understanding among the shareholders. Reed Decl., Nov. 10, 2023, p.3, ¶ 19; Randall Dep., Aug. 28, 2023, at 200:10-16.

59.     [intentionally left blank]

60.     Kiesler did it this way every time because he "was always told to be consistent." Kiesler Dep., Sept. 19, 2023, at 195:1-8.

61.     A chart showing each stock transaction for Windy Waters from 2004 to 2020 is below:

| Shareholder Name: | Effective Date: | Redemption or Subscription: | # of Shares: | Price Per Share: |
|---|---|---|---|---|
| **Gary Norris** | 05/15/2004 | Subscription | 285.68 | $350.04 |

| Shareholder Name: | Effective Date: | Redemption or Subscription: | # of Shares: | Price Per Share: |
|---|---|---|---|---|
| Terry Vial | 05/15/2004 | Subscription | 285.68 | $350.04 |
| Thomas Schmidt | 05/15/2004 | Subscription | 285.68 | $350.04 |
| Michael Kiesler | 05/15/2004 | Subscription | 285.68 | $350.04 |
| Stacy Randall | 06/30/2005 | Redemption | 611.88 | $326.86 |
| Stewart Widen | 01/01/2007 | Redemption | 232.75 (Class A) 5063.903 (Class B) | $294.70 (Class A) $280.66 (Class B) |
| Gary Norris | 01/01/2007 | Subscription | 712.606 | $280.66 |
| Michael Kiesler | 01/01/2007 | Subscription | 356.303 | $280.66 |
| Terry Vial | 01/01/2007 | Subscription | 356.303 | $280.66 |
| Stacy Randall | 06/30/2007 | Redemption | 801.05 | $312.09 |
| Matthew Gonnering | 01/01/2008 | Subscription | 148.54 | $336.61 |
| Reed Widen | 01/01/2008 | Subscription | 594.16 | $336.61 |
| Thomas Schmidt | 12/31/2009 | Redemption | 285.68 | $155.34 |
| Matthew Gonnering | 01/01/2011 | Subscription | 592.77 | $168.70 |
| Stacy Randall | 01/18/2011 | Redemption | 1185.5364 | $168.70 |
| Terry Vial | 02/07/2011 | Redemption | 264.7308 | $168.70 |
| Brian Becker | 12/31/2012 | Subscription | 104.4923 | 223.86 |
| Gary Norris | 12/31/2012 | Subscription | 104.4923 | 223.86 |
| Matthew Gonnering | 12/31/2012 | Subscription | 104.4923 | 223.86 |
| Michael Kiesler | 12/31/2012 | Subscription | 104.4923 | 223.86 |

| Shareholder Name: | Effective Date: | Redemption or Subscription: | # of Shares: | Price Per Share: |
|---|---|---|---|---|
| Reed Widen | 12/31/2012 | Subscription | 446.7078 | 223.86 |
| Stacy Randall | 12/31/2012 | Subscription | 44.6708 | 223.86 |
| Price Widen | 06/01/2015 | Redemption | 232.75 (Class A)<br><br>5063.9025 (Class B) | $178.44 (Class A)<br><br>$169.94 (Class B) |
| Brian Becker | 04/30/2016 | Redemption | 104.4923 | $334.14 |
| Terry Vial | 04/30/2016 | Redemption | 377.2522 | $334.14 |
| Stacy Randall | 08/01/2017 | Redemption | 275.5210 | $283.10 |
| Stacy Randall | 01/01/2019 | Redemption | 281.8291 | $425.79 |
| Reed C. Widen Children's Trust | 12/24/2019 | Redemption | 861 | $512.54 |
| Stacy Randall | 05/13/2020 | Redemption | 232.75 (Class A)<br><br>1952.7568 (Class B) | $646.19 (Class A)<br><br>$615.42 (Class B) |

Kiesler Decl., Sept. 29, 2023, (ECF No. 74) pp.4-6, ¶¶ 35-36; Windy Waters Dep., Nov. 3, 2023, at 86:18-87:5, 88:22-90:21, 91:20-93:5; Wittenberg Decl., Nov. 10, 2023, p.2, ¶ 8, Ex. G (Ex. 8 to Windy Waters Dep.).

62.     As with all other transactions since 2004, when the Reed C. Widen Children's Trust of 2007 redeemed its shares in 2019, the price of $512.54 was calculated using the Stock Price Formula, and that price exceeded the net assets price. Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.12, ¶¶ 87-88, Ex. Q (ECF No. 75-21).

15

63.     Randall authorized use of her signature stamp on the document effectuating the stock transfer involving the Reed C. Widen Children's Trust of 2007 without asking any questions. Randall Dep., Aug. 28, 2023, at 132:6-13, 138:17-20, 141:16-21; Kiesler Dep., Sept. 19, 2023, at 106:20-121:6, 120:19-121:3, 121:15-122:23; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.12, ¶¶ 87-89, Ex. P (ECF No. 74-5).

64.     The Reed C. Widen Children's Trust of 2007 was established by Reed Widen for the benefit of his children. Reed Decl., Sept. 29, 2023, (ECF No. 67) p.5, ¶ 45.

65.     The Reed C. Widen Children's Trust of 2007 was terminated in 2019 and the trust then paid Reed's children the funds it received from selling the Windy Waters shares it owned. Reed Decl., Sept. 29, 2023, (ECF No. 67) p.5, ¶ 46.

66.     A chart showing each of Randall's stock redemptions is below:

| Effective Date: | # of Shares: | Price Per Share: | Total Price: |
|---|---|---|---|
| 06/30/2005 | 611.88 | $326.86 | $200,000.00 |
| 06/30/2007 | 801.05 | $312.09 | $250,000.00 |
| 01/18/2011 | 1185.5364 | $168.70 | $200,000.00 |
| 08/01/2017 | 275.5210 | $283.10 | $78,000.00 |
| 01/01/2019 | 281.8291 | $425.79 | $120,000.00 |
| 05/13/2020 | 232.75        (Class A) 1952.7568 (Class B) | $646.19 (Class A) $615.42 (Class B) | $1,352,166.31 |

Kiesler Decl., Sept. 29, 2023, (ECF No. 74) pp.6-10, ¶¶ 42-67, Exs. G (ECF No. 75-12), H (ECF No. 75-13), I (ECF No. 75-14).

67.     Each time Randall redeemed stock, the amount paid was based on the calculation of the Stock Price Formula, and each time, the price calculated from the Stock Price Formula was more favorable than the price would have been if calculated from net assets. She never asked for nor received financial statements in relation to those prior transactions. Randall Dep., Aug. 28,

2023, at 82:23-25; Kiesler Dep., Sept. 19, 2023, at 280:9-15; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) pp.4, 6-7, 10, ¶¶ 29, 37, 45, 68-69, Ex. D (ECF No. 74-4); Reed Decl., Sept. 29, 2023, (ECF No. 67) p.4, ¶ 31.

68.     As had been consistently done with prior stock transactions, the price calculated using the Stock Price Formula was the amount Windy Waters was willing to pay for the rest of Randall's shares on May 13, 2020. Reed Dep., Aug. 23, 2023, at 80:18-81:14; Reed Decl., Sept. 29, 2023, (ECF No. 67) p.6, ¶ 55; Kiesler Dep., Sept. 19, 2023, at 168:24-169:7; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) pp.16-18, ¶¶ 118-20, 133-35, 140-41.

### *Impact of Randall's Redemption*

69.     A true and correct copy of the signed stock redemption agreement dated May 13, 2020, by which Randall sold all her shares in Widen Enterprises, is attached to the Complaint as Exhibit B (ECF No. 1-6) and to the Reed C. Widen Declaration dated July 14, 2023 (ECF No.33) as Exhibit A (ECF No. 33-1). Compl. (ECF No. 1), ¶ 125, Ex. A (ECF No. 1-6); Reed C. Widen Decl., July 14, 2023, (ECF No. 33) p.1, ¶ 2, Ex. A (ECF No. 33-1).

70.     When Randall redeemed all of her shares in May 2020, she resigned from her role as sole director and president of Windy Waters. Reed C. Widen Decl., July 14, 2023, (ECF No. 33) p.1, ¶ 2, Ex. A (ECF No. 33-1).

71.     After Randall redeemed all of her shares in May 2020, the only remaining shareholders of Windy Waters were Reed (as trustee of the Reed C. Widen and Leanne M. Widen Revocable Trust of 2013), Gary Norris, Kiesler, and Gonnering. Kiesler Decl., Nov. 10, 2023, p.8, ¶ 35.

72.     As of May 2020, Reed, Gary Norris, Kiesler, and Gonnering were all employed by Widen Enterprises. Kiesler Decl., Nov. 10, 2023, p.8, ¶ 36.

73.    Randall was not employed by Widen Enterprises or Windy Waters in 2020. Randall Dep., Aug. 28, 2023, at 19:24-20:8, 72:11-17; Reed Decl., Sept. 29, 2023, (ECF No. 67) p.3, ¶ 23.

74.    After May 13, 2020, for the first time since Gonnering became CEO, all Windy Waters shareholders were also Widen Enterprises employees (Reed was trustee of the Reed C. Widen and Leanne M. Widen Revocable Trust of 2013). Kiesler Decl., Nov. 10, 2023, p.8, ¶ 37; *see also* Palay Decl., Sept. 29, 2023, (ECF No. 63) p.5, ¶ 37, Ex. 35 (ECF No. 63-34).

75.    Paying employees who were also shareholders compensation through dividends rather than wages was a theory Gonnering learned about in business school. Gonnering Dep., Sept. 21, 2023, at 169:9-13.

76.    In 2020, Kiesler explored payment through dividends rather than wages with employment tax at Gonnering's request, but the companies' accounting firm, Baker Tilly, did not recommend it. Kiesler Decl., Nov. 10, 2023, pp.8-9, ¶ 38, Exs. M (WINDY0044692), N (WINDY0044193).

77.    In June 2020, because all Windy Waters shareholders were also Widen Enterprises employees for the first time since Gonnering became CEO, Gonnering instructed Kiesler to explore options for reducing its employment tax burden by reducing payroll compensation to the four shareholders and instead paying an equal amount through a dividend paid pro rata to those shareholders. Kiesler Decl., Nov. 10, 2023, pp.8-9, ¶¶ 37-38; Palay Decl., Sept. 29, 2023, (ECF No. 63) p.5, ¶ 37, Ex. 35 (ECF No. 63-34).

78.    However, advisors at Baker Tilly advised against paying dividends instead of compensation. Kiesler Decl., Nov. 10, 2023, pp.8-9, ¶ 38, Ex. N (WINDY0044193).

79.     After receiving this advice, Widen Enterprises did not further pursue paying Windy Waters shareholders through dividends instead of compensation. Kiesler Decl., Nov. 10, 2023, pp.8-9, ¶ 38.

### *Widen Enterprises Advisory Board*

80.     In approximately 2009 or 2010, Reed assembled an advisory board to advise Widen Enterprises on various matters. Reed Decl., Nov. 10, 2023, p.2, ¶ 8.

81.     The advisory board was made up of external advisors, such as its accountants and lawyers. Reed Decl., Nov. 10, 2023, p.2, ¶ 9.

82.     The advisory board members were not directors of Widen Enterprises or Windy Waters and did not engage in any corporate governance. Reed Decl., Nov. 10, 2023, p.2, ¶ 10.

83.     Reed originally thought an advisory board would provide a way to collaborate with trusted advisors in an efficient manner. Reed Decl., Nov. 10, 2023, p.2, ¶ 11.

84.     Reed did not see the efficiencies he'd hoped from the advisory board, and eventually stopped coordinating meetings and reverted to consulting advisors on an as-needed basis. Reed Decl., Nov. 10, 2023, p.2, ¶ 12.

### *Deferred Compensation Plan Valuations*

85.     In 2018, Widen Enterprises created a deferred compensation plan—the Widen Enterprises, Inc. Performance Unit Employee Compensation Plan (the "Plan")—for key executives. Reed Decl., Nov. 10, 2023, p.2, ¶ 14.

86.     Reed set up this Plan with the goal of motivating executives to continue growing the business. Reed Decl., Nov. 10, 2023, p.3, ¶ 15.

87.     Gonnering and Kiesler were both participants under the Plan. Reed Decl., Nov. 10, 2023, p.3, ¶ 16, Exs. D (WINDY0049602), E (WINDY0049621).

19

88.     The Plan allowed a committee to award performance units to the participants based on the fair market value of Class B common stock of Windy Waters. Reed Decl., Nov. 10, 2023, p.3, ¶ 16, Exs. D (WINDY0049602), E (WINDY0049621).

89.     By agreement, that fair market value of stock was calculated by averaging a weighted income-approach formula and a weighted market-approach formula (the "Deferred Comp Valuation Method"). Reed Decl., Nov. 10, 2023, p.3, ¶ 16, Exs. D (WINDY0049602, at 0049610-11), E (WINDY0049621, at 0049630-31).

90.     This methodology was recommended by Baker Tilly, the certified public accountants used by Windy Waters and Widen Enterprises. Reed Decl., Nov. 10, 2023, p.3, ¶ 17.

91.     For years between 2017 and 2020, the estimated fair market value ("FMV") of the equity (i.e., stock) in Windy Waters, Inc.  was determined by Baker Tilly for purposes of the Plan. Reed Decl., Nov. 10, 2023, p.3, ¶ 18.

92.     After the Hutler valuation in 2004, the next time any expert valuation of Windy Waters was completed was when Baker Tilly provided a valuation for purposes of the Plan. Hutler Decl., Sept. 29, 2023, (ECF No. 68) p.2, ¶ 6, Ex. 1 (ECF No. 68-1); Windy Waters Dep., Nov. 3, 2023, at 98:17-99:16, 105:25-106:5, 106:23-107:14.

93.     Baker Tilly used the Deferred Comp Valuation Method to calculate the estimated fair market value of the Windy Waters equity and then determined the estimated fair market value of each Class A share of Windy Waters stock and each Class B share of Windy Waters stock. Baker Tilly did this calculation annually in the ordinary course under the Plan. Reed Decl., Nov. 10, 2023, p.3, ¶ 18, Exs. F (WINDY0001102), G (WINDY0001121), H (WINDY0001128), I (WINDY0041505).

94.     The below chart shows the results of each valuation by Baker Tilly under the Plan:

**Estimated Fair Market Value of Windy Water Shares**
**(As determined by Baker Tilly)**

| Date | All WW Shares | Each Class A Share | Each Class B Share |
|------|---------------|--------------------|--------------------|
| 10/31/17 | $ 662,258 | $55.07 | $52.45 |
| 12/31/18 | $ 319,614 | $26.59 | $25.32 |
| 12/31/19 | $ 459,718 | $38.23 | $36.41 |
| 12/31/20 | $ 443,497 | $51.68 | $49.22 |

Windy Waters Dep., Nov. 3, 2023, at 98:17-24, 107:5-11; Wittenberg Decl., Nov. 10, 2023, p.2, ¶ 9, Ex. H (Ex. 11 to Windy Waters Dep.); Reed Decl., Nov. 10, 2023, p.3, ¶ 18, Exs. F (WINDY0001102, at 0001105), G (WINDY0001121, at 0001122), H (WINDY0001128, at 0001129), I (WINDY0041505, at 0041506).

95.     Baker Tilly calculated the estimated fair market value of Windy Waters shares, as of 12/31/19, to be $38.23 per share for Class A shares, and $36.41 per share for Class B shares. Reed Decl., Nov. 10, 2023, p.3, ¶ 18, Ex. H (WINDY0001128, at 0001129).

96.     A true and correct copy of the report from Baker Tilly showing the Deferred Comp Valuation Method for 2019, dated February 6, 2020, is attached as Exhibit H to Reed's November 10, 2023, Declaration. Reed Decl., Nov. 10, 2023, p.3, ¶ 18, Ex. H (WINDY0001128).

### *Financial Information Available to Randall*

97.     Randall received tax forms each year she was a shareholder to help her file her taxes that provided information about Windy Waters' financials. Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.21, ¶ 171; Randall Dep., Aug. 28, 2023, at 149:12-17, 150:17-151:4; Steven Randall Dep. ("Steven Dep."), Oct. 12, 2023, at 91:21-92:25.

98.     Randall had access to her tax forms every year and knew where they were kept. Steven Dep., Oct. 12, 2023, at 93:1-25.

99.     Randall's accountant explained her taxes to her every year. Randall Dep., Aug. 28, 2023, at 298:25-299:13.

100.    It has always been the practice of Windy Waters to provide information to shareholders on request. Windy Waters Dep., Nov. 3, 2023, at 206:3-25; Wittenberg Decl., Nov. 10, 2023, p.2, ¶ 11, Ex. J (Ex. 21 to Windy Waters Dep.); Kiesler Decl., Nov. 10, 2023, pp.3-4, ¶¶ 11, 13, 15-16, Exs. C (WINDY0056318), E (WINDY0055942), F (WINDY0059720), G (WINDY0059740), H (WINDY0059752), I (WINDY0038393), J (WINDY0057416).

101.    Randall never asked for any financial information about the company directly. Randall Dep., Aug. 28, 2023, at 82:23-25; Kiesler Dep., Sept. 19, 2023, at 280:9-15; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) pp.4, 10, 16, 19, ¶¶ 29, 68, 122, 149-50; Reed Decl., Sept. 29, 2023, (ECF No. 67) pp.4, 8 ¶¶ 31, 68.

102.    However, when other individuals have asked for financial information on Randall's behalf or when she needed to provide that information to someone else, she received it promptly. Kiesler Decl., Nov. 10, 2023, pp.3-4, ¶¶ 11, 13, 15-16, Exs. C (WINDY0056318), E (WINDY0055942), F (WINDY0059720), G (WINDY0059740), H (WINDY0059752), I (WINDY0038393), J (WINDY0057416).

103.    One time, in June 2016, Randall's then-husband asked Kiesler on Randall's behalf for "profit and loss" for Windy Waters "for 3 months (Feb, Mar, April) for the bank." Kiesler Decl., Nov. 10, 2023, p.3, ¶ 11, Ex. C (WINDY0056318).

104.    The same day, Kiesler sent copies of Windy Waters financial statements for January through April 2016 to both Randall and her husband. Kiesler Decl., Nov. 10, 2023, p.3, ¶ 11, Ex. C (WINDY0056318).

105.    In March 2020, Randall asked Reed and then Kiesler to work with her divorce lawyer to provide responses to discovery requests in her divorce proceedings, forwarding the discovery requests. The information requested included detailed monthly statements for checking, deposit, and savings accounts in Windy Waters' name, as well as detailed monthly or quarterly statements for all investment accounts owned by Windy Waters, since January 2019. Reed Decl., Nov. 10, 2023, p.4, ¶ 20; Kiesler Decl., Nov. 10, 2023, p.3, ¶ 13, Ex. E (WINDY0059942).

106.    To allow Randall to respond to those discovery requests, using a file link Randall's counsel provided, Kiesler uploaded bank statements and investment account statements he had gathered to that link. A screenshot of the folder structure for the files he uploaded is below, and the file names indicate to which request the documents related and accurate summarize the documents in that folder:



Kiesler Decl., Nov. 10, 2023, pp.3-4, ¶ 14.

107.    Those records included investment account statements showing Windy Waters held over $4.5 million in three investment accounts through the statement dates in 2019, and included bank statements of Widen Enterprises, the most recent showing a balance of $3.172 million as of

February 29, 2020. Kiesler Decl., Nov. 10, 2023, p.4, ¶ 15, Exs. F (WINDY0059720), G (WINDY0059740), H (WINDY0059752), I (WINDY0038393).

108.    On March 26, 2020, Randall's counsel confirmed she had received the records. Kiesler Decl., Nov. 10, 2023, p.4, ¶ 16 Ex. J (WINDY0057416).

### Status of Windy Waters in Spring 2020

109.    Widen Enterprises showed negative net income in March and April 2020, which means that Widen Enterprises recognized more expense than revenue in those months. Kiesler Decl., Nov. 10, 2023, p.5, ¶ 24.

110.    In March 2020, Windy Waters' investments dropped in value. In just that one month, the company's investments lost more than $500,000. Kiesler Decl., Nov. 10, 2023, p.6, ¶ 25.

111.    The CEO of Widen Enterprises highlighted the importance of cash reserves in April 2020, stating: "While cash is good at the moment, this is critical to our operational success. As you'll read in the scenarios below, maintaining a strong cash position will help us weather the storm. Given the persistent market uncertainty, an even stronger cash position is desired." Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.4, ¶ 24, Ex. B (ECF No. 75-1.).

112.    Accumulating cash reserves was necessary "[d]ue to the uncertainty" from COVID. Kiesler Dep., Sept. 19, 2023, at 295:20-296:1.

113.    In spring of 2020, many of Widen Enterprises' customers were cutting spending and avoiding risks, and Widen Enterprises was concerned its customers would take advantage of a contract provision allowing them to terminate on 30 days' notice. Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.5, ¶¶ 34-35; Gonnering Dep., Sept. 21, 2023, at 213:9-214:8, 215:3-7.

114.    If any customers terminated before the year was over, the Widen Enterprises standard contract required that the customer be refunded pro rata for the portion of time not used out of Widen Enterprises' cash reserves. Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.5, ¶¶ 36-37; Kiesler Dep., Sept. 19, 2023, at 228:13-25.

115.    Windy Waters' treasurer believed the company would put itself at risk if it paid $50,000 for non-operating expenses in May 2020. Kiesler Decl., Nov. 10, 2023, p.6, ¶ 26; Kiesler Decl., Sept. 29, 2023, (ECF No. 69) p.13, ¶ 95.

116.    In April 2020, Windy Waters applied for and received a loan through the deadline government-funded Paycheck Protection Program ("PPP") in excess of $2.6 million to ensure payroll for 149 employees could be consistently maintained. Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.4, ¶¶ 26, 29; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.13, ¶ 97; Wittenberg Decl., Sept. 29, 2023, (ECF No. 70) p.1, ¶ 3, Ex. B (ECF No. 70-2: Defs.' First Amended Objections And Resps. To Pl.'s First Reqs. For Admis.) at Resp. No. 37.

117.    The loan was necessary because, "given the economic uncertainty, [Widen Enterprises] did not know if [its] line of credit was going to be sufficient to fund a recovery without a clear timeline, let alone a survival." Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.4, ¶ 28, Ex. C (ECF No. 75-2).

118.    As a condition to loan forgiveness, PPP loan proceeds had to be used on certain expense items. Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.13, ¶ 98.

119.    Due to uncertainty over forgiveness, changing program guidance, requirements for use of the funds, and the certifications required for the loan application, in early May 2020, Widen Enterprises was contemplating whether it needed to return the PPP funds. Kiesler Decl., Sept. 29, 2023, (ECF No. 74) pp.13-14, ¶¶ 98-100; Seid Dep., Aug. 17, 2023, at 45:12-19; Gonnering Decl.,

25

Sept. 29, 2023, (ECF No. 69) p.4, ¶ 28, Ex. C (ECF No. 75-2); Wittenberg Decl., Sept. 29, 2023, (ECF No. 70) p.1, ¶ 3, Ex. B (ECF No. 70-2: Defs.' First Amended Objections And Resps. To Pl.'s First Reqs. For Admis.) at Resp. No. 37.

120.    The deadline to return the PPP funds to take advantage of the safe harbor was May 7, 2020, but was eventually pushed back to May 14, 2020. Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.4, ¶ 28, Ex. C (ECF No. 75-2); Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.14, ¶ 101.

121.    Widen Enterprises originally planned to return the PPP funds if it purchased Randall's shares to avoid even the risk of criminal sanctions and the appearance of impropriety of accepting government funding and at the same time paying a shareholder $1.3 million for her stock. Gonnering Dep., Sept. 21, 2023, at 219:20-23, 221:5-222:11; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.14, ¶ 102; Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.4, ¶ 31.

122.    However, on May 13, 2020, after Randall had accepted the offer to redeem shares, Kiesler learned of new government guidance announcing criminal penalties would not be suffered by companies who took PPP funds even if the government later concluded the companies should not have qualified for the program. Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.14, ¶ 103, Ex. T (ECF No. 74-7); Kiesler Dep., Sept. 19, 2023, at 208:4-21, 209:23-210:17; Seid Dep., Aug. 17, 2023, at 32:23-33:6, 45:3-19.

***Dividends and Director's Fees***

123.    All dividends that were paid by Windy Waters were paid pro rata to all shareholders. Windy Waters Dep., Nov. 3, 2023, at 185:25-187:2, 187:21-188:9; Wittenberg Decl., Nov. 10, 2023, p.2, ¶ 10, Ex. I (Ex. 19 to Windy Waters Dep.).

124.    Tax distributions were made quarterly based on calculations performed or provided by Baker Tilly. Windy Waters Dep., Nov. 3, 2023, at 185:25-187:2, 187:21-188:9, 190:9-191:1;

Wittenberg Decl., Nov. 10, 2023, p.2, ¶ 10, Ex. I (Ex. 19 to Windy Waters Dep.); Kiesler Decl., Nov. 10, 2023, p.2, ¶ 8.

125.    Randall was treated like every other shareholder with respect to dividends and was paid her pro rata share each time dividends were paid. Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.3, ¶ 16.

126.    In 2016, Randall received dividend payments from the Companies, totaling in excess of $156,000, including a non-tax dividend payment in April 2016. Wittenberg Decl., Sept. 29, 2023, (ECF No. 70) p.2, ¶ 5, Ex. D (ECF No. 70-4: Pl.'s Objections And Resps. To Defs.' First Set of Reqs. For Admis.) at Resp. No. 112; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.2, ¶ 15.

127.    Below is a chart listing dividends paid to Randall, or to Wisconsin or federal taxing authorities on her behalf, from 2011 through 2020:

| Date | Payee | Memo | Amount (USD) |
|------|-------|------|--------------|
| 1/18/2011 | United States Treasury | Stacy Randall | 3,662.00 |
| 1/18/2011 | Wisconsin Department of Revenue | Stacy Randall | 4,543.00 |
| 4/07/2011 | Stacy Randall | Distribution | 48,589.00 |
| 4/15/2013 | Stacy Randall | Distribution | 44,828.00 |
| 9/15/2014 | Wisconsin Department of Revenue | Stacy Randall | 5,379.00 |
| 1/15/2015 | United States Treasury | Stacy Randall | 26,477.34 |
| 6/15/2015 | United States Treasury | Stacy Randall | 14,913.00 |
| 6/15/2015 | Wisconsin Department of Revenue | Stacy Randall | 2,881.00 |
| 9/15/2015 | United States Treasury | Stacy Randall | 35,263.00 |
| 9/15/2015 | Wisconsin Department of Revenue | Stacy Randall | 6,812.00 |
| 1/15/2016 | United States Treasury | Stacy Randall | 30,170.00 |
| 4/7/2016 | Stacy L. Randall | Distribution | 126,018.00 |
| 1/16/2018 | United States Treasury | Stacy Randall | 18,970 |
| 1/16/2018 | Wisconsin Department of Revenue | Stacy Randall | 3,162.00 |

Kiesler Decl., Nov. 10, 2023, p.2, ¶ 9; Windy Waters Dep., Nov. 3, 2023, at 185:25-187:2, 187:21-188:9.

128.     In 2018, Windy Waters made estimated tax payments on behalf of shareholders of Windy Waters. Waters Dep., Nov. 3, 2023, at 185:25-187:2, 187:21-188:20; Wittenberg Decl., Nov. 10, 2023, p.2, ¶ 10, Ex. I (Ex. 19 to Windy Waters Dep.).

129.     Windy Waters also paid directors' fees, which Randall received every year she was a director of Windy Waters, around Thanksgiving each year. Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.2, ¶ 8.

130.     Other than directors' fees and pro rata distributions to owners, Windy Waters never paid any compensation to anyone, including Reed. Kiesler Decl., Nov. 10, 2023, p.2, ¶ 7.

131.     Widen Enterprises also typically reinvested any funds in growth. Reed Decl., Sept. 29, 2023, (ECF No. 67) p.2, ¶ 14.

### Reed's Role and Compensation

132.     Prior to 2021, Reed had worked at Widen Enterprises since the 1970s. Reed Dep., Aug. 23, 2023, at 11:19-12:2, 13:17-20; Reed Decl., Sept. 29, 2023, (ECF No. 67) pp.1-2, ¶¶ 5-11.

133.     Reed was elected the president of Widen Enterprises by a unanimous consent resolution in August 1997, signed by all of the directors of Widen Enterprises—which, at the time, included Randall—and was elected to that role "continuing until [his] successor[ is] duly elected and qualified." Reed Decl., Nov. 10, 2023, pp.1-2, ¶ 4, Ex. B (WINDY0001701).

134.     In 1998, around the time when Randall became a director of Windy Waters instead of Widen Enterprises, a consent resolution signed by the then-shareholders and directors (including Randall) amended the Widen Enterprises bylaws to change the number of directors to one, and

Reed was elected to be the sole director and president of Widen Enterprises "until his successor is duly elected and qualified." Reed Decl., Nov. 10, 2023, p.2, ¶ 5 Ex. C (WINDY0001702); Windy Waters Dep., Nov. 3, 2023, at 37:8-17.

135. Prior to 2020, Reed had been a director of Widen Enterprises since 1988. Corp. Representative of Widen Enterprises, LLC Dep. ("Widen Enterprises Dep."), Nov. 6, 2023, at 55:5-21, 58:9-12; Wittenberg Decl., Nov. 10, 2023, p.2, ¶ 12, Ex. K (Ex. 2 to Widen Enterprises Dep.).

136. Reed was actively involved in overseeing Widen Enterprises in 2019 and 2020. Gonnering Dep., Sept. 21, 2023, at 120:20-122:23, 264:4-265:14, 267:7-268:16; Widen Enterprises Dep., Nov. 6, 2023, at 87:18-21, 89:17-21, 96:1-25, 97:21-24.

137. As Widen Enterprises' president and chairman, Reed oversaw operations at the company, including during in 2019 and 2020. He was involved with strategic planning, budgeting, and tactical decisions; he oversaw and coached Gonnering and held him accountable for the results of his work; he developed and maintained key relationships with bankers, tax advisors, and customers; he managed personnel as needed; and he made compensation and bonus decisions for key employees of Widen Enterprises. Reed Dep., Aug. 23, 2023, at 45:6-11, 208:10-209:8, 208:10-209:8; Reed Decl., Sept. 29, 2023, (ECF No. 67) p.2, ¶ 12; Gonnering Dep., Sept. 21, 2023, at 120:20-122:23, 267:13-268:16; Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.2, ¶¶ 6-8; Kiesler Dep., Sept. 19, 2023, at 260:12-17; Widen Enterprises Dep., Nov. 6, 2023, at 87:18-21, 88:5-19, 89:17-21, 94:25-95:5, 96:1-25, 97:21-100:2, 100:9-24, 102:4-103:7.

138. Reed was actively involved in overseeing the company with a focus on strategy and big-picture issues, while Gonnering, the CEO, oversaw the day-to-day activities. Widen

Enterprises Dep., Nov. 6, 2023, at 87:18-88:19, 89:17-21, 94:25-95:5, 96:1-25, 97:21-100:2, 100:9-24, 102:4-103:7.

139.    Reed did not need to be physically in the office to do his work. Widen Enterprises Dep., Nov. 6, 2023, at 87:18-88:4, 89:17-90:17, 94:25-95:5, 96:1-25, 97:21-24.

140.    Reed worked around the clock to help the company thrive. In his deposition, he explained, "I lived and breathed this company 24/7." Reed Dep., Aug. 23, 2023, at 54:1-5, 207:25-209:8; Gonnering Dep., Sept. 21, 2023, at 123:13-20; Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.2, ¶ 8; Windy Waters Dep., Nov. 6, 2023, at 87:18-21, 89:17-21, 94:25-10.

141.    When Gonnering was asked about what he would have done if Reed had retired, he provided the following testimony:

> I would look to, as it goes for anybody with any departure or retirement, I would reexamine what do we really need and how are we going to staff this back. In Reed's case, I would have staffed back probably with a team of advisors, a team of people who would represent various advisory capacities that Reed provided to me. . . . I mean, Reed was not a -- you couldn't replace Reed. Reed was the -- Reed was there 30, 40 years he's been. It's his name on the building, his name in the marketplace. He's got -- yes, he's got the rich legacy knowledge, but also how he takes that knowledge and repurposes it with his monitorship with me was very important to me. So to replace him is -- you couldn't replace. You don't replace Reed. But I would replace his advisory capacity with a team of advisors.

Gonnering Dep., Sept. 21, 2023, at 124:24-125:22.

142.    Compensation for employees and officers of Widen Enterprises is determined by a mix of individual performance, company performance, and market conditions. Wittenberg Decl., Sept. 29, 2023, (ECF No. 70) p.1, ¶ 2, Ex. A (ECF No. 70-1: Defs.' Objections and Resps. to Pl.'s First Set of Interrogs.) at Resp. No. 7.

143.    To help inform the decision of setting executive compensation, including his own, Reed consulted with advisors at Widen Enterprises' accounting firm. Reed Dep., Aug. 23, 2023,

at 55:13-24, 56:3-7, 195:5; Widen Enterprises Dep., Nov. 6, 2023, at 103:24-104:14; 217:18-218:2, 219:25-220:1.

144.    Reed set his own compensation in consultation with Gonnering and advisors. Reed Dep., Aug. 23, 2023, at 46:23-47:4, 55:13-24, 195:5; Widen Enterprises Dep., Nov. 6, 2023, at 103:24:104:14, 217:18-218:2, 218:11-219:2; 219:25-220:1. Gonnering Dep., Sept. 21, 2023, at 124:5-11.

145.    Kiesler was not involved in setting Reed's compensation. Kiesler Decl., Nov. 10, 2023, p.1, ¶ 5.

146.    The compensation Reed received for serving as chairman of the company was within the range of salaries and bonuses for comparable companies in the market. Widen Enterprises Dep., Nov. 6, 2023, at 218:11-219:2; Gonnering Dep., Sept. 21, 2023, at 269:13-270:3; Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.2, ¶ 13; Reed Decl., Sept. 29, 2023, (ECF No. 67) p.2, ¶ 13.

147.    In 1991, Mark Widen, as the president of Widen Enterprises, was paid a bonus of $566,348.03, which was in addition to his wages. Reed Decl., Nov. 10, 2023, p.1, ¶ 3, Ex. A (WINDY0001643).

148.    Reed's compensation for the services he performed for the company was paid solely from Widen Enterprises. Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.4, ¶ 32.

149.    Gonnering explained during his deposition that how Reed wanted to direct payment for his compensation, bonus or otherwise, was not relevant. He had earned his bonus. Gonnering Dep., Sept. 21, 2023, at 129:14-23, 130:22-131:4, 132:18-133:13, 137:15-138:1.

150.     Randall has never made any demand on Windy Waters to take suitable action to redress the alleged excessive compensation paid to Reed. Reed Decl., Nov. 10, 2023, p.2, ¶ 6; Kiesler Decl., Nov. 10, 2023, p.2, ¶ 6.

**Widen Enterprises' CEO's Guesses of Value**

151.     Between 2017 and 2020, Gonnering sent lengthy operational updates to Reed at least once or twice a month as a way to memorialize the big-picture issues and activities of the company. Gonnering Decl., Nov. 10, 2023, p.1, ¶ 3.

152.     Sometimes, Gonnering would include news of competitor acquisitions among the topics he addressed in the updates. Gonnering Decl., Nov. 10, 2023, p.1, ¶ 3.

153.     On a handful of occasions, he reported the high-level information he had gleaned from news of acquisitions, made numerous assumptions about the company's revenues and transaction information, and then provided a "guess and a pretend and a what if" that Widen Enterprises could sell for a certain number under all of those assumptions. Gonnering Decl., Nov. 10, 2023, pp.1-2, ¶ 4; Gonnering Dep., Sept. 21, 2023, at 103:8-104:3, 152:13-22; Widen Enterprises Dep., Nov. 6, 2023, at 193:1-17.

154.     Gonnering described this exercise as follows:

Q:     Okay. You never told Reed the fair market – the market value of Widen Enterprises is around number on a given date?

A:     I would tell Reed based on my estimates of other organizations who were in our market, and I would take what those organizations were doing, I would estimate their revenues, back of the napkin, and then I would apply it to ours as a guess.

Q:     Okay. So you'd apply it to Widen Enterprises and give a guess of Widen Enterprises' value?

MR. CHURCHILL: Objection. Mischaracterizes testimony.

A:     I would take what I guessed to be what was going on with someone else in our industry and then I would apply that to Widen numbers.

Q:     And the result would be a guess about Widen's value?

       MR. CHURCHILL: Objection. Ambiguous.

A:     It would be a[n] indication that we're headed in the right direction, not the value of Widen.

Gonnering Dep., Sept. 21, 2023, at 103:8-104:3.

155.    Gonnering made these reports to show that Widen Enterprises was in the right industry with potential for growth, and did not intend them to be taken as formal valuations. Gonnering Dep., Sept. 21, 2023, at 182:17-184:11; Gonnering Decl., Nov. 10, 2023, pp.1-2, ¶¶ 4-5.

156.    Gonnering is not an accountant or an economist, nor has he ever valued or appraised a company. Gonnering Decl., Nov. 10, 2023, p.2, ¶ 5.

157.    Just as Widen Enterprises' revenues had increased over the years, so had its expenses. Gonnering Decl., Nov. 10, 2023, p.2, ¶ 6; Gonnering Dep., Sept. 21, 2023, at 39:12-40:21.

**Later Discussions About Sale**

158.    In February 2020, Tequity Advisors reached out to Gonnering about a potential opportunity to *acquire* another company with code name Hercules. Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.3, ¶ 16, Ex. A (ECF No. 69-1).

159.    Widen Enterprises considered this opportunity to purchase another entity to inorganically grow business, and even signed a non-disclosure agreement to explore the opportunity, but ultimately did not pursue it. Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.3, ¶¶ 15-16, Ex. A (ECF No. 69-1).

160.    After Reed turned 60 in June 2020, Gonnering and Reed began talking about succession planning for Widen Enterprises, and Reed told Gonnering to begin preparing for next steps within 2-5 years. Reed Decl., Sept. 29, 2023, p.9, ¶ 79; Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.7, ¶¶ 51, 53; Wittenberg Decl., Nov. 10, 2023, p.2, ¶ 13, Ex. L (Ex. 11 to Widen Enterprises Dep.).

161.    At that time, Reed was considering many possible forms of succession plans, including letting Gonnering run the company, creating an employee stock ownership plan, or making plans to sell. Reed Decl., Sept. 29, 2023, (ECF No. 67) p.9, ¶ 81.

162.    In late August 2020, the focus honed in on selling to a third party within 2-5 years. Reed Dep., Aug. 23, 2023, at 151:15-152:12, 155:3-8; Reed Decl., Sept. 29, 2023, (ECF No. 67) pp.9-10, ¶¶ 82, 84, Ex. F (ECF No. 67-3); Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.7, ¶ 56.

163.    The timeframe shortened in January 2021 when an investment banker, Software Equity Group Advisors, L.L.C. (SEG), told Reed the company could possibly sell for upwards of $200 million. Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.8, ¶¶ 65-66; Gonnering Decl., Nov. 10. 2023, p.2, ¶ 10; Reed Decl., Sept. 29, 2023, (ECF No. 67) pp.9-10, ¶¶ 82, 84, Ex. F (ECF No. 67-3).

164.    After that meeting, on January 19, 2021, Gonnering, Reed, and Kiesler met to discuss the final decision about whether or not to put Widen Enterprises on the market for sale. During that meeting, Reed made the decision to put Widen Enterprises on the market for sale. Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.8, ¶ 66.

165.    Reed was not interested in Windy Waters selling Widen Enterprises on or prior to May 13, 2020. Reed Dep., Aug. 23, 2023, at 97:18-21, 30:20-31:5, 127:15-16, 128:8-15, 132:7-19, 133:1-10, 164:25-165:20, 168:9-16; Reed Decl., Sept. 29, 2023, (ECF No. 67) p.9, ¶ 74.

166.    There had been no discussion among Windy Waters or Widen Enterprises executives about selling Widen Enterprises on or prior to May 13, 2020. Reed Dep., Aug. 23, 2023, at 97:18-21, 132:7-19, 133:1-10, 164:25-165:20, 168:9-16; Reed Decl., Sept. 29, 2023, (ECF No. 67) p.9, ¶ 75; Gonnering Dep., Sept. 21, 2023, at 100:8-12, 102:19-23; Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.6, ¶ 47; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.21, ¶ 167.

167.    As of May 13, 2020, neither Reed, nor Gonnering, nor Kiesler were preparing, planning, contemplating, or even ruminating over a sale of Widen Enterprises. Reed Decl., Sept. 29, 2023, (ECF No. 67) p.9, ¶ 76; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.21, ¶ 163; Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.7, ¶ 48.

168.    A true and correct copy of the Confidential Information Memorandum prepared by SEG, the investment advisory firm who marketed Widen Enterprises for sale, is attached to David Palay's September 29, 2023, Declaration as Exhibit 26. Palay Decl., Sept. 29, 2023, (ECF No. 63) p.4, ¶ 28, Ex. 26 (ECF No. 63-25).

169.    The Confidential Information Memorandum was sent by SEG to prospective buyers in 2021. Compl. (ECF No. 45), ¶ 167, Ex. E (ECF No. 5); Widen Enterprises Dep., Nov. 6, 2023, at 183:10-15; Gonnering Dep., Sept. 21, 2023, at 72:6-21; Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.9, ¶¶ 68-70.

170.    In June 2021, SEG received several first-round indications of interest, with some suggesting values over $100 million. Gonnering Decl., Sept. 29, 2023, p.9, ¶¶ 71-72. Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.9, ¶¶ 71-72.

*Miscellaneous*

171.    In 2013, Reed transferred all of the Windy Waters shares he owned individually into a revocable trust for the benefit of himself and his wife, and acted as the trustee of that trust. Reed Decl., Nov. 10, 2023, p.2, ¶ 13.

172.    Randall testified that she chose to ask for $100,000 in May 2020 because she thought it would last her a year. Randall Dep., Aug. 28, 2023, at 262:2-4.

173.    The Stock Price Formula price using financials through the end of 2020 would have been $227.70 for Class A shares and $216.86 for Class B shares. Kiesler Decl., Nov. 10, 2023, p.9, ¶ 41.

174.    The purpose of the EBITDA adjustment to back out two key employees' compensation was to allow potential buyers to have a clearer metric of profit assuming those expenses that would not exist following the sale were eliminated. Gonnering Dep., Sept. 21, 2023, at 258:12-24, 261:2-264:3; Widen Enterprises Dep., Nov. 6, 2023, at 112:4-115:2.

175.    The standstill and tolling agreement states, in paragraph 6, "The Parties agree further that this Agreement will not be admissible for any purpose other than to rebut a defense based on the passage of time." Palay Decl., Sept. 29, 2023, p.10, ¶ 78, Ex. 72 (ECF No. 63-71).

176.    At times, Windy Waters has transferred money to Widen Enterprises when Widen Enterprises needed cash for operations. Kiesler Decl., Nov. 10, 2023, p.9, ¶ 42.

177.    This happened in December 2015 ($200,000), August 2017 ($20,000), November 2018 ($444,000), August 2020 ($70,000), September 2020 ($90,000), and December 2020 ($1,500,000). Kiesler Decl., Nov. 10, 2023, p.9, ¶ 43.

178.    Reed and his wife owed only a total of roughly $30,000 on their 2018 tax returns that were completed in April 2019. Reed Decl., Nov. 10, 2023, p.5, ¶ 31, Ex. N.

179.   Randall did not own any shares of Widen Enterprises in May 2020. Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.10, ¶ 79.

180.   Widen Enterprises did not purchase any shares from Randall in May 2020 or ever, and was not involved with or a party to the stock redemption agreement in May 2020. Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.10, ¶¶ 80-82; Reed C. Widen Decl., July 14, 2023, (ECF No. 33) p.1, ¶ 2, Ex. A (ECF No. 33-1); Compl. (ECF No. 1), ¶ 125, Exs. A (ECF No. 1-6), B (ECF Nos 1-7); Seid Dep., Aug. 17, 2023, at 40:22-41:2; Wittenberg Decl., Sept. 29, 2023, (ECF No. 70) p.2, ¶ 7, Ex. F (ECF No. 70-6). Reed Decl., Sept. 29, 2023, (ECF No. 67) p.6, ¶¶ 50, 54; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.15, ¶¶ 110-11.

181.   Justin testified that his mother argued or talked with his father about "their treatment as shareholders of the business" and complaining that "Reed's got a brand-new car and we're . . . not living the life . . . we're owners in this company too." Justin Dep., Oct. 25, 2023, at 27:8-28:20.

182.   Justin testified Randall's complaints about her treatment as a shareholder was "discussed on occasion" as far back as when Randall's then-husband worked for Widen Enterprises, around 20 years ago. Justin Dep., Oct. 25, at 124:1-125:18.

183.   Justin specifically confirmed these complaints were about "not receiving dividends or distributions from the companies" and that "Reed keeps saying the company is doing really good or whatever but we're not seeing anything out of it" and even that "Reed's getting paid a bunch of money and we're not getting anything." Justin Dep., Oct. 25, at 126:13-127:22.

184.   Nobody was in the vicinity during the alleged Arizona conversation between Justin and Reed in February 2020. Justin Dep., Oct. 23, 2023, at 35:12-20.

185.    Nobody overheard the alleged Arizona conversation between Justin and Reed in Arizona in February 2020. Justin Dep., Oct. 25, 2023, at 43:4-7.

186.    Justin first testified that he did not tell Randall of the alleged Arizona conversation between him and Reed before his mother's May 13, 2020 redemption because he "do[es]n't get in the middle of that kind of stuff[,]" but he later testified that he only remembered the alleged Arizona conversation after Widen Enterprises was sold. Justin Dep., Oct. 25, 2023, at 118:2-121:7.

187.    Although Justin testified that Widen Enterprises' sale caused his "memory" of the alleged Arizona conversation with Reed to "c[o]me back to [him] clearly[,]" Justin could not testify to the date, day of week, time of day, specific place, orientation, or interactions leading up to the alleged conversation he claims to recall "clearly." Justin Dep., Oct. 23, 2023, at 35:12-36:15, 119:21-120:8.

188.    Gonnering had recommended to Reed that Windy Waters would be better off with active, as opposed to passive, shareholders because he "want[ed] all hands on deck." Kiesler was not part of these discussions. Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.6, ¶¶ 42-43; Gonnering Dep., Sept. 21, 2023, at 161:2-25, 165:2-22.

189.    Randall was a passive shareholder and president who was not engaged in the business of Windy Waters or Widen Enterprises. Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.2, ¶ 12; Gonnering Decl., Sept. 29, 2023, (ECF No. 69) p.2, ¶ 12; Gonnering Dep., Sept. 21, 2023, at 141:1-16; Kiesler Dep., Sept. 19, 2023, at 93:14-24; Reed Dep., Aug. 23, 2023, at 224:4-225:6.

190.    Gonnering acknowledged it was the shareholder's choice as to whether they sold shares or not, and not his or the company's choice. Gonnering Dep., Sept. 21, 2023, at 141:1-16; 160:22-161:5; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) pp.7, 11-12, ¶¶ 43, 78-81, Ex. M (ECF No. 75-18); Reed C. Widen Decl., July 14, 2023, (ECF No. 33) p.1, ¶ 2, Ex. A (ECF No. 33-1);

Compl. (ECF No. 1), ¶ 125, Exs. A (ECF No. 1-6), B (ECF Nos 1-7); Seid Dep., Aug. 17, 2023, at 40:22-41:2; Wittenberg Decl., Sept. 29, 2023, (ECF No. 70) p.2, ¶ 7, Ex. F (ECF No. 70-6).

191.    After Randall redeemed all her shares, Kiesler reported a "mission accomplished" because he had completed another item on his to-do list and could get back to focus on his job as CFO of Widen Enterprises during the craziness of the COVID-19 pandemic. Kiesler Dep., Sept. 19, 2023, at 246:19-247:16.

192.    Gonnering was pleased to know that Reed's request had been fulfilled. Gonnering Dep., Sept. 21, 2023, at 244:21-245:6.

193.    In September 2021, when Randall expressed unjustified anger and jumped to an incorrect conclusion that Windy Waters had been planning to sell Widen Enterprises since before she sold her shares, Reed was concerned that Randall would do something to jeopardize the pending sale. Reed requested that Kiesler not share the calculations of Randall's ownership percentage were intended to avoid stirring the pot and threatening the impending sale—not because he thought anyone did anything wrong. Reed Dep., Aug. 23, 2023, at 9:10-12, 97:18-21, 127:12-16, 128:8-15, 132:7-19, 133:1-10, 164:25-165:20, 168:9-16; Reed Decl., Sept. 29, 2023, (ECF No. 67) p.9, ¶¶ 74-78; Reed Decl., Nov. 10, 2023, p.4, ¶ 26; Kiesler Decl., Sept. 29, 2023, (ECF No. 74) p.21, ¶¶ 163-67; Gonnering Decl., Sept. 29, 2023, (ECF No. 69) pp.6-7, ¶¶ 47-50.

194.    Once Acquia acquired Widen Enterprises, Reed's role was replaced by the CEO of Acquia and others within that organization. Gonnering Dep., Sept. 21, 2023, at 124:24-126:13, 295:19-296:6.

195.    The Second Amendment contains signatures in blue ink on the signature lines for Stacy Randall as not only a shareholder, but also as then-President of Windy Waters, as depicted below:

**WINDY WATERS, INC.**

By: Stacy Widen Randall, President

**SHAREHOLDERS:**

Reed C. Widen

Stacy Widen Randall

Kiesler Decl., Sept. 29, 2023, p.6, ¶ 37, Ex. D (Second Amendment to Shareholder Agreement); Steven Randall Dep. ("Steven Dep."), Oct. 12, 2023, at 228:14-232:10.

*Background Facts Repeated Verbatim*[1]

196.     Prior to Randall executing the May 13, 2020 Redemption Agreement, she had executed five other stock redemption agreements for the sale of Windy Waters stock. Wittenberg Decl., Sept. 29, 2023, pp.1-2, ¶ 4, Ex. C (Pl.'s Objections And Resps. To Defs.' First Set of Reqs. For Admis.) at Resp. No. 1.

197.     In 2005, Randall said she needed money, so she asked Reed for $200,000, and Reed told her to talk to Kiesler. Randall Dep., Aug. 28, 2023, at 162:3-19, 163:21-164:12, 173:10-13, 246:9-11; Kiesler Decl., Sept. 29, 2023, p.7, ¶ 48, Ex. E (WINDY0055042).

198.     Randall then told Kiesler she wanted to get some money from her stock, which she knew meant she would be selling some of her stock, and specifically asked for $200,000. Randall Dep., Aug. 28, 2023, at 164:14-17, 164:25-165:2, 171:14-172:3; Kiesler Decl., Sept. 29, 2023, p.7, ¶ 46.

---

[1] Rather than repeat every fact from Defendants' Proposed Findings of Fact in support of their motion for summary judgment (ECF No. 76) in this statement of additional facts, Defendants attempted to limit the facts to those most important to ruling on Plaintiff's motion. However, some of the same background facts are repeated below, verbatim, to ensure they are considered for purposes of ruling on Plaintiff's motion, not just for Defendants' motion.

199.    Kiesler calculated the price per share under the Stock Price Formula to offer to purchase enough stock to give Randall the $200,000 she said she needed. Randall Dep., Aug. 28, 2023, at 171:20-23; Kiesler Decl., Sept. 29, 2023, p.7, ¶¶ 47-48, Ex. E (WINDY0055042).

200.    The stock purchase was undertaken pursuant to a "June 30, 2005 Redemption Agreement" dated September 2, 2005, and made effective as of June 30, 2005, signed by Randall and other shareholders, by which Windy Waters purchased some of its shares of stock from Randall in exchange for $200,000. Randall Dep., Aug. 28, 2023, at 162:3-163:9; Kiesler Decl., Sept. 29, 2023, p.7, ¶ 48, Ex. E (WINDY0055042).

201.    The price per share Randall was paid in 2005 was $326.86 and was the amount arrived at using the Stock Price Formula. Wittenberg Decl., Sept. 29, 2023, p.2, ¶ 5, Ex. D (Pl.'s Objections And Resps. To Defs.' First Set of Reqs. For Admis.) at Resp. No. 17; Kiesler Decl., Sept. 29, 2023, p.8, ¶ 49.

202.    Randall did not know how many shares she sold in exchange for that amount of money, did not think about or inquire about whether her shares had value or what that value was or how it was calculated, and does not believe she reviewed the redemption agreement before signing it. Randall Dep., Sept. 29, 2023, at 166:10-168:4, 170:12-171:13, 173:19-174:8, 206:11-18; Wittenberg Decl., Sept. 29, 2023, p.2, ¶ 5, Ex. D (Pl.'s Objections And Resps. To Defs.' First Set of Reqs. For Admis.) at Resp. No. 20.

203.    Randall was happy to get the money she asked for. Randall Dep., Aug. 28, 2023, at 171:14-16.

204.    In 2007, Randall again said she needed money, so she asked Reed for money, and Reed told her to talk to Kiesler. Randall Dep. 177:2-16, 185:15-186:2, 164:12, 246:9-11; Reed Decl., Sept. 29, 2023, p.5, ¶ 36.

205.     Randall then told Kiesler she wanted to get some money from her stock, which she knew meant she would be selling some of her stock, and specifically asked for $250,000. Randall Dep., Aug. 28, 2023, at 176:4-22, 177:2-16, 180:8-22, 198:4-9, 211:20-212:1; Kiesler Decl., Sept. 29, 2023, p.8, ¶ 50.

206.     Kiesler calculated the price per share under the Stock Price Formula in the Second Amendment to offer to purchase enough stock to give Randall the $250,000 she needed. Kiesler Decl., Sept. 29, 2023, pp.6, 8, ¶¶ 37, 51, Ex. D (Second Amendment to Shareholder Agreement).

207.     The stock purchase was undertaken pursuant to a "June 30, 2007 Redemption Agreement" dated August 2, 2007, and made effective as of June 30, 2007, signed by Randall and other shareholders, by which Windy Waters purchased some of its shares of stock from Randall in exchange for $250,000. Randall Dep., Aug. 28, 2023, at 175:7-24, 184:2-4; Kiesler Decl., Sept. 29, 2023, p.8, ¶ 52, Ex. F (Ex. 12 to Randall Dep.).

208.     The price per share Randall was paid in 2007 was $312.09, and was the amount arrived at using the Stock Price Formula. Wittenberg Decl., Sept. 29, 2023, p.2, ¶ 5, Ex. D (Pl.'s Objections And Resps. To Defs.' First Set Of Reqs. For Admis.) at Resp. No. 25; Kiesler Decl., Sept. 29, 2023, p.8, ¶¶ 52-53, Ex. F (Ex. 12 to Randall Dep.).

209.     Randall did not know how many shares she sold in exchange for that amount of money, did not think about or inquire about whether her shares had value or what that value was or how it was calculated, and does not believe she reviewed the redemption agreement before signing it. Randall Dep., Aug. 28, 2023, at 180:8-181:6, 182:13-17, 184:13-21, 206:11-18; Wittenberg Decl., Sept. 29, 2023, p.2, ¶ 5, Ex. D (Pl.'s Objections And Resps. To Defs.' First Set Of Reqs. For Admis.) at Resp. No. 27.

210.    Randall received the money she asked for. Randall Dep., Aug. 28, 2023, at 181:17-23.

211.    In 2011, Randall again said she needed money, so she asked Reed for $200,000, and Reed told her to talk to Kiesler. Randall Dep., Aug. 28, 2023, at 189:22-190:10, 164:12, 246:9-11; Reed Decl., Sept. 29, 2023, p.5, ¶ 37.

212.    Randall then told Kiesler she wanted to get some money from her stock, which she knew meant she would be selling some of her stock, and specifically asked for $200,000. Randall Dep., Aug. 28, 2023, at 189:22-190:10, 212:3-9; Kiesler Decl., Sept. 29, 2023, p.8, ¶ 54.

213.    Kiesler calculated the price per share under the Stock Price Formula in the Second Amendment to offer to purchase enough stock to give Randall the $200,000 she said she needed, and Randall was aware that a formula was being used. Kiesler Decl., Sept. 29, 2023, p.8, ¶ 55; Randall Dep., Aug. 28, 2023, at 200:10-16.

214.    The stock purchase was undertaken pursuant to a "January 18, 2011 Redemption Agreement" dated January 18, 2011, containing the signature stamp of Randall and signed by other shareholders, by which Windy Waters purchased some of its shares of stock from Randall in exchange for $200,000. Randall Dep., Aug. 28, 2023, at 187:4-21; Kiesler Decl., Sept. 29, 2023, pp.8-9, ¶ 56, Ex. G (Ex. 13 to Randall Dep.).

215.    The price per share Randall was paid in 2011 was $168.70, and was based on the Stock Price Formula. Wittenberg Decl., Sept. 29, 2023, p.2, ¶ 5, Ex. D (Pl.'s Objections And Resps. To Defs.' First Set Of Reqs. For Admis.) at Resp. No. 33; Kiesler Decl., Sept. 29, 2023, p.9, ¶ 57.

216.    Randall did not know how many shares she sold in exchange for that amount of money, did not inquire about the value of her shares or how it was calculated, did not think about

or inquire about whether a document would need to be signed, and does not believe she reviewed the stock redemption agreement. Randall Dep., Aug. 28, 2023, at 191:5-12, 196:12-20, 206:11-18; Wittenberg Decl., Sept. 29, 2023, p.2, ¶ 5, Ex. D (Pl.'s Objections And Resps. To Defs.' First Set Of Reqs. For Admis.) at Resp. No. 35.

217.   Randall received the money she asked for. Randall Dep., Aug. 28, 2023, at 199:8-13, 272:13-21.

218.   In 2017, Randall again said she needed money, so she asked Reed for $78,000, and Reed told her to talk to Kiesler. Randall Dep., Aug. 28, 2023, at 164:12, 205:4-7, 205:20-206:10, 246:9-11; Reed Decl., Sept. 29, 2023, p.5, ¶ 38.

219.   Randall then told Kiesler she wanted to get some money from her stock, which she knew meant she would be selling some of her stock, and specifically asked for $78,000. Randall Dep., Aug. 28, 2023, at 207:5-16, 212:11-18; Kiesler Decl., Sept. 29, 2023, p.9, ¶ 58.

220.   Kiesler calculated the price per share under the Stock Price Formula to offer to purchase enough stock to give Randall the $78,000 she said she needed. Kiesler Decl., Sept. 29, 2023, p.9, ¶ 59.

221.   The stock purchase was undertaken pursuant to a "August 1, 2017 Redemption Agreement" dated August 1, 2017, signed by Randall and Reed and Kiesler, by which Windy Waters purchased some of its shares of stock from Randall in exchange for $78,000. Randall Dep., Aug. 28, 2023, at 203:5-204:15, 209:25-210:5; Kiesler Decl., Sept. 29, 2023, p.9, ¶ 60, Ex. H (Ex. 14 to Randall Dep.); Wittenberg Decl., Sept. 29, 2023, p.2, ¶ 5, Ex. D (Pl.'s Objections And Resps. To Defs.' First Set Of Reqs. For Admis.) at Resp. No. 40.

222.   The price per share Randall was paid in 2017 was $283.10 and was the number arrived at from calculating the Stock Price Formula. Wittenberg Decl., Sept. 29, 2023, p.2, ¶ 5, Ex.

D (Pl.'s Objections And Resps. To Defs.' First Set Of Reqs. For Admis.) at Resp. No. 41; Kiesler Decl., Sept. 29, 2023, p.9, ¶ 61.

223.    Randall did not know how many shares she sold in exchange for that amount of money and did not think about or inquire about whether her shares had value or what that value was or how it was calculated. Randall Dep., Aug. 28, 2023, at 210:6-10; Wittenberg Decl., Sept. 29, 2023, p.2, ¶ 5, Ex. D (Pl.'s Objections And Resps. To Defs.' First Set Of Reqs. For Admis.) at Resp. No. 43.

224.    Randall did not review the document before signing it, nor did she skim it, because she had "gone through this a number of times" by this fourth stock redemption. Randall Dep., Aug. 28, 2023, at 206:11-207:1.

225.    Randall got the money she asked for. Randall Dep., Aug. 28, 2023, at 204:11-15, 205:16-19.

226.    In 2019, Randall again said she needed money, so she asked Reed for $100,000, and Reed told her to talk to Kiesler. Randall Dep., Aug. 28, 2023, at 164:12, 213:12-23, 216:14, 246:9-11; Reed Decl., Sept. 29, 2023, p.5, ¶ 39.

227.    Randall then told Kiesler she wanted to get some money from her stock, which she knew meant she would be selling some of her stock, and specifically asked for $100,000. Randall Dep., Aug. 28, 2023, at 216:12-22, 217:7-21; Kiesler Decl., Sept. 29, 2023, p.9, ¶ 62.

228.    In January 2019, Randall also borrowed $20,000 from Widen Enterprises. Kiesler Dep., Sept. 19, 2023, at 222:14-24; Kiesler Decl., Sept. 29, 2023, p.9, ¶ 63.

229.    In order to repay that loan, Randall sold enough shares to obtain $120,000, and applied the extra $20,000 to pay off her loan. Kiesler Decl., Sept. 29, 2023, p.10, ¶ 64; Randall Dep., Aug. 28, 2023, at 215:3-5, 216:8-22.

230.    Kiesler calculated the price per share under the Stock Price Formula to offer to purchase enough stock to give Randall the $120,000 she said she needed for her own purposes and to repay the loan. Kiesler Decl., Sept. 29, 2023, p.10, ¶ 65.

231.    The stock purchase was undertaken pursuant to a "January 1, 2019 Redemption Agreement" effective January 1, 2019, signed by Randall and Kiesler and consented to by Randall as a shareholder and director and Reed as majority shareholder, by which Windy Waters purchased some of its shares of stock from Randall in exchange for $120,000. The documents were signed in April 2019. Randall Dep., Aug. 28, 2023, at 212:21-213:16; Kiesler Decl., Sept. 29, 2023, p.10, ¶ 66, Ex. I (Ex. 15 to Randall Dep.); Wittenberg Decl., Sept. 29, 2023, p.2, ¶ 5, Ex. D (Pl.'s Objections And Resps. To Defs.' First Set Of Reqs. For Admis.) at Resp. No. 48.

232.    The price per share Randall was paid in 2019 was $425.79, and was the price that Kiesler reached as the result of the Stock Price Formula. Wittenberg Decl., Sept. 29, 2023, p.2, ¶ 5, Ex. D (Pl.'s Objections And Resps. To Defs.' First Set Of Reqs. For Admis.) at Resp. No. 49; Kiesler Decl., Sept. 29, 2023, p.10, ¶ 67; Kiesler Dep., Sept. 19, 2023, at 257:22-258:1.

233.    Randall did not know how many shares she sold in exchange for that amount of money, did not think about or inquire about whether her shares had value or what that value was or how it was calculated, and does not believe she ever reviewed or skimmed the redemption agreement. Randall Dep., Aug. 28, 2023, at 206:11-18, 214:2-12; Wittenberg Decl., Sept. 29, 2023, p.2, ¶ 5, Ex. D (Pl.'s Objections And Resps. To Defs.' First Set Of Reqs. For Admis.) at Resp. No. 51.

234.    Randall received the money she asked for and said she needed. Randall Dep., Aug. 28, 2023, at 217:15-21.

235.    Randall never asked for any financial information in relation to any of her stock redemptions. Kiesler Decl., Sept. 29, 2023, p.10, ¶ 68; Reed Decl., Sept. 29, 2023, p.5, ¶ 40.

236.    Kiesler was concerned about the idea of paying money in light of the uncertainty with the PPP loan and would have been content not buying back any of Randall's shares, but Reed wanted Kiesler to help his sister. Reed Decl., Sept. 29, 2023, p.6, ¶ 51; Kiesler Decl., Sept. 29, 2023, p.15, ¶ 109.

237.    The price per share that Randall was paid in 2020 was the highest share price anyone had paid or received for Windy Waters stock in the history of the company. Kiesler Decl., Sept. 29, 2023, p.20, ¶ 158.

238.    Reed usually deleted solicitation emails. He never talked to any of those individuals or responded to their emails. Reed Dep., Aug. 23, 2023, at 120:18-22, 122:18-125:13; Reed Decl., Sept. 29, 2023, p.8, ¶ 70.

Dated this 10th day of November 2023.

Respectfully submitted,

s/Christa D. Wittenberg
Dean P. Laing
Christa D. Wittenberg
O'Neil, Cannon, Hollman, DeJong & Laing S.C.
111 East Wisconsin Avenue, Suite 1400
Milwaukee, Wisconsin 53202
Phone: 414.276.5000
dean.laing@wilaw.com
christa.wittenberg@wilaw.com

Mark H. Churchill
Martin Durkin
Sarah Morain
HOLLAND & KNIGHT LLP
1650 Tysons Boulevards, Suite 1700
Tysons, Virginia 22102
Phone: 703.720.8600
mark.churchill@hklaw.com
martin.durkin@hklaw.com
sarah.morain@hklaw.com

*Attorneys for Defendants*