UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

STACY L. RANDALL,

Plaintiff,

v.

Case No. 3:22-cv-00400-jdp

REED C. WIDEN, MICHAEL KIESLER, WIDEN ENTERPRISES, LLC, and WINDY WATERS, INC.,

Defendants.

---

**STACY RANDALL'S MOTION FOR A RULING ON REED WIDEN'S ASSERTION OF ATTORNEY-CLIENT PRIVILEGE**

---

Pursuant to her obligations under Federal Rule of Civil Procedure 26(b)(5)(B), Plaintiff Stacy L. Randall seeks a ruling from the Court regarding the assertion by Defendant Reed C. Widen that a portion of a voicemail he left for his brother, Price Widen, is protected by attorney-client privilege. Specifically, Reed has sought to claw back and/or have destroyed a portion of a voicemail [REDACTED] The statements over which Reed claims privilege are as follows:

> [REDACTED]

(Decl. of David Palay, Jan. 24, 2024 ("Palay Decl.") Ex. 1, voicemail recording of R. Widen, May 11, 2022, at 00:08 to 00:28.) Reed claims that [REDACTED]



[redacted] (Palay Decl. Ex. 2, Letter from C. Wittenberg, Jan. 18, 2024, at 1.) However, Reed claims that [redacted] (*Id.*)

These latter statements themselves bear no indicia of attorney-client privilege: [redacted]. And indeed, [redacted], [redacted]. Instead, [redacted]. At that deposition, Reed's counsel [redacted]. It was only after [redacted], that Reed [redacted] (*Id.*) To date, Reed has provided no factual support for this assertion.

As the party asserting privilege over inadvertently disclosed material, Reed bears the burden of establishing both the existence of a privilege and a lack of waiver. *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991); *United States ex rel. Heath v. Wis. Bell Inc.*, 272 F. Supp. 3d 1094, 1098–99 (E.D. Wis. 2017). Reed cannot meet either burden. In fact, Reed's waiver is so clear that the Court need not even determine whether the recorded statements are privileged in the first place (they are not). Reed's [REDACTED]—both [REDACTED] [REDACTED] [REDACTED]—dispositively establishes waiver.[1]

Even if Reed had not waived the attorney-client privilege (he did), he cannot meet his burden of establishing the existence of a privilege in the first place. The attorney-client privilege protects only confidential communications made for the purpose of soliciting legal advice. *United States v. Weger*, 709 F.2d 1151, 1154 (7th Cir. 1983). But Reed's statements [REDACTED] [REDACTED] Rather, Reed merely [REDACTED] [REDACTED] [REDACTED] [REDACTED] is entirely unrelated to this case and, therefore, outside the bounds of discovery.

---

[1] For purposes of this Motion, Stacy accepts as true Reed's assertions that [REDACTED] [REDACTED] (*See* Palay Decl., Ex. 2 at 1.) However, in the event the Court finds that an inquiry into whether a privilege might exist is required for its analysis, then Stacy will seek discovery with respect to this assertion, among others.

Furthermore, even assuming that Reed *was* seeking some sort of legal advice, his assertion of attorney-client privilege still fails under the crime/fraud exception because [REDACTED] *United States v. BDO Seidman, LLP*, 492 F.3d 806, 818 (7th Cir. 2007); *see* Wis. Stat. § [REDACTED].

For all of these reasons, Stacy respectfully requests that the Court rule that the recording in question is not protected by the attorney-client privilege and that Reed's attempt to claw back the recording or have it destroyed therefore fails.

**BACKGROUND**

[REDACTED]. (Palay Decl. ¶ 4, Ex. 4, Price Widen Dep. Tr., Jan. 16, 2024, 137:10-138:4.) [REDACTED]. (*Id.* 138:5-7.) [REDACTED]. (*Id.* 138:9-12.) Stacy provided that file to her counsel on December 26, 2023. (Palay Decl. ¶ 5, Ex. 5.) Stacy's counsel produced the voicemail to Reed's counsel on January 2, 2024, and emailed a cover letter to Reed's counsel stating that Stacy's counsel received the voicemail on December 26, 2023, and was working at that time to obtain the voicemail's metadata. (*Id.* ¶¶ 5-6, Exs. 5, 6.). At least two of Reed's attorneys downloaded the voicemail on January 2, 2024. (*Id.* ¶ 6.) A few days later, after engaging technical specialists to extract the voicemail from Price Widen's phone directly, Stacy's



counsel followed up with . (*Id.* ¶ 7, Ex. 7.)

The day after receiving the voicemail, on January 3, 2024, Reed's counsel noticed a deposition for Price for January 16, 2024. (*Id.* ¶ 8, Ex. 8.) At no point before or during the deposition did . To the contrary, (*Id.*, Ex. 4 at 3:5, 133:8-9 ()), .[2]

Sixteen days after receiving the voicemail from Stacy's counsel, on January 18, 2024, Reed's counsel (*Id.*, Ex. 2 at 1.) Quoting an inapposite Wisconsin statute, Reed's counsel asserted that (*Id.* ( .)

---

[2] Specifically, (Palay Decl., Ex. 4 at 136:8-10.) . (*Id.* at 136:11-22.)



Stacy's counsel responded the following day with [redacted]. (*Id.*, Ex. 9, Letter from M. Cameli to C. Wittenberg et al., Jan. 19, 2024, at 1-3.) Counsel asked, in light of the foregoing facts, that [redacted] (*Id.* at 3) In response, Reed's counsel [redacted]. (*Id.*, Ex. 10, Email from C. Wittenberg to M. Cameli et al., Jan. 21, 2024.) In accordance with her obligations under Federal Rule of Civil Procedure 26(b)(5)(B), Stacy now seeks the Court's determination on Reed's claim of privilege.

## ARGUMENT

### I. Reed Has Waived Any Privilege That Might Have Existed.

Generally, the dissemination of a once-privileged communication to a third party effectuates a waiver of the privilege. *See, e.g.*, *White*, 950 F.2d at 430. However, Federal Rule of Evidence 502(b) provides an exception to the waiver rule where "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error," including following the procedure in Federal

Rule of Civil Procedure 25(b)(5)(B) if applicable. As the party asserting privilege of purportedly inadvertently disclosed information, Reed bears the burden of establishing a lack of waiver. *See Wis. Bell Inc.*, 272 F. Supp. 3d at 1098–99 ("Accordingly, a party that inadvertently discloses privileged information waives the privilege unless it can show that, once it learned of its mistake, it promptly and reasonably tried to fix it—e.g., by asking the receiving party to return or destroy the information."); *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 86 (S.D.N.Y. 2019) ("The party invoking the privilege also has the burden to show that the privilege has not been waived.").

As discussed further below, the attorney-client privilege does not shield the voicemail, which [REDACTED]. However, the Court need not reach the existence of privilege in the first instance because Reed's waiver is conclusive and dispositive of this motion.

First and foremost, Reed cannot meet his burden of showing that he "promptly took reasonable steps to rectify the error." Fed. R. Evid. 502(b)(3). As an initial matter, [REDACTED].[3] Reed bears that burden.

---

[3] Notably, Reed did [REDACTED]. Reed also requested the production of "Audio and/or video recordings containing the voices of any of defendants" in his first set of Requests for Production, which is at least



However, even assuming Reed and his counsel [redacted] , [redacted]. That is not prompt. Rather, to prevent an inadvertent disclosure from resulting in waiver "numerous courts have held that 'once a party realizes a document has been accidentally produced, it must assert privilege with *virtual immediacy*.'" *Xu v. FibroGen, Inc.*, No. 21-cv-02623-EMC, 2023 WL 3475722, at *5 (N.D. Cal. May 15, 2023) (citation omitted). The requisite "immediacy" is sometimes measured in seconds or minutes, and at most within a few days. *See Xu*, 2023 WL 3475722, at *5 (eleven-day delay not prompt); *Rekor Sys., Inc. v. Loughlin*, No. 19-cv-7767 (LJL), 2023 WL 1972587, at *3 (S.D.N.Y. Feb. 10, 2023) ("This is not a case in which defense counsel acted in a prompt fashion—i.e., within a day or two—as to warrant a finding of no waiver.") (quoting *LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortg. Lending, Inc.*, No. 04 Civ. 5452 (PKL), 2007 WL 2324292, at *5 (S.D.N.Y. Aug. 13, 2007)); *Atronic Int'l, GMBH v. SAI Semispecialists of Am,, Inc.*, 232 F.R.D. 160, 165-66 (E.D.N.Y. 2005) (six-day delay

---

consistent with [redacted]. (Palay Decl., Ex. 11, Defs.' First [Set of] Request for Production, July 13, 2023, 9 at Request No. 21.) When Stacy objected that the request seemed to encompass irrelevant information, Reed followed up with a letter demanding all audio recordings of himself or Mr. Kiesler (which Stacy at that time did not possess), arguing that Stacy "did not respond that she does not possess any of the requested recordings," seemingly in reference to recordings that Reed or his counsel believed may exist. (*Id.*, Ex. 12, letter from M. Churchill to M. Cameli et al., Aug. 16, 2024, at 2.) [redacted]. (*See id.*, Ex. 4, 134:9-14, 136:23-137:17.) To the extent the Court does not find waiver or a lack of privilege, Stacy will seek further discovery to determine the earliest moment that Reed or his counsel learned of or suspected the disclosure, among other issues.

not prompt); *SEC v. Cassano*, 189 F.R.D. 83, 86 (S.D.N.Y. 1999) (twelve-day delay not prompt); *Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 117 (N.D. Ill. 1996) (fourteen-day delay not prompt); *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 389 (7th Cir. 2008) (referring to the two-week delay in *Harmony Gold* as "a 'lax' attempt to rectify the error"). Thus, [redacted]. Fed. R. Evid. 502(b)(3). The result is waiver. *Id.*[4]

[redacted] are sufficient to find waiver. But, [redacted]. Rather, [redacted]. (Palay Decl., Ex. 4, 132:3-138:12; P. Widen Dep. Ex. 10 ([redacted]).) That conduct, independent of the delay, effectuates waiver. It is well established that "if a

[4] For cases finding that a privilege-asserting party acted promptly*, see Carmody v. Board of Trustees of University of Illinois*, 893 F.3d 397, 405 (7th Cir. 2018) (immediate claim of privilege followed by claw-back letter one week later was not waiver); *Hudgins v. Total Quality Logistics, LLC,* No.16-CV-7331, 2022 WL 1262082, at *3 (N.D. Ill. Mar. 1, 2022) (claim of privilege within 40 minutes was not waiver); *California Institute of Technology v. Broadcom Ltd.*, No. CV 16-3714-GW (AGRX), 2018 WL 1468371, at *4 (C.D. Cal. Mar. 19, 2018) (no waiver where privilege asserted at deposition within 50 seconds); *Semi-Tech Litigation LLC v. Bankers Trust Co.*, No. 02 CIV. 0711(LAK), 2002 WL 1751267, at *2 (S.D.N.Y. July 27, 2002) (no waiver where claim of privilege brought to opposing counsel's attention within 24 hours); *Kmart Corp. v. Footstar, Inc.*, No. 09-C-3607, 2010 WL 4512337, at *5 (N.D. Ill. Nov. 2, 2010) (stating that "promptly" sending a letter claiming the privilege or moving to claw back "within a matter of days" would not be waiver).

privileged document is used at a deposition, and the privilege holder fails to object immediately, the privilege is waived." *Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, No. 06cv2804 BTM (WM), 2010 WL 275083, at *5 (S.D. Cal. Jan. 13, 2010); *Loughlin*, 2023 WL 1972587, at *3 n.2 (use of a document at a deposition without objection "sufficient to find waiver"); *Sure Fit Home Prods., LLC v. Maytex Mills Inc.*, No. 21 Civ. 2169 (LGS) (GWG), 2022 WL 1597000, at *2 (S.D.N.Y. May 20, 2022) ("Courts have held that a party's failure to object to an adversary's use of a privileged document, such as during a deposition, is sufficient to constitute waiver, even where a protective order applies."); *Coda Dev., s.r.o. v. Goodyear Tire & Rubber Co.*, No. 5:15-CV-1572, 2021 WL 395891, at *5 (N.D. Ohio Feb. 4, 2021) (finding "clear" waiver by allowing use of document at deposition and failure to take necessary steps to protect it); *Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*, 218 F. Supp. 3d 197, 202 (E.D.N.Y. 2016) (finding waiver by party "failing to seek to preclude their introduction and use at" a deposition); *Edwards v. Whitaker*, 868 F. Supp. 226, 229 (M.D. Tenn. 1994) (finding waiver by failing to object to use of documents in deposition); *see also Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999) (failure to object to questioning at a deposition amounted to waiver); 8 Charles Alan Wright, et al., *Federal Practice and Procedure* § 2016.1 (3d ed.), Westlaw (database updated Apr. 2023) ("In the deposition context, as at trial, the objection should ordinarily be asserted when a question seeking privileged material is asked . . . .").



Here, [redacted]. [redacted]. *See, e.g.*, *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) ("Thus, since the purpose of the attorney-client privilege is to protect the confidentiality of attorney-client communications in order to foster candor within the attorney-client relationship, voluntary breach of confidence or selective disclosure for tactical purposes waives the privilege."); *Nguyen*, 197 F.3d at 207 n.18 (referring to "a client's inability to, at once, employ the privilege as both a sword and a shield.")

Nor can Reed meet his burden of showing the second element, i.e., that he "took reasonable steps to prevent disclosure." *See* Fed. R. Evid. 502(b)(2). [redacted]. [redacted]. *See* Fed. R. Evid. 502(b); *Wis. Bell Inc.*, 272 F. Supp. 3d at 1098–99.

## II. Reed Cannot Meet His Burden To Establish Privilege Over The Voicemail.

### A. Reed's statements do not seek or relate to legal advice.

Setting aside Reed's clear waiver, Reed cannot establish that the voicemail is privileged in the first place. In the Seventh Circuit, the scope of the attorney-client privilege is limited to communications:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*White*, 950 F.2d at 430. "The burden falls on the party seeking to invoke the privilege to establish all the essential elements." *Id.* "A communication is not privileged simply because it is made by or to a person who happens to be a lawyer." *United States v. Evans*, 113 F.3d 1457, 1463 (7th Cir. 1997) (citation omitted). Rather, the attorney-client privilege protects only those communications made for the purpose of obtaining legal advice. *See Weger*, 709 F.2d at 1154 ("[T]he privilege only 'prohibits the disclosure of the substance of communications made in confidence by a client to his attorney for the purpose of obtaining legal advice.'") (citation omitted); *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999) ("Communications from a client that neither reflect the lawyer's thinking nor are made for the purpose of eliciting the lawyer's professional advice or other legal assistance are not privileged."). Consistent with that construction, the Seventh Circuit has explained that the attorney-client privilege "is intended 'to be strictly confined within the narrowest possible limits consistent with the logic of its

principle,'" and therefore protects "only such information a client communicates to his attorney so that the attorney may properly, competently and ethically carry out his representation." *Weger*, 709 F.2d at 1154 (citations omitted). In determining whether a communication is privileged, courts should therefore consider "whether the predominant purpose of the communication is to render or solicit legal advice." *In re Cnty. Of Erie*, 473 F.3d 413, 420 (2d Cir. 2007).



The voicemail is not privileged because, . *White*, 950 F.2d at 430. At issue is the following statement:

(Palay Decl., Ex. 1.) Nothing about that statement is consistent with seeking legal advice. . (*See id.*, Ex. 2 at 1.) And, in any event, which is "not 'discharged by mere conclusory or ipse dixit assertions.'" *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224–25 (2d Cir. 1984) (quoting *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965)).

.

[redacted] Stacy's discovery request for Millmont's monthly financial statements was "objectionable in its entirety as seeking information" purportedly "irrelevant to any claims or defenses in the case . . . ." (Palay Decl., Ex. 13, Letter from M. Churchill to D. Palay et al., May 5, 2023, at 3.)[5] [redacted]. (*Compare* Palay Decl., Ex. 13 at 3, *with* Palay Decl., Ex. 2 at 1.) At a minimum, then, if the Court does not find waiver and believes the existence of privilege is possible, the Court should order further discovery—including depositions of Reed and any counsel Reed claims were present—on [redacted].

Finally on this point, to date, [redacted] *White*, 950 F.2d at 430; *see* Palay Decl., Exs. 2 and 10. In fact, [redacted]. Rather, [redacted]

---

[5] Based on these objections, Reed has refused to provide discovery on the topic of Millmont, which refusal forms part of the basis of Stacy's pending motion to compel. (*See* Stacy's Mot. to Compel Discovery, ECF No. 28.)

[redacted] (Palay Decl., Ex. 2.) Without any showing as to how his statement meets even the basic elements of privilege, Reed fails to carry his burden of demonstrating the existence of privilege.

### B. Reed's statements establish a prima facie violation of Wisconsin Statutes section [redacted].

Finally, even assuming Reed's statements might have been privileged, and that Reed hadn't waived that privilege in numerous ways, Reed is still unable to use the attorney-client privilege to shield the recording because his statements establish the prima facie elements of a crime.

"The crime-fraud exception places communications made in furtherance of a crime or fraud outside the attorney-client privilege." *BDO Seidman*, 492 F.3d at 818 (citing *United States v. Zolin*, 491 U.S. 554, 563 (1989)). Thus, "[a] client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told." *Clark v. United States*, 289 U.S. 1, 15 (1933).

In the Seventh Circuit, a party seeking to invoke the crime-fraud exception must first "present prima facie evidence that 'gives colour to the charge' by showing 'some foundation in fact.'" *BDO Seidman*, 492 F.3d at 818 (quoting *United States v. Al-Shahin*, 474 F.3d 941, 946 (7th Cir. 2007)). "[T]he standard for prima facie evidence 'is not whether the evidence supports a verdict, but whether it calls for an

inquiry.'" *Al-Shahin*, 474 F.3d at 946 (quoting *In re Feldberg*, 862 F.2d 622, 626 (7th Cir. 1988)). To put it differently, "[t]he party seeking to abrogate the privilege meets its burden by bringing forth sufficient evidence to justify the district court in requiring the proponent of the privilege to come forward with an explanation for the evidence offered against it." *BDO Seidman*, 492 F.3d at 818 (citing *United States v. Davis*, 1 F.3d 606, 609 (7th Cir. 1993)). The burden then shifts to the party asserting the privilege to provide a satisfactory explanation for the prima facie showing of crime or fraud. *See id.*

Stacy has met her initial burden by pointing to Wisconsin Statutes section [redacted] and [redacted]. Under that provision, [redacted] [redacted] [redacted] [redacted]. Wis. Stat. § [redacted]. [redacted] as used in Wis. Stat. § [redacted] encompasses [redacted]. *State v. Manthey*, 169 Wis. 2d 673, 689–90, 487 N.W.2d 44 (Ct. App. 1992) ([redacted] [redacted] [redacted]).[6]

Here, [redacted] [redacted]

[6] Alternatively, Stacy meets her burden to show that Reed acted sufficiently towards the commission of § [redacted], with the requisite intent (*see* Palay Decl., Ex. 1), as a matter of [redacted] law. *See* Wis. Stat. § [redacted]; *infra* § II.B.

[redacted]. (Palay Decl., Ex. 1.) Reed claims these statements were [redacted]. That would constitute [redacted]. [redacted] Stacy identifies at paragraphs 173-176 of the Complaint, where she explains how Reed attempted to retaliate against her filing this case by squeezing her out of Millmont.

[redacted]. First, acting through Millmont, he sold the Widen Enterprises office building, the rental income from which was supposed to finance Millmont's other properties, including the cottage. (Palay Decl., ¶ 14.)[7] Reed then texted Stacy on December 12, 2022: "I have decided that Milmont [sic] will no longer pay the bills for the cottage. You can expect notification from my attorney that you will be responsible for 20% of the mortgage utilities insurance and any other costs." (Compl. ¶ 174, ECF No. 1.) [redacted]

---

[7] Section 5.3 of the Millmont operating Agreement provides, in relevant part:

> [redacted] . . .

(Palay Decl., Ex. 14, Operating Agreement of Millmont LLC, at 6.)



[redacted]. Specifically, Reed's counsel inquired: [redacted] (Palay Decl., Ex. 15, Email from P. Faust to G. Monday, Aug. 14, 2023.) Reed's attorney later followed up, asking [redacted]. (*Id.*, Email from P. Faust to G. Monday, Oct. 4, 2023.) In other words, [redacted]. Stacy has therefore met her burden to put forth evidence requiring an explanation from Reed why his recorded statements were not in furtherance of a crime. *See Al-Shahin*, 474 F.3d at 946. Should the Court reach the crime/fraud analysis, Reed must now present "a satisfactory explanation" for his conduct other than that it was [redacted]. *See id.* Absent such a showing, Reed's claim of privilege fails under the crime/fraud exception, as well.

## CONCLUSION

It is unnecessary for the Court to decide whether Reed's recorded statements about [redacted] might be subject to the attorney client privilege because Reed has clearly waived any privilege that could have existed. Reed failed to promptly rectify his purportedly inadvertent disclosure. Even if Reed eventually presents evidence that he was unaware of the recording until it was produced to him in January, [redacted]

[REDACTED]. Not only did Reed fail to assert any privilege, but he [REDACTED] [REDACTED]—conduct entirely at odds with a claim of privilege and confidentiality.

Moreover, Reed cannot demonstrate that his recorded statements are privileged at all. Reed has not even revealed who was present for his statements or explained how they related to legal advice. And it is difficult to imagine how they could, given [REDACTED]. [REDACTED] [REDACTED] Reed has maintained is entirely unrelated to this case. Such statements are not in furtherance of legal advice, and to the extent that they arguably are, they are in furtherance only of a crime.

Dated this 24th day of January, 2024.

Reinhart Boerner Van Deuren s.c.
22 East Mifflin Street, Suite 700
Madison, WI 53703
Telephone: 608-229-2200
Facsimile: 608-229-2100

Mailing Address:
P.O. Box 2018
Madison, WI 53701-2018

/s/ *David Palay*
Mark A. Cameli
WI State Bar ID No. 1012040
mcameli@reinhartlaw.com
David Palay
WI State Bar ID No. 1115862
dpalay@reinhartlaw.com
Elizabeth Elving
WI State Bar ID No. 1115903
eelving@reinhartlaw.com
Monica A. Mark
WI State Bar ID No. 1082428
mmark@reinhartlaw.com
Jessica Hutson Polakowski
WI State Bar ID No. 1061368
jpolakowski@reinhartlaw.com
Samuel C. Sylvan
WI State Bar ID No. 1131339
ssylvan@reinhartlaw.com

*Attorneys for Plaintiff*