UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

STACY L. RANDALL,

                    Plaintiff,

          v.                                          Case No. 3:22-cv-00400-jdp

REED C. WIDEN, MICHAEL
KIESLER, WIDEN ENTERPRISES,
LLC, and WINDY WATERS, INC.,

                    Defendants.

**STACY RANDALL'S REPLY IN SUPPORT OF HER MOTION FOR A
RULING ON REED WIDEN'S ASSERTION OF ATTORNEY-CLIENT
PRIVILEGE**

Reed Widen ███████████████████████████████████████ by leaving a voicemail for his brother Price, who disclosed the voicemail to Stacy years later.  When Stacy brought the voicemail to Reed's lawyers' specific attention – producing it as a standalone document on January 2 – Reed ████████████████ ████████████. Instead, he proceeded to depose Price and introduce the voicemail as an exhibit at the deposition on January 16. By then, Reed's lawyers already knew everything there is to know about the voicemail necessary to assess privilege – that is, ██████████████████████████████████████████████████████ ████████, and so on. However, they apparently failed to ████████████████ ████████████████████████████████████, and they also failed to █████████████ ████████████████████████████████████. Now, Reed asks the Court to undo

all of that. But the law holds Reed to the consequences of his – and his counsel's – decisions.

Understanding the source of that law is the first step to resolving the parties' disputes. The parties agree that Reed's ████████████████████████████ ████████████████ were subsequently disclosed to Stacy, and then produced to Reed, in the course of a federal proceeding over which the Court has federal question jurisdiction. The parties agree that Reed's counsel again disclosed and used the voicemail while deposing Price Widen, during the same federal proceeding. Thus, while there is much over which the parties disagree, there is at least one fact that is beyond dispute: those disagreements are governed by *federal* law, not Wisconsin law.

Applying federal law to the question of attorney-client privilege, the outcome of this brouhaha is clear: Reed is bound by his attorneys' actions and inactions, through which he has waived any privilege that might have once attached to the voicemail. Attorney Churchill ████████████████████████████████ ████████████████████████████████████████████████████. Yet he took no steps to rectify their disclosure for over two weeks. Nor, for that matter, did he take any steps to *prevent* Reed's second disclosure, when Attorney Wittenberg – ████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████. Attorney Wittenberg did not even act when, according to her own testimony, ████████████████████████████████████████ ████████████ (*See* Wittenberg Decl. ¶ 8, ECF No. 154.) The result is waiver.

2

And aside from his many waivers, Reed fails to meet his burden to establish attorney-client privilege in the first place. While Reed invites the Court to speculate, Reed fails to explain how ███████████████████████████████████████████████

████████████████   █████████   ████████████████████████████████████████

████████████████████████████████. (*See* Widen Decl. ¶ 7, ECF No. 153.) Nor does Reed rebut the application of the crime/fraud exception to that privilege.

Understanding that the result of his attorney-client contention is a foregone conclusion under federal law, Reed claims for the first time that ██████████████

██████████████████████████████████████. This new privilege theory changes nothing. For one thing, no such privilege exists, at least in this Circuit. While this case is an exceptionally poor candidate for creating such a privilege (or applying a contractual theory of mediation confidentiality), even doing so would not help Reed because ████████████████████████████████████████████████████████████ would not be covered. And, in any event, Reed has waived any such privilege or confidentiality several times over. Attorney Wittenberg and Attorney Churchill knew ███████████████████████████████████████████ when Attorney Wittenberg ██████████████████████████████████. As to any mediation privilege or contractual confidentiality then, this disclosure was *intentional*. Reed then waited over one month to first assert this theory, a second waiver.

Because none of Reed's arguments can change the clear outcome under federal law, the Court should find that no privilege protects the voicemail.

**I.     Reed's** ███████████████████ **Is Relevant To Many Of Stacy's Claims.**

Reed first posits that ████████████████████████

████████████████████████████████████████████

███████████████ (Opposition Br. ("Opp'n") 7, ECF No. 152.) Reed's only support for this assertion is █████████████████████████████████████████████

████████. (See Opp'n 7 (citing Wittenberg Decl., Sept. 22, 2023, Ex. 1, at 4, ECF No. 48).)[1] This argument is thus so underdeveloped as to be waived. *See, e.g.*, *Bergquist v. Auto-Owners Ins. Co.*, No. 19-cv-104-jdp, 2020 WL 2924024, at *3 (W.D. Wis. June 3, 2020) ("Bergquist's two-sentence argument is so underdeveloped that the court deems it waived.") (citing *United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016)).

Moreover, it is completely meritless. Stacy has pointed to ████████████████

████████████████████████████████████████   ███████   ████

███████   In fact, there is an entire section of the Complaint titled "**Reed Retaliates Against Stacy and Tries to Squeeze Her Out of a *Second* Family Company**."

---

[1] In context, ██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████   █   ████   That statement has no bearing on the relevance of Millmont under Federal Rules of Evidence 401 and 402, which is the operative question for admissibility.

(Compl. 27, ECF No. 1.) ███████████████████████████████████████████

███████████████ Reed's statements to Stacy that "he was going to cause Millmont

to cease paying the mortgage and expenses for the family cottage, of which Stacy is

an owner, knowing that Stacy would be unable to finance such expenses

independently[.]" (*Id.* ¶ 174.) ████████████████████████████████

████████████.

   And this scheme evidences ████████████████████████████████████:

*first,* ███████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████; *second,* ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████. This is

precisely how Reed ████████████████████████████████████

████████████████████████████████████████████████████

████████████████.[2] This is also precisely the scheme alleged in Stacy's claim for

scheme liability under the Securities Exchange Act. (*See* Compl. ¶¶ 198-209.)

---

[2] As Price Widen testified, Reed caused Price to receive a $70,000 tax bill just days before it was due by breaking with past practices and refusing to cause Windy Waters to make distributions to cover shareholders' pass-through tax obligations, which Price believes "was intentionally done to hurt" him because it was accompanied by an offer from Reed to pay Price's tax obligation for Price if Price would sell his over 20% interest in Windy Waters to

In short, Reed's 

is core to the intent or scienter elements of Stacy's other fraud claims, both federal and state. (*See id.* ¶¶ 210-245). And such ██████████████████████████ is plainly relevant to Stacy's claim for that breach as well. (*See id.* ¶¶ 246-258.)  This was Reed's ██████████████, and his recorded statement ████████████ is obviously relevant. (*See id.* Claims 1-6, 9-11, and 13.)

## II.      Federal Law Governs Privilege And Waiver In This Proceeding.

Reed's opposition ████████████████████████████████████████████

████████████████████████████████████████████████████.

There is no question, however, that "the evidentiary privileges that are applicable to federal-question suits are given not by state law but by federal law." *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 926 (7th Cir. 2004) (citing Fed. R. Evid. 501); *Hamdan v. Ind. Univ. Health N. Hosp., Inc.*, 880 F.3d 416, 421 (7th Cir. 2018) ("[F]ederal courts apply the federal common law of evidentiary privileges—not state-granted privileges—to claims . . . that arise under federal law."). Federal Rule of Evidence 501 provides that, other than "regarding a claim or defense for which state law supplies the rule of decision," or as otherwise provided under the U.S. Constitution, federal statute, or dictate of the U.S. Supreme Court, "[t]he common law – as interpreted by

---

Reed for around $155,000. (*See* Palay Decl., Jan. 24, 2024 ("Palay Decl.") Ex. 3, P. Widen Dep. Tr., Jan. 16, 2024, 41:22-42:21.)

United States courts in the light of reason and experience – governs a claim of privilege." In other words, where a federal court exercises federal question jurisdiction and the privilege at issue "relates to both federal and state law claims, . . . federal privilege law governs." *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014). Here, as discussed above, the evidentiary value of Reed's voicemail relates to both Stacy's federal and state law claims. Thus, "federal privilege law governs." *Id.*

**III.   Under Federal Law, Reed's Counsel Can (And Did) Waive Any Attorney-Client Privilege Over The Voicemail.**

    **A.   Under federal law, counsel acts as a client's agent during the representation, including for purposes of waiver.**



That is simply not true. Federal law treats attorneys as the agents of their clients. "Attorney ignorance or inadvertence" therefore does not excuse a client's forfeiture of a legal right "because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (regarding

procedural default in the context of *habeas corpus*) (citations omitted). The same is true when the issue is waiving the attorney-client privilege during the course of litigation. "The privilege is waived if the client's lawyer or another authorized agent of the client discloses the communication acting under actual or apparent authority." Restatement (Third) of the Law Governing Lawyers § 79 cmt. c, Westlaw (database updated Oct. 2023). And because "[a] lawyer generally has implied authority to disclose confidential client communications in the course of representing a client," "a lawyer's failure to consult the client about disclosing privileged information generally will not affect the rights of third persons." *Id.* As the D.C. Circuit put it, where counsel "acted as [their client's] agent in determining which documents would be produced pursuant to the subpoena and which documents would be withheld under the attorney-client privilege," counsel "acted within the scope of authority conferred upon it, and [the client] may not now be heard to complain about how that authority was exercised." *In re Grand Jury Investigation of Ocean Transp.*, 604 F.2d 672, 675 (D.C. Cir. 1979). In other words, "[w]hile it is a general rule that the privilege is personal to the client and may be voluntarily waived only by action of the client, it is also clear that the client's attorney can be held to possess implied authority as an agent to effect a waiver whether voluntary or inadvertent." *Hydraflow, Inc. v. Enidine Inc.*, 145 F.R.D. 626, 636 (W.D.N.Y. 1993). In the parlance of Rule 502, then, while the "holder of the privilege" is the party, the party generally acts through its counsel. *See* Fed. R. Evid. 502(b)(2).

8

Thus, federal courts have long recognized that an attorney's actions can effectuate waiver, even where later-retained counsel seeks to assert the waived privilege. *In re Grand Jury Investigation of Ocean Transp.*, 604 F.2d at 675; *Hollister Inc. v. E. R. Squibb & Sons, Inc.*, No. 84 C 1987, 1988 WL 129988, at *1 (N.D. Ill. Dec. 1, 1988) ("By choosing to refresh his recollection with privileged communications, patent counsel chose to waive the confidentiality of those communications on behalf of his client and that decision cannot be voided by litigation counsel."); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 106 (S.D.N.Y.1985).

Accordingly, federal courts analyze the reasonableness of pre-disclosure prevention and post-disclosure rectification in light of actions and inactions by a party acting through its counsel. Clients receive the benefit of counsel's diligence but also bear the consequences of counsel's failings – such as inadequate pre-production document review, procrastination after an accidental disclosure, or failing to object to the introduction of a privileged document at a deposition – regardless of whether the client was aware of counsel's specific actions. *See, e.g.*, *Sure Fit Home Prods., LLC v. Maytex Mills Inc.*, No. Civ. 2169 (LGS) (GWG), 2022 WL 1597000, at *2 (S.D.N.Y. May 20, 2022) ("Courts have held that a *party*'s failure to object to an adversary's use of a privileged document, such as during a deposition, is sufficient to constitute waiver, even where a protective order applies." (emphasis added)); *Datel Holdings Ltd. v. Microsoft Corp.*, No. C-09-05535 EDL, 2011 WL 866993, at *5 (N.D. Cal. Mar. 11, 2011) ("*Defendant* first learned the nature of the truncated emails at the Sharpe deposition after *counsel* looked at the complete documents during the deposition . . . .

*Defendant* asserted privilege with respect to the 'Re–Auth' emails on the record at the Sharpe deposition as soon as *counsel* found out that the documents contained privileged material, which satisfied Rule 502(b).") (emphasis added); *SEC v. Cassano*, 189 F.R.D. 83, 85-86 (S.D.N.Y. 1999) (failure of reasonable precautions where "[t]he specific document was brought to the attention of the attorney in charge of the case" who "authorized production of this document, sight unseen." (emphasis added).

On page 17 of his opposition, Reed  . the court actually appears to have analyzed the reasonableness of a "party's" actions under Rule 502 with reference to the actions of their counsel. *See United States ex rel. Heath v. Wisconsin Bell Inc.*, 272 F. Supp. 3d 1094, 1098 (E.D. Wis. 2017) (rectification not achieved "by redacting the privileged portions of the documents and asserting privilege");[3] *Ga.-Pac. Corp. v. GAF Roofing Mfg. Corp.*, No. 93 Civ. 5125 (RPP), 1995 WL 117871, at *2 (S.D.N.Y. Mar. 20, 1995) ("Nor did GAF's *counsel's* delay in asserting the privilege constitute a waiver of the privilege. [Attorney] Kneller acted within two business days after discovery of *his* inadvertence." (emphasis added)); *Bd. of Trs., Sheet Metal Workers' Nat'l. Pension Fund v. Palladium Equity Partners, LLC*, 722 F. Supp. 2d 845, 851 (E.D. Mich. 2010) (finding reasonable rectification where "attorney Scott A. Gold avers that once the defendants discovered the disclosure of

---

[3] While the court in *Wisconsin Bell* does not specify, Stacy presumes that the redactions were applied by counsel.

the May 13, 2005 email 'late in the day on Friday, June 19, 2009,' they notified the plaintiffs on Monday, June 22, 2009 of the inadvertent production").

Reed does not argue that ███████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████. Nor could Reed make such an argument. Determining whether to consult with co-counsel, noticing a deposition, introducing an exhibit at that deposition, and deciding whether to lodge an objection to that exhibit are all, on their face, quintessentially within counsel's purview. Thus, for purposes of federal privilege law, those actions and inactions were Reed's actions and inactions in this case.

## B.    Reed waived any privilege over the voicemail.

Under federal law, the disclosure of attorney-client privileged information generally results in waiver. *See United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991); Fed. R. Evid. 502(a). An exception arises for "inadvertent" disclosures, but only to the extent a party *both* "took reasonable steps to prevent disclosure" *and* "took reasonable steps to rectify the error." Fed. R. Evid. 502(b)(1)-(3). Accordingly, under federal law, Reed waived any attorney-client privilege over the voicemail for multiple, independent reasons.[4]

---

[4] As discussed in Stacy's opening brief, Reed's original disclosure exhibited a sufficient lack of reasonable precautions to result in waiver under Federal Rule of Evidence 502(b)(2). (*See* Opening Br. 11, ECF No. 144.)

11



First, █████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████. (Supplemental Palay Decl., Feb. 14, 2024 ("Suppl. Palay Decl."),

¶ 2, Ex. 16 ████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████.)[5] Attorney Churchill,██████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████ (*see* Churchill

Decl. ¶¶ 12-13, ECF No. 155), must have recognized the possibility of the privilege

Reed now asserts, as he possessed the same information he has today.[6] Yet neither

Attorney Churchill nor anyone else representing Reed took any actions to rectify that

known disclosure until over two weeks later, after the deposition, when ████████████

████████████████████████████ Such a lengthy period of procrastination

amounts to clear waiver. *Xu v. FibroGen, Inc.*, No. 21-cv-02623-EMC, 2023 WL

---

[5] While Stacy did not believe it was necessary to distinguish which of Reed's counsel downloaded the voicemail on which day, ████████████████████████████████████████████ ███████████████████████████████████████████████████████████████, Stacy clarifies the point now.

[6] Attorney Churchill is Reed's longest-serving attorney on this case, appears on all of his filings, appears to handle the bulk of Defendants' e-discovery, and has taken a highly active role in the litigation, attending eight depositions, including conducting, by himself, the deposition of Stacy Randall. (Suppl. Palay Decl. ¶ 3.)

3475722, at *5 (N.D. Cal. May 15, 2023) (finding waiver after eleven-day delay and explaining that "numerous courts have held that 'once a party realizes a document has been accidentally produced, it must assert privilege with *virtual immediacy*'" (citation omitted)); *Rekor Sys., Inc. v. Loughlin*, No. 19-cv-7767 (LJL), 2023 WL 1972587, at *3 (S.D.N.Y. Feb. 10, 2023) ("This is not a case in which defense counsel acted in a prompt fashion—i.e., within a day or two—as to warrant a finding of no waiver.") (quoting *LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortg. Lending, Inc.*, No. 04 Civ. 5452 (PKL), 2007 WL 2324292, at *5 (S.D.N.Y. Aug. 13, 2007))); *Atronic Int'l, GMBH v. SAI Semispecialists of Am,, Inc.*, 232 F.R.D. 160, 165-66 (E.D.N.Y. 2005) (six-day delay not prompt); *Cassano*, 189 F.R.D. at 86 (twelve-day delay not prompt); *Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 117 (N.D. Ill. 1996) (fourteen-day delay not prompt); *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 389 (7th Cir. 2008) (referring to the two-week delay in *Harmony Gold* as "a 'lax' attempt to rectify the error" (citation omitted)). Although Stacy cited these authorities in her opening brief, ██████████ ████████████████████.

   Reed then waived any attorney-client privilege over the voicemail a second time when ██████████████████████████████████████████ ███████. Reed argues that ████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████ under Rule 502(b)(3). (Opp'n 18.) But █████████████████████████████ started the clock way back on

January 3. Indeed, ███████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████ .

    Reed also ████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ was

another inadvertent disclosure, made without *any* steps – by either Attorney Wittenberg or Attorney Churchill – to *prevent* it. The result is waiver under Rule 502(b)(2). As one court explained, "[t]here can be no reasonable efforts, unless there are efforts in the first place." Am*obi v. D.C. Dep't of Corr.*, 262 F.R.D. 45, 55 (D.D.C. 2009); *See Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 406 (7th Cir. 2018) (juxtaposing a "single slip" that indicated an "inadvertent mistake" with "a casual, produce-first, review-later approach"). Additionally, Reed's multiple, independent disclosures, alone, strongly signal unreasonableness. *See, e.g.*, *id.* at * 8; *Wunderlich-Malec Sys., Inc. v. Eisenmann Corp.*, No. 05 C 4343, 2007 WL 3086006, at *5 (N.D. Ill. Oct. 18, 2007) ("one crucial fact speaks for itself: the disputed documents were inadvertently produced two separate times").

    Here, Reed's failure of prevention ████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████ . (Palay Decl., Ex. 1.) ███████

██████████████████████████████████████████████████████████

██████████████████████████████████. (*See* Churchill Decl. ¶ 16.) Yet █████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████ (Wittenberg Decl. ¶ 4.) That course of action was decidedly unreasonable.

Price Widen ██████████████████████████; there is no reason at all to believe that

Price Widen held special knowledge about it. Rather, ████████████████████████

█████████████████████████████████████. Failing to ████████████ ██ ████████

██████████████████████████, demonstrates a total lack of reasonable

precautions.

On top of all this, Attorney Wittenberg ████████████████████████████████

████████████████████████████████████████████████████████████.

(Wittenberg Decl. ¶ 9.) While it is far from clear how █████████████████████████

████████████████████████████████████████████████████████████

██████████████,[7] her ████████████████████████████████████████████

██████████████████████████████████████ also results in waiver.

Reed responds that ████████████████████████████████████████████████

██████████████ ██████ ███████████████████████████. That ignores the entire

doctrine of agency, under which the attorney-client "privilege is waived if the client's

lawyer . . . discloses the communication acting under actual or apparent authority,"

---

[7] In particular, it is clear that Price Widen would have *no* insight into the facts and circumstances relevant to attorney-client privilege, such as ████████████████████████

██████████████████████.

which a lawyer "generally has . . . in the course of representing a client." *Hydraflow*, 145 F.R.D. at 636 (first quote) Restatement (Third) of the Law Governing Lawyers § 79 cmt. c (second quote); *see supra*, § III(A); *In re Grand Jury Investigation of Ocean Transp.*, 604 F.2d at 675. It ignores the near-universal rule that *counsel's* failure to object to the use of a privileged document at a deposition by an *opponent*, much less oneself, is sufficient to effect waiver. *See Rekor Sys., Inc.*, 2023 WL 1972587, at *3 n.2 (use of document in deposition with no objection "is sufficient to find waiver"); *United States v. Wells Fargo Bank*, No. 12-CV-7527 (JMF), 2015 WL 5051679, at *4 (S.D.N.Y. Aug. 26, 2015) ("the failure to object [to use of a document at a deposition] plainly constituted a waiver"); *Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, No. 06cv2804 BTM (WMc), 2010 WL 275083, at *5 (S.D. Cal. Jan. 13, 2010) ("if a privileged document is used at a deposition, and the privilege holder fails to object immediately, the privilege is waived"); *Coda Dev., S.R.O. v. Goodyear Tire & Rubber Co.*, No. 5:15-cv-1572, 2021 WL 395891, at *5 (N.D. Ohio Feb. 4, 2021) (finding "clear" waiver by allowing use of document at deposition and failure to take necessary steps to protect it); *Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*, 218 F. Supp. 3d 197, 202 (E.D.N.Y. 2016) (finding waiver by party "failing to seek to preclude their introduction and use at" a deposition); *Edwards v. Whitaker*, 868 F. Supp. 226, 229 (M.D. Tenn. 1994) (finding waiver by failing to object to use of documents in deposition). And it ignores the vast majority of cases regarding inadvertent disclosure, where waiver regularly results from an attorney's inadvertent disclosure and almost always turns on the steps *attorneys* took to prevent or rectify a

16

disclosure. *See, e.g., Amobi*, 262 F.R.D. at 54 (rejecting contention that a lawyer's disclosure is always intentional because "[c]oncluding that a lawyer's mistake never qualifies as inadvertent disclosure under Rule 502(b) would gut that rule like a fish."); *Wunderlich-Malec Sys., Inc.*, 2007 WL 3086006, at *5 (discussing the "high duty all jurisdictions impose on *lawyers* to maintain the confidences of their clients") (emphasis added); *Cassano*, 189 F.R.D. at 86 (waiver after attorney production of document without reviewing); *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 132 F.R.D. 204, 207 (N.D. Ind. 1990) (waiver of privilege for letter that "was inadvertently disclosed by an associate from trial counsel's law firm").



By contrast to the overwhelming authority upon which Stacy relies, █████████ ████████████████████████████████████████████████████████████████████████ ████████████████████ (*see* Opp'n 21) ██████████████████████████████████ ████████████████████████████████████████████ ████████ ██████████ ████████████████████, *In re Sawyer*, 129 F. Supp. 687, 697 (E.D. Wis. 1955) – ██████████████████████████████████████████ *See Denius v. Dunlap*, 209 F.3d 944, 952 (7th Cir. 2000) (prospective employee asked to sign waiver of attorney-client privilege); *Knope v. United States*, No. 13-C-0043, 2015 WL 2185990, at *1 (E.D. Wis. May 11, 2015) (addressing implied waiver through assertion of ineffective assistance of counsel in a habeas petition).

Reed then ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████ (*See* Opp'n 21 (citing *Harold Sampson Child.'s Tr. v. Linda Gale Sampson*

*1979 Tr.*, 2004 WI 57, 271 Wis. 2d 610, 679 N.W.2d 794).) In that case, the Wisconsin Supreme Court crafted a special exception to the rule "that under agency law, ordinarily a litigant is bound by the acts of counsel during the representation." *Harold Sampson Child.'s Tr.*, 2004 WI 57, ¶ 36. As discussed above, ████████████ ████████████████████, as privilege and waiver in a federal proceeding arising under federal law are governed by federal, not state, law. *Hamdan*, 880 F.3d at 421; *Nw. Mem'l Hosp.*, 362 F.3d at 926; Fed. R. Evid. 501. Under federal law, a disclosure is either voluntary – i.e. "intentional" – or "inadvertent." *See* Fed. R. Evid. 502(a), (b); *In re OptumInsight, Inc.*, No. 2017-116, 2017 WL 3096300, at *3 (Fed. Cir. July 20, 2017) ("The rule contemplates two types of disclosures: intentional and inadvertent."). Under federal law, a voluntary or intentional disclosure generally results in waiver, not a special exception. *See Brown v. Google LLC*, No. 20-cv-03664 (YGR( (SVK), 2022 WL 12039375, at *5 (N.D. Cal. Oct. 20, 2022) ("Voluntarily disclosing privileged documents to third parties (or adverse parties) will generally waive the attorney-client privilege."); *Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 214 (S.D.N.Y. 2009) ("It is well-established that voluntary disclosure of confidential material to a third party waives any applicable attorney-client privilege."); *Weaver Popcorn Co.*, 132 F.R.D. at 208 ("Voluntary disclosure, as opposed to inadvertent disclosure, waives the privilege as to remaining documents of that subject matter." (citing 4 James Wm. Moore et al., Moore's Federal Practice and Procedure ¶ 26.60[2], at 26–201–202 (1989))). Inadvertent, or "mistaken," disclosures, on the other hand, are governed by Rule 502(b). *See Amobi*, 262 F.R.D. at 53 (defining

inadvertent as mistaken). And again, ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████.

Thus, whether due to Attorney Churchill's ████████████████████████

████████████████, his and Attorney Wittenberg's ████████████████████

████████████████, or Attorney Wittenberg's ██████████████████████████

██████████████████████████████████████████ the result is

waiver of any attorney-client privilege.

## IV.    Reed Fails To Establish Attorney-Client Privilege In The First Instance.

Fatal to *all* of Reed's arguments regarding attorney-client privilege is the fact

that Reed has come nowhere close to meeting his burden to establish its existence in

the first place. ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████ ██ ████████████████████████████████████

████ ██████. ████████████████████, as "[a] communication is not privileged simply

because it is made by or to a person who happens to be a lawyer." *United States v.*

*Evans*, 113 F.3d 1457, 1463 (7th Cir. 1997) (citation omitted); *Contreraz v. City of*

*Tacoma*, No. 3:22-cv-5106, 2023 WL 4174659, at *3 (W.D. Wash. June 26, 2023) ("The

privilege, however, 'does not shield all information that a client divulges to an

attorney, or vice versa, but rather is limited to instances where legal advice is sought

or rendered.'" (quoting *Deseret Mgmt. Corp. v. United States*, 76 Fed. Cl. 88, 90

(2007))). "The attorney-client privilege is intended 'to be strictly confined within the

narrowest possible limits consistent with the logic of its principle,'" *United States v. Weger*, 709 F.2d 1151, 1154 (7th Cir. 1983) (quoting *In re Horowitz*, 482 F.2d 72, 81 (2d Cir.1973) (Friendly, J.)), and therefore does not protect all communications to an attorney "even though the attorney-client relation provided the occasion for the lawyer's observation of them." *Weger*, 709 F.2d at 1154 (quoting *Clanton v. United States*, 488 F.2d 1069, 1071 (5th Cir.1974)).



. (Opp'n 20.)

(Opp'n 13-14; Widen Decl. ¶¶ 7-11.) Those ambiguous assertions do not come close to meeting Reed's burden. Not all "part[s] of a conversation" during which legal advice are sought are privileged. *See In re Google RTB Consumer Priv. Litig.*, No. 21CV02155YGRVKD, 2023 WL 1787160, at *3 (N.D. Cal. Feb. 6, 2023) ("The Court concludes from its own *in camera* review of Entry #4 that only discrete portions of this document might be considered legal advice or guidance"); *Fourth Age Ltd. v. Warner Bros. Digital Distribution*, No. 12-cv-09912 AB (SHX), 2015 WL 12720324, at *7 (C.D. Cal. Aug. 6, 2015) (referring to "the fundamental evil that the

document-by-document examination seeks to reduce—'blanket' privilege claims" in the context of a "line-by-line analysis" conducted by the court). And ███████████ █████████████████████████████████████████████████████████████████ ██████ ███ ██████ (*See* Widen Decl. ¶¶ 9-10.) In fact, ███████████████ █████████████████████████████████████████████████████████████████ █████████████████████████ (*See* Widen Decl. ¶¶ 7-10; Churchill Decl. ¶ 13.)   Reed's failure to meet his threshold burden should be fatal to all of his arguments about attorney-client privilege. However, to the extent the Court decides otherwise, it should authorize discovery, or conduct an *in camera* inquiry, of Reed and relevant counsel, regarding █████████████████████████████████████ ██████████████████████, ████████████████████████████████████████ ██████████████████████ among other circumstances surrounding the voicemail and Reed's █████████████████.

## V.     Reed Fails To Rebut Application Of The Crime/Fraud Exception.

Reed has the burden to offer an explanation for Reed's comments to show that they were not in furtherance of a crime. *See United States v. BDO Seidman*, LLP, 492 F.3d 806, 818 (7th Cir. 2007). ███████████████████████████████████ ██████████████████████████████████████ ███ █ █████████████████████████████████████████████████████████████ █████████████████████████████████████ ███ ████████████████ (Opp'n 15, 27.) █████████████████████████████████████████████████ ██ █████ █████████████████████████████████████████



████████████ the exception applies to statements even if only made in furtherance of a crime, regardless of whether the crime was actually committed, or whether the statements themselves amount to a crime. *United States v. Boender*, 719 F. Supp. 2d 951, 956-57 (N.D. Ill. 2010) (rejecting a defense of privileged statements on the grounds that no crime was committed), *aff'd*, 649 F.3d 650 (7th Cir. 2011).

████ Reed's statements ████████████

████████████ (Palay Decl., Ex. 4, 133:25-134:4.)



(*See* ECF No. 144 at 17-18; ECF No. 1 ¶ 174.) The fact that

(*See* Widen Decl. ¶ 16.)

(Widen Decl. ¶ 11.) In other words,

Reed

Because Reed's statements on the voicemail were made in furtherance of at least two crimes, and because Reed has offered no innocent explanation for them, the crime/fraud exception precludes any attorney-client privilege.

**VI.    Reed's Invocation Of A Mediation Privilege Or Contractual Confidentiality Fails.**

Despite ██████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████  There are many problems with these arguments. First and ███████████

████████████████  no mediation privilege exists here. And the Court should decline

the invitation to create one in this case, regardless of the merits of such a privilege in

general, because protecting the voicemail would not further the purposes of a

mediation privilege. Nor would such a privilege help Reed if the Court *did* choose to

create one, because ███████████████████████████████████. And,

in any event, any mediation privilege or contractual confidentiality has been waived.

Reed's ██████████████████████████████████████████████

███████████████████████████. (Palay Decl., Ex. 1 (first quote);

Wittenberg Decl. ¶ 8 (second quote).) And Reed ██████████████████████

████████████  █████  █████████████████████

**A.    There is no federal mediation privilege in this Circuit.**

The first problem with Reed's ███████████████████████████████

████████████████. Again, "the evidentiary privileges that are applicable to

federal-question suits are given not by state law but by federal law." *Nw. Mem'l*

*Hosp.*, 362 F.3d at 926; *Hamdan*, 880 F.3d at 421 ("[F]ederal courts apply the federal

common law of evidentiary privileges—not state-granted privileges—to claims . . . that arise under federal law."); Fed. R. Evid. 501.

But, ██████████████████████████████████████████████ ██████████████████████████████████████ (Opp'n 8). ████████████████ ████████████████████████ (*Id.* 8-12.)[8] While at least one district court in this Circuit has expressly declined a similar invitation, *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11 C 4462, 2014 WL 1389041, at *4 (N.D. Ill. Apr. 9, 2014), Stacy takes no position on the merit of creating a federal mediation privilege in general.

However, this case would be an exceptionally poor vehicle to create such a privilege because protecting the voicemail would serve none of the purposes of a federal mediation privilege. District courts that have recognized a federal mediation privilege have done so ████████████████████████████████████████ ████████████████████████. ████████████████████████████████ ████████ "[a]bsent the mediation privilege, parties and their counsel would be reluctant to lay their cards on the table so that a neutral assessment of the relative strengths and weaknesses of their opposing positions could be made." *Sheldone v. Pa.*

---

[8] As far as Stacy is aware, "[n]o Circuit court has ever adopted or applied such a [mediation] privilege." *Gavurnik v. Vantage Labs, LLC*, 589 F. Supp. 3d 454, 466 (E.D. Pa. 2022) (quoting *Molina v. Lexmark Int'l, Inc.*, No. CV 08-4796 MMM (FMx), 2008 WL 4447678, at *9 (C.D. Cal. Sept. 30, 2008)). And several circuit courts have declined to do so when invited. *See also Wilcox*, 753 F.3d at 877 ("We thus need not determine whether a mediation privilege should be recognized under federal common law and, if so, the scope of such a privilege."); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 447 F. App'x 217, 221 (Fed. Cir. 2011) ("[W]e decline to determine if, in light of reason and experience, we should recognize a mediation privilege"); *In re Anonymous*, 283 F.3d 627, 639 (4th Cir. 2002) (declining to adopt a federal mediation privilege).

*Tpk. Comm'n*, 104 F. Supp. 2d 511, 514 (W.D. Pa. 2000), *aff'd* (Aug. 8, 2000). If parties were "reluctant to lay their cards on the table," then "[t]he effectiveness of mediation would be destroyed, thereby threatening the well established public needs of encouraging settlement and reducing court dockets." *Id.*

Recognizing a mediation privilege over the voicemail would advance none of these goals. ███████████████████████████████████████

████████████████████████████████████████████ ███████████

█████████████████████████ (Churchill Decl. ¶ 13.) And to the extent that private conversation actually related to legal advice, there would be no need to recognize a new privilege to protect it; attorney-client privilege would do the job (though here, of course, Reed waived any attorney-client privilege that may have existed, for all the reasons discussed above).

### B.    A mediation privilege would not protect the voicemail.

Another problem with Reed's argument is that a mediation privilege would not protect the voicemail. Because ███████████████████████████████

████████████████████████████████████████████████████

██████████████████████████ they except from any protection information discovered outside of the proceeding. The voicemail was discovered outside any mediation – first by Reed's initial disclosure to his brother, and then again by his counsel at a deposition. Accordingly, even if a privilege existed, it would not protect the voicemail.

Even the mediation privilege Reed asks this Court to fashion would almost certainly carry an exception for disclosures *discovered outside* the mediation. As *Sheldone,* ███████████████ explained, "[i]f the Plaintiff is able to elicit any admissions (or facts underlying them) outside the scope of the mediation process, however, the rationale for the privilege would no longer apply." *Sheldone*, 104 F. Supp. 3d at 517 (quoting Fed. R. Evid. 408). Accordingly, *Sheldone* held "that the mediation privilege does not protect from disclosure 'any evidence otherwise' and independently 'discoverable merely because it [wa]s presented in the course of the Mediation." *Id.* In other words, ███████████████████████████████

███████████████████████████████████████████████

███████████████████ The voicemail was discovered entirely "outside the scope of the mediation process," and therefore "the rationale for the privilege would no longer apply." *See id.*

For very similar reasons, Reed's ██████████████████████████ ███████████████████████████ is misplaced. █████████████████ ████████████████████████████████████████████████ ██████████████████████████████.[9] Ironically, ████████████ ████████████████████████████████████████████████ █

_____

[9] Indeed, ████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████ (Opp'n 14-15; Widen Decl. ¶¶ 9-11.)



(Opp'n 4; Churchill Decl. ¶ 14.) That is,

(*See* Churchill Decl. Ex. 1, at 2.)[10]

Indeed,

(Opp'n 4.)

.

████████████████████████ (Opp'n 21.)

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████ (Churchill Decl. Ex. 1, at 2.)

In any event, even if Reed were successfully able to apply Wisconsin law to his statements, the outcome would be the same. Wisconsin's mediation privilege also exists to "encourage the candor and cooperation of disputing parties," and therefore includes a similar exception to the federal mediation privilege recognized in *Sheldone* for "evidence otherwise discovered," which is not subject to the privilege *even if also disclosed through mediation*. Wis. Stat. § 904.085(1) (first quote); Wis. Stat. § 904.085(4)(c) (second quote); *see Dyer v. Blackhawk Leather LLC*, 2008 WI App 128, 313 Wis. 2d 803, 758 N.W.2d 167 ("'otherwise discovered' in this context quite obviously means 'discovered outside of mediation'" (quoting Wis. Stat. § 904.085(4)(c))).

### C. Reed waived any mediation privilege (or contractual confidentiality) that might have applied, at multiple junctures.

Finally, even if a mediation privilege or contractual confidentiality existed, were adopted by the Court, and would apply to Reed's statements, Reed *still* waived any such privilege or protection several times over. No less than the attorney-client privilege, a mediation privilege is subject to waiver. *See G. Angel Ltd. v. Camper & Nicholsons USA, Inc.*, No. 08-60211-CIV-ZLOCH/ROSENBAUM, 2009 WL10666975 at *3, (S.D. Fla. May 22, 2009) ("[a]s important as the mediation privilege is . . . it

29

may be waived"); *Lipuma v. Am. Express Co.*, 406 F.Supp.2d 1298, 1313 (S.D. Fla. 2005) (finding partial waiver of mediation privilege); *In re RDM Sports Grp., Inc.*, 277 B.R. 415 (Bankr. N.D. Ga. 2002) (waiver of privilege over settlement letter where document inadvertently disclosed during discovery then used at a deposition); *Sheldone*, 104 F. Supp. 2d 511, 516-517 (analyzing waiver); *Olam v. Cong. Mortg. Co.*, 68 F. Supp. 2d 1110 (N.D. Cal. 1999) (parties expressly waived mediation privilege).



(Wittenberg Decl. ¶ 8; Palay Decl. ¶¶ 2, 6-7, Exs. 1, 7; Churchill Decl. ¶ 13.) Thus,

███████████████████████████████████████████████████████████

███

**CONCLUSION**

In sum, any privilege or confidentiality that ever covered the voicemail has been waived several times over. And it is seriously doubtful that any such protection could have applied in the first instance. As to attorney-client privilege, Reed has offered only the vaguest explanation for ████████████████████████████████ ███████████████████████████ and has failed to explain why they don't state or further ████████████ As to mediation privilege, none currently exists to apply, and this case is a poor candidate to change that, ████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████.

31

Dated this 14th day of February, 2024.

Reinhart Boerner Van Deuren s.c.
22 East Mifflin Street, Suite 700
Madison, WI 53703
Telephone:  608-229-2200
Facsimile:  608-229-2100

Mailing Address:
P.O. Box 2018
Madison, WI 53701-2018

/s/ *David Palay*
Mark A. Cameli
WI State Bar ID No. 1012040
mcameli@reinhartlaw.com
David Palay
WI State Bar ID No. 1115862
dpalay@reinhartlaw.com
Elizabeth Elving
WI State Bar ID No. 1115903
eelving@reinhartlaw.com
Monica A. Mark
WI State Bar ID No. 1082428
mmark@reinhartlaw.com
Jessica Hutson Polakowski
WI State Bar ID No. 1061368
jpolakowski@reinhartlaw.com
Samuel C. Sylvan
WI State Bar ID No. 1131339
ssylvan@reinhartlaw.com

*Attorneys for Plaintiff*