IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STACY RANDALL,

                Plaintiff,

  v.                                                 OPINION and ORDER

REED WIDEN, MICHAEL KIESLER,
WIDEN ENTERPRISES, LLC, and                    22-cv-400-jdp
WINDY WATERS, INC.,

                Defendants.

---

This case is scheduled for trial on August 4, 2025. This order addresses eight issues raised at the July 25 final pretrial conference and in supplementary submissions by the parties.

## A. Due diligence defense

At the final pretrial conference, Randall moved for reconsideration of a portion of the court's ruling on her third motion in limine concerning defendants' due diligence defense. The parties have also submitted supplemental briefs on this issue. Dkts. 307, 311, 321.

The parties' dispute concerns the justifiable reliance element of Randall's securities fraud claims. Defendants want to argue at trial that Randall cannot prove justifiable reliance because she did not exercise due diligence prior to redeeming her shares. In its order on the motions in limine, the court ruled that defendants could not argue that Randall should have conducted an independent investigation into the companies' finances, but that they could argue that Randall had ignored information about the companies that was in her possession. Dkt. 304, at 19–21 (citing *Teamsters Loc. 282 Pension Tr. Fund v. Angelos*, 762 F.2d 522, 529 (7th Cir. 1985)).

Randall does not challenge the court's general ruling. But she asserts that the court improperly determined that evidence of Randall's failure to heed advice that she investigate the financial advisability of the stock redemption was admissible. Randall argues that the rule precluding defendants from arguing that she should have independently investigated the facts also means that defendants may not argue that she should have heeded advice that she independently investigate the facts.

The court agrees with Randall that evidence that she was advised to independently investigate the facts is not admissible to rebut justifiable reliance. In the securities fraud context, justifiable reliance means "willful material misstatements or omissions plus causation in fact, not . . . 'justifiable reliance' in the common sense of that term." *Angelos*, 762 F.2d at 529 (citing *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 152–54 (1972)). A defendant can rebut justifiable reliance by showing that the plaintiff committed gross recklessness "comparable to that of the defendant." *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1048 (7th Cir. 1977). But in *Angelos*, the court made clear that a plaintiff commits gross recklessness only if she closed her eyes to information in her possession that would show the defendant's representations to be false or otherwise make the defendants' representations immaterial. *Angelos*, 762 F.2d at 530. Randall's failure to heed advice that she investigate the companies' finances does not fit that mold, so it is not admissible to show that Randall did not justifiably rely on defendants' statements.

*In re Olympia Brewing Company Securities Litigation*, which the defendants cite in their supplemental brief, is consistent with the court's ruling. No. 77 C 1206, 1985 WL 3928, at *9–10 (N.D. Ill. Nov. 13, 1985). The plaintiffs in *Olympia Brewing* moved to strike an affirmative defense that the plaintiffs were sophisticated investors with full and complete access

2

to all relevant information and thus, any losses were due to their own failure to investigate. The court struck the defense, citing *Sundstrand* for the general proposition that lack of due diligence is not a defense to intentional securities fraud. *Id.* at *9. But the court held that defendants could introduce evidence that plaintiffs "had information . . . sufficient to put them on notice of the risks so that they should not have relied upon [defendants'] misrepresentations and omissions." *Id.* at *10.

This court's holding is consistent with *Olympia Brewing*. Evidence that Randall failed to investigate (or failed to heed advice to investigate) is inadmissible to show lack of due diligence. But evidence that Randall closed her eyes to information actually in her possession that would have informed her about the true value of Widen Enterprises is admissible because it goes to the underlying materiality of defendants' misrepresentations and omissions.

Although the court agrees with Randall that evidence that the defendants, her son, and her financial advisor told her to investigate before selling her shares is not admissible to show lack of due diligence, it is admissible for other purposes. Evidence that the defendants told Randall to investigate is probative of whether they intended to defraud Randall. A jury could infer from Kiesler and Windy Waters' attorney Scott Seid telling Randall that she should investigate the facts prior to selling her shares that Kiesler and Windy Waters did not intend to mislead Randall when they told her that the price was "fair" and that it would be "smart" for her to sell her shares. Evidence that Randall disregarded advice to conduct an independent investigation is also relevant to whether Randall would have sold her shares even if defendants had told her the truth. The court will allow defendants to introduce this evidence. But it will add a limiting instruction to inform the jury that it may not consider this evidence in determining whether Randall justifiably relied on the defendants' representations.

3

### B. Hutler testimony

At the final pretrial conference, defendants moved for reconsideration of the court's ruling excluding their expert Bruce Hutler from testifying that it was appropriate for Windy Waters to use the stock price formula for Randall's May 2020 redemption and that the stock price formula was a reliable proxy for Windy Waters' fair market value in May 2020. The court excluded these opinions because Hutler had not analyzed the fair market value of the company in May 2020, so he had no foundations for his opinions that the formula was reliable and appropriate for Randall's redemption. Dkt. 304, at 16–17. Defendants argued that Hutler had in fact analyzed the fair market value of the company around the time of Randall's redemption.

The valuation defendants point to is an annual report on Widen Enterprises' value, which Hutler prepared as of December 31, 2019, for the company to use in determining executive compensation. Defendants are correct that Hutler mentioned this valuation in his report. Dkt. 141, at 11. But Hutler drew no connection in his report between the value he calculated for December 31, 2019, and his conclusion that the stock price formula was reliable and appropriate for Randall's redemption; the report doesn't even state what his calculated value for the company was. And even if Hutler had drawn this connection, his 2019 valuation would not be a reliable comparator for the formula, because Hutler says in his report that the 2019 valuation used "similar valuation methodology as the formula" and was only a "rough" approximation of fair market value. Dkt 141, at 13. By Hutler's own admission, the 2019 valuation was not a reliable indicator for fair market value, so Hutler cannot rely on it to draw the conclusion that the stock price formula reliably estimated fair market value for Randall's redemption. Defendants' motion for reconsideration is denied.

**C. Testimony of Scott Seid and Scott Fuhr**

Randall's fourteenth motion in limine asked the court to exclude the testimony of Widen Enterprises' attorneys Scott Fuhr and Scott Seid, arguing that they would effectively be testifying about what the law is and whether the defendants followed the law, in effect offering an advice-of-counsel defense. Defendants counter that Seid and Fuhr are offered as fact witnesses only, and that their testimony will support their position that Kiesler believed in good faith that the stock price offered to Randall was fair, because it was the price that Widen Enterprise's attorneys told him he had to offer to Randall and others.

The court will exclude Seid and Fuhr's testimony about the advice they gave defendants under Rule 403. Despite defendants' assertion that they are not offering an advice-of-counsel defense, the court sees no way for Seid and Fuhr to testify about the legal advice they provided without putting at issue whether that legal advice was accurate. If Seid and Fuhr testified only about what advice they gave the defendants, their testimony would still imply to the jury that they believed the advice they offered was legally correct. Randall could not rebut the implication without questioning the legal basis for Seid and Fuhr's advice, which would necessarily lead Seid and Fuhr into the realm of providing expert testimony about the law. The court sees no way for Seid and Fuhr to testify without opening a back door to impermissible expert testimony about the law, so the court will exclude their testimony entirely.

In their supplementary brief on this issue, defendants point to two district court rulings in this circuit in which the court declined to exclude attorney testimony offered to negate intent in a securities fraud case. *Sec. & Exch. Comm'n v. ITT Educ. Servs., Inc.*, No. 115CV00758JMSMJD, 2018 WL 3008632, at *3–4 (S.D. Ind. June 15, 2018); *Sec. & Exch. Comm'n v. Ferrone*, 163 F. Supp. 3d 549, 567–70 (N.D. Ill. 2016). *ITT Education Services* is not

5

persuasive because the court did not even consider the risk that the attorney testimony would lead to impermissible expert testimony. In *Ferrone*, the court did consider that issue. But contrary to the defendants' assertion, the court in *Ferrone* did not rule that the attorney advice was admissible; it recognized the problems on both sides and denied the SEC's motion to exclude the attorney advice without prejudice so it could "work with counsel both at the pretrial conference and at trial to zero in on what evidence will be admitted (and what will not be admitted) on the question of Ferrone's good faith." *Id.* at 570. *Ferrone* does not change the court's view that the probative value of Seid and Fuhr's testimony is outweighed by the risk that their testimony will lead the jury to reach improper conclusions about the law.

The court's ruling does not preclude Kiesler from testifying that his beliefs that the stock price he offered Stacy was fair in part because of what attorneys at the company told him. That testimony is relevant to Kiesler's intent and, because Kiesler is not an attorney, it does not carry the same risks of creating improper inferences about the law.

The court's ruling also does not preclude Seid from testifying that he advised Randall to speak with an independent attorney before going through with the stock redemption. As the court discussed above, that evidence is relevant to whether Randall would have sold her shares even if defendants had told her the truth.

### D. Randall's divorce attorney

After the final pretrial submission, Randall filed a supplemental motion in limine to preclude the defendants from suggesting that disclosures to Stacy's divorce attorney are attributable to Randall. Dkt. 314.[1] This motion was responsive to an issue the court raised at

---

[1] After defendants responded to Randall's motion, Randall moved for leave to reply. Dkt. 333. The court considered Randall's proposed reply brief, so the motion for leave to reply is granted.

the final pretrial conference about whether to exclude Randall's divorce attorney Amy O'Hara as a witness.[2]

Defendants want to introduce the divorce attorney evidence to show that Randall was in possession of financial information about the companies that would have revealed their true value, which is relevant to whether she justifiably relied on defendants' alleged misrepresentations and omissions. Shortly before Randall's stock redemption, Kiesler sent a large amount of financial information about the companies to O'Hara so that she could produce those documents in Randall's divorce. Kiesler confirmed with Randall by text message that he had sent this information to O'Hara. It is undisputed that Randall never read any of this financial information. But defendants say that knowledge of the financial information is imputed to Randall because O'Hara represented her.

It is well-established that knowledge a lawyer acquires while acting on behalf of a client is imputed to the client. *Frey v. Fraser Yachts*, 29 F.3d 1153, 1158 (7th Cir. 1994); *see also* Restatement (Third) of the Law Governing Lawyers § 28 (2000). But imputation of knowledge is limited to issues within the scope of the lawyer's representation and which the lawyer has a duty to disclose to the client. *Trs. of Chicago Plastering Inst. Pension Tr. v. Elite Plastering Co.*, 603 F. Supp. 2d 1143, 1150 (N.D. Ill. 2009); *see also* Restatement (Second) of Agency § 272 (1958) ("the liability of a principal is affected by the knowledge of an agent concerning a matter . . . upon which it is his duty to give the principal information). Here, O'Hara received

---

[2] The court asked defendants to explain why O'Hara's testimony would not be barred by attorney-client privilege. Defendants explained that they are not seeking testimony about any conversations between Randall and O'Hara, but rather testimony about what information O'Hara received from Kiesler. In her supplemental motion in limine, Randall does not contend that the testimony defendants seek to elicit from O'Hara would be privileged.

7

the financial information about the companies from Kiesler in her capacity as Randall's attorney, so her receipt of that information as Randall's agent is equivalent to Kiesler giving that information to Randall. So the court will not exclude testimony and exhibits showing that O'Hara received financial information from Kiesler. But that's not to say that all the information in the financial documents is imputed to Randall. Defendants may not argue that O'Hara had a duty to explain the full contents of the financial information to Randall, because that would be beyond the scope of O'Hara's representation of Randall in her divorce. Randall is free to testify at trial that she knew O'Hara had received this information for use in her divorce, but that she did not read or discuss that information with O'Hara. Randall may also present evidence about the contents, length, and complexity of the financial documents that O'Hara received to rebut defendants' assertion that she was reckless in not analyzing those documents before going through with her stock redemption. It will be up to the jury to determine whether Randall acted recklessly by not reviewing the financial documents that her divorce attorney had received.

### E. Extraordinary efforts

Randall moves to preclude defendants from arguing that they engaged in extraordinary efforts after her redemption that increased the value of Widen Enterprises. Dkt. 319. In their response to the court's proposed jury instructions and verdict forms, defendants say that they will not argue that they engaged in extraordinary efforts. Dkt. 331, at 19. The court will grant Randall's motion as unopposed and remove its jury instructions related to extraordinary efforts.

### F. Witness sequestration

Randall moves for clarification that Bruce Hutler will be sequestered under the court's order requiring fact witness, but not expert witnesses, to be sequestered. Dkt. 320. Defendants

8

have asserted that Hutler will provide mostly fact testimony, and the court has excluded most of his expert testimony, so he will be sequestered.

### G. Deposition designations

Both parties filed ex parte deposition designations for use during their opening statements. After reviewing the parties' submissions, the court will not allow either side to use deposition testimony during their opening statement. The parties propose to use an amount of deposition testimony that the court deems excessive. That much deposition testimony—that the parties will elicit again from witnesses during trial—will be unduly cumulative. The parties should use their opening statements to explain to the jury what the evidence will show; they do not need to play clips from depositions to do so. Plaintiff's motion to preclude defendants from using untimely deposition designations, Dkt. 326, is therefore denied as moot.

### H. The release

After the final pretrial conference, Randall filed a supplementary motion in limine concerning the release of claims in the stock redemption agreement. Dkt. 318. The parties' arguments about the release present three related issues: (1) whether the release is necessarily unenforceable if Randall succeeds on any of her claims; (2) whether the release is relevant evidence other than as a potential bar to Randall's claims; and (3) whether the court should substitute exhibits to use a version of the redemption agreement that does not include the release.

As for the first issue, the parties agree that if Randall succeeds on her intentional misrepresentation claim, then the release is unenforceable. But in response to Randall's supplementary motion in limine, defendants argued that the release would be enforceable if Randall does not prove her intentional misrepresentation claim, because the elements and the

9

burden of proof for her other claims don't line up directly with the elements of fraudulent inducement, which she would need to prove to void the release. Dkt. 332. Randall has not had a chance to fully respond to defendants' arguments that some of her claims are still barred by the release. And in any event, this issue is a pure question of law, which does not affect whether the release is relevant evidence for the jury to consider. If the issue whether the release bars some claims is still a live issue after trial, then the parties may raise that issue in post-trial motions.

As for the second and third issues, defendants argue that the jury should be able to see the full redemption agreement, including the release, for two reasons. First, they argue that Kiesler believed in good faith that the redemption agreement was fair, because the agreement (including the release) was identical to the agreement Windy Waters used to redeem Randall's brother Price's shares. Second, they argue that the release demonstrates the "seriousness" of the transaction, which when combined with Randall's failure to investigate, is evidence that Randall was desperate and would have taken the redemption no matter what because she needed cash. Randall counters that the release cannot be evidence of Kiesler's good faith because it had not been drafted when Kiesler said that the price was "fair." Randall also argues that the release is not admissible evidence of Randall's recklessness because the release did not impose on Randall any duty to investigate.

The court will admit the original stock redemption agreement including the release. The release is not probative of Randall's recklessness—Randall did not know at the time of the redemption that the price was unfair, so the fact that she released claims without investigating does not show that she was desperate. But the court agrees with defendants that the agreement being identical to the one used in Price Widen's redemption is relevant to whether Kiesler

10

believed that Randall's redemption was fair. (Randall's redemption agreement may not have been drafted at this point, but Price Widen's had been, so Kiesler could testify that he had planned to draft an identical agreement.) Nor will it unduly prejudice Randall for the jury to see the release: defendants may not argue that any of Randall's claims are barred by the release, and the court will instruct that the release does not bar any of her claims.

ORDER

IT IS ORDERED that:

1. Randall's motion for reconsideration of her third motion in limine on due diligence, Dkt. 307, is GRANTED in part as described in this order.

2. Defendants' motion to reconsider excluding the Hutler testimony is DENIED.

3. Randall's fourteenth motion in limine to exclude the testimony of Scott Seid and Scott Fuhr, Dkt. 317, is GRANTED.

4. Randall's motion to exclude the testimony of her divorce attorney, Dkt. 314, is GRANTED in part and DENIED in part as explained in this opinion.

5. Randall's motion for leave to reply regarding the divorce attorney motion, Dkt. 333, is GRANTED.

6. Randall's motion to preclude defendants' theory of extraordinary efforts, Dkt. 319, is GRANTED.

7. Randall's motion for clarification on the sequestration of Bruce Hutler, Dkt. 320, is GRANTED.

8. Randall's motion to preclude defendants' untimely deposition designations, Dkt. 326, is DENIED as moot.

9. Randall's motion to exclude evidence of the release and to substitute exhibits, Dkt. 318, is DENIED.

Entered August 1, 2025.

                                             BY THE COURT:

                                             /s/

                                             _____
                                             JAMES D. PETERSON
                                             District Judge